UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| POST UNIVERSITY,<br><br>*Plaintiff*,<br><br>v.<br><br>COURSE HERO, INC.,<br><br>*Defendant*. | Civil No. 3:21-cv-1242 (JBA)<br><br>August 25, 2023 |

**RULING DENYING DEFENDANT'S PARTIAL MOTION TO DISMISS**

Defendant Course Hero, Inc. moves to dismiss with prejudice the portions of Count VI of the Amended Complaint alleging violations of 17 U.S.C. § 1202(a) as to its Copyright Notice and its Watermark, arguing that the two pieces of information do not constitute false copyright management information ("CMI") because the Copyright Notice is not distributed "in connection with" Plaintiff Post University's works, and because the Watermark is not "false". (Def.'s Mot. to Dismiss [Doc. # 47] at 1.) Plaintiff responds that its Amended Complaint pleads with specificity multiple examples of the provision and distribution of false CMI in connection with its works. (Pl.'s Opp'n [Doc. # 50] at 6.)

For the reasons set forth below, Defendant's motion is DENIED.

**I.    Factual Background**

**A.    Course Hero's Business Model**

Defendant Course Hero is an "online learning platform for course-specific study resources" that offers "learning resources and tools" including "a library of study resources, organized by both school and subject[.]" (Def.'s Mem. [Doc. # 48] at 1.) Initially, these documents are "locked," which means that the full content cannot be viewed. (Amend. Compl. ¶ 17-19, 40.) While the document remains locked, individuals can only view an

alternate document called a "Preview," which is based on the original uploaded document, created by Course Hero, and which previews some or all of the content from the original while altering, removing, or hiding other content. (*Id.* ¶ 18.) Alterations might include "blurring, placing opaque boxes or banners directly over the content, and removing entire pages" of the original content." (*Id.* ¶ 19; *see, e.g.,* Amend. Compl. Exh. 1 [Doc. # 31-2].) Below these Previews and at the bottom left-hand corner of the website, the words "Copyright © 2021, Course Hero, Inc." appear in white text on a blue bar; the bottom right-hand corner states that "Course Hero is not sponsored or endorsed by any college or university." (Exh. 1 at 4.)

Copyright © 2021. Course Hero, Inc.                                   Course Hero is not sponsored or endorsed by any college or university.

To view a document in full, visitors to Course Hero's website must have either an Educator or Student account. (Amend. Compl. ¶¶ 17-18.) Student accounts allow students to either contribute their own study resources or to pay a monthly subscription fee in order to gain access to Defendant's materials; a subscribing student has access to 30 "unlocks" through which they can view and/or download a document per month, with additional unlocks available either for purchase or to be earned through uploading study resources. (*Id.* ¶¶ 40.) Educator accounts allow educators to create free accounts through which they can upload and share class resources. (*Id.* ¶¶ 38, 45-56.) Once a document is unlocked and downloaded, a watermark on the document appears stating "This study resource was shared via CourseHero.com" in pale gray behind the text. At the bottom of the page, small black text appears that notes when a document was downloaded; for example, Exh. 7 [Doc. # 31-8] says at the bottom of each page that "This study source was downloaded by 100000824591884

from CourseHero.com on 06-14-2021 13:49:30 GMT -05:00" and on the line below it, "https://www.coursehero.com/file/89968964/Assignment-Weekly-Newspaperpdf/."

### B.      Post University's Takedown Notices

Plaintiff Post University is a for-profit higher education institution that creates documents such as tests, quizzes, assignments, course learning material, lesson plans, study guides, and other educational resources in furtherance of its degree programs. (Am. Compl. ¶¶ 6, 10.) Plaintiff invests "substantial resources" in the creation of these resources, the maintenance of its content and to ensure the academic integrity of its programs. (*Id.* ¶¶ 10, 12.)

Defendant's library of documents includes study resources specific to Plaintiff available at https://www.coursehero.com/sitemap/schools/456-Post-University/. (*Id.* ¶ 15.) Exhibits 1-6 of the Amended Complaint are Preview documents derived from documents owned by Post University; Exhibits 7-11 are copies of original documents owned by Post University with a watermark added to the center, with additional information on when the document was downloaded from Course Hero and a Course Hero URL to the document on the bottom left; each of the documents has a registered copyright. (*Id.* ¶¶ 53-58.) At the time the Amended Complaint was filed, the Course Hero website stated that over 23,000 documents from 189 departments at Post University had been uploaded, and Plaintiff alleges upon information and belief that there are "hundreds if not thousands" of additional Plaintiff-owned copyrighted documents available on the Defendant website hidden behind the paywall or which have been modified and displayed as Previews. (*Id.* ¶¶ 16, 36-37.)

Plaintiff sent Defendant a take-down letter on January 6, 2021 identifying 64 instances of materials it believed in good faith were copyrighted materials that were owned by Post University, and notifying Defendant that additional copyrighted materials were likely to exist on the website. (*Id.* ¶ 47.) Defendant responded to the letter informing Plaintiff that

a ticket had been generated to address the issue, and on January 12, 2021, Defendant emailed Plaintiff informing them that all identified copyrighted documents were removed. (*Id.* ¶¶ 48-49.) Plaintiff sent a second take-down letter to Defendant on February 24, 2021 identifying another 35 instances of Plaintiff's copyrighted documents appearing on Defendant's site, and additionally offering to negotiate for free access to the Study Resources for the purpose of locating additional copyrighted materials owned by Plaintiff on Defendant's website. (*Id.* ¶ 50.) Plaintiff explained that it was difficult, if not impossible, for it to police whether Defendant's website was hosting its copyrighted documents due to the access restrictions. (*Id.*) Once more, Defendant took the identified copyrighted documents off of its website but did not address Plaintiff's offer or suggest that any further steps were taken to determine if other copyrighted materials owned by Plaintiff were still up on the website. (*Id.* ¶ 52.)

The Amended Complaint brings nine counts; however, the motion to dismiss concerns only the specific allegations in Count IV that Defendant's Copyright Notice and Watermark violated 17 U.S.C. § 1202(a).

## II. Legal Standard

"To survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sarmiento v. United States*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).) The "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. In other words, a valid claim for relief must cross "the line between possibility and plausibility." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678. The Court must "accept as true all factual allegations and draw from them all reasonable inferences."

*Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). Although it is "not required to credit conclusory allegations or legal conclusions couched as factual allegations," *id.*, motions to dismiss "assess the legal feasibility of a complaint" and are not the place to "assay the weight of the evidence which might be offered in support" of the merits. *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 432 F. Supp. 3d 131, 151 (D. Conn. 2019).[1]

### III. Discussion

Congress enacted the DMCA in 1998 "to strengthen copyright protection in the digital age." *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 435 (2d Cir. 2001). "Fearful that the ease with which pirates could copy and distribute a copyrightable work in digital form was overwhelming the capacity of conventional copyright enforcement to find and enjoin unlawfully copied material, Congress sought to combat copyright piracy in its earlier stages, before the work was even copied." *Id.* The purpose of protecting CMI under the DMCA is "to facilitate licensing of copyright for use on the Internet and to discourage piracy." S. REP. 105-190 at 92 n.18 (1998). Under 17 U.S.C. § 1202(c), copyright management information includes

> any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:
>
> **(1)** The title and other information identifying the work, including the information set forth on a notice of copyright.
>
> **(2)** The name of, and other identifying information about, the author of a work.
>
> **(3)** The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright. . . .

---

[1] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

**(6)** Terms and conditions for use of the work.

**(7)** Identifying numbers or symbols referring to such information or links to such information . . .

The relevant provision of the DMCA at issue in this motion, 17 U.S.C. § 1202(a), provides that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement[,] (1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false." In order to plead a violation of § 1202(a), "[a] plaintiff must allege (1) the provision or distribution of CMI; (2) that the defendant knew that the CMI was false; and (3) that the Defendant acted with the intent to cause or conceal copyright infringement." *Michael Grecco Prods., Inc. v. Alamy, Inc.*, 372 F. Supp. 3d 131, 137 (E.D.N.Y. 2019).

### A.    Defendant's Copyright Notice

Defendant's position is that its Copyright Notice is not false CMI because it is not "conveyed in connection with" any of Plaintiff's documents when it is located at the bottom of Defendant's website, in a different colored bar that separates it from the rest of the page, and is not accompanied by any further CMI such as terms of use claiming authorship of the documents. (Def.'s Mem. at 6.) In Defendant's view, "conveyed in connection with" is a legal term of art for the Court to construe and rule on based on objective factors such as the proximity of the information to the work, the content, and whether it is visually distinct from the work at issue. Plaintiff argues that "conveyed in connection with" as used in Section 1202(c) is to be interpreted broadly and does not require any particular proximity, and thus all it must do at this stage is "plausibly allege" that the Copyright Notice appears in conjunction with the works, which it has done by submitting exhibits showing that the Copyright Notice was at the bottom of the webpage on which its works appeared. (Pl.'s Opp'n at 8-10.) The ultimate question of whether the Copyright Notice conveys false CMI in connection with the work, Plaintiff argues, is not something to be definitively decided at the

pleadings stage, but is instead a factual question that the jury should determine after considering the content of the website as a whole.

Defendant cites *SellPoolSuppliesOnline.com, LLC v. Ugly Pools Arizona, Inc.*, 804 F. App'x 668 (9th Cir. 2020), an unpublished, non-precedential opinion where the Ninth Circuit agreed with the district court's order granting summary judgment to the defendant and finding that a copyright notice "located at the bottom of the webpage in a shaded box" and separated "from the rest of the content on the webpage" was not conveyed in connection with copies of a work when it was "generic and did not communicate that Defendants owned the photos," was "not located on or next to Plaintiff's photos," and "Plaintiff's photos were imprinted with their own copyright markings." *Id.* at 670-671.[2] However, neither *SellPoolSupplies.com*—which spends only two paragraphs discussing the false CMI claim at issue—nor any of the other cases Defendant relies on explain how requiring information in a copyright notice to "suggest that it was associated with or linked to" the work in question, *id.* at 671, can be reconciled with the DMCA's legislative history, in which legislators expressed their intent that the phrase "conveyed" be understood in the "broadest sense" possible. *Janik v. SMG Media, Inc.*, No. 16CIV7308JGKAJP, 2018 WL 345111, at *12 (S.D.N.Y. Jan. 10, 2018) (quoting S. REP. 105-190 at 35 (1998)). The phrase "is not meant to require any type of transfer, physical or otherwise, of the information. It merely requires that the

---

[2] Although Defendant claims that district courts "routinely" apply the *SellPoolSuppliesOnline.com* "analysis" at the 12(b)(6) stage "to dismiss Section 1202(a) claims based on generic copyright notices that lack physical proximity to the asserted works," (Def.'s Mem. at 7), the Court notes that according to Westlaw, *SellPoolSuppliesOnline.com* has been cited in total by only 10 other cases, several of which were not motions to dismiss and at least two of which distinguish rather than follow the analysis. The only case either Defendant or the Court could locate from *this* Circuit applying the *SellPoolSuppliesOnline.com* analysis on a motion to dismiss is *Lixenberg v. Complex Media, Inc.*, No. 22-CV-354 (RA), 2023 WL 144663, at *5 (S.D.N.Y. Jan. 10, 2023), which involved a generic logo on a photograph rather than a copyright notice with a copyright symbol below a set of documents and is thus inapplicable.

information be accessible in conjunction with, or appear with, the work being accessed." *Id.* "Physical proximity" is "not the only appropriate measure of whether a copyright notice constitutes CMI," *Pierson v. Infinity Music & Ent., Inc.*, 300 F. Supp. 3d 390, 391 (D. Conn. 2018); "'[i]n connection with,' by plain reading and common sense, comprehends information conveyed <u>in</u> or <u>with</u> a copyrighted work if that information otherwise satisfies § 1202(c)'s criteria." *Bounce Exch., Inc. v. Zeus Enter. Ltd.*, No. 15CV3268 (DLC), 2015 WL 8579023, at *3 (S.D.N.Y. Dec. 9, 2015) (emphasis in original).

The broad meaning of "conveyed in connection with" is consistent with its place within the statutory structure—not as part of the sections outlining the various violations, but as part of the definition that determines whether information falls under the category of CMI at all. Thus, at the motion to dismiss stage, unless it is "implausible" that a viewer could understand the information to be referring to the defendant as the work's copyright holder, dismissal is inappropriate. *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 305 (S.D.N.Y. 2011); *see also BanxCorp v. Costco Wholesale Corp.,* 723 F. Supp. 2d 596, 610 (S.D.N.Y. 2010) (declining to hold as a matter of law that "CMI must be placed on the actual information on a website in order to state a claim under the DMCA" because "[a]t summary judgment, Defendants will have an opportunity to present evidence that the placement of the CMI [] indicated that it did not refer to the [work].")[3]

In the Court's view, the question of whether information qualifying as CMI implies that the defendant is a copyright holder of a work that does not belong to them based on

---

[3] Plaintiff also argues that the Copyright Notice is "conveyed in connection with" the work based on the district court's holding in *Pierson* that a Copyright Notice at the bottom of the page is "conveyed in connection with" the work appearing there; Defendant disagrees, arguing that *Pierson* is distinguishable based on Terms and Conditions that it contends implied copyright ownership in a way that Defendant's do not. Because the Court has determined that the Amended Complaint sufficiently pleads that the Copyright Notice is CMI

specific factors such as visual presentation and proximity is properly considered not as part of that threshold inquiry, but as part of considering falsity and intent; at this stage, Plaintiff's allegations and exhibits showing a Copyright Notice at the bottom of a page on which Plaintiff's works appear is enough to allege that it "appears" with and is "accessible in conjunction with" the works at issue. To the extent Defendant argues that the Amended Complaint does not plausibly allege that the Copyright Notice is also false, Plaintiff has pled that its works were altered to make Previews in which Defendant blurred Plaintiff's own copyright statement and CMI on the work; that Defendant offered that work for sale on a website with its own Copyright Notice at the bottom of the webpage on which the work appeared; and that the copy of the work a user would receive after paying to unlock it was watermarked with Defendant's name and additional information about the document's download from and virtual location on Defendant's website. These facts, considered together, are enough to plausibly allege both falsity and intent for purposes of a motion to dismiss, and the motion is denied with respect to the Section 1202(a) claims related to the Copyright Notice.

### B.    Watermark

"[M]ost courts that have considered the issue have found that the meaning of CMI is broad and, at least in some circumstances, includes watermarks." *Michael Grecco Prods., Inc. v. Alamy*, Inc., 372 F. Supp. 3d 131, 137 (E.D.N.Y. 2019) (collecting cases). Defendant argues that because its Watermark accurately describes "the manner in which the documents are accessed from the Course Hero website: by sharing or downloading," a fact uncontested by

---

because it appears on the page with the works in question, it need not consider the parties' arguments as to the applicability of *Pierson* at this stage of the proceeding and whether Defendant's Terms and Conditions are incorporated by reference in the Amended Complaint such that the Court may consider them on a motion to dismiss.

the Amended Complaint, it cannot constitute false CMI. (Def.'s Mem. at 11-12.) Plaintiff responds that the language "share via" and "downloaded from," does "not negate the suggestion of ownership." (*Id.* at 10-11.) Plaintiff points to Paragraph 119 of the Amended Complaint, which alleges that Defendant "provides and distributes copyright information that is false" by "applying a Course Hero watermark to Post University's copyrighted works available for download from the Course Hero website," as satisfying the pleading requirements for a false CMI claim where the Watermark includes "Course Hero's name, website address, and a unique URL link directing customers to a webpage where Post's work is unlawfully offered for sale by Course Hero," because the information is "facially suggestive of ownership" and thus false. (Pl.'s Opp'n at 10) (quoting *Agence France Presse v. Morel*, 934 F. Supp. 2d 547, 577 11 4894-4477-5762, v. 1 (S.D.N.Y. 2013)).

In *Michael Grecco Prods., Inc. v. Alamy, Inc.*, 372 F. Supp. 3d 131 (E.D.N.Y. 2019), the court considered whether the defendant's placement of the marks "alamy" and "a" on the plaintiff's photographs constituted "false" CMI. The plaintiff in *Alamy* had previously entered into a distribution agreement for its photographs that allowed the defendant to host them on its website; when those agreements terminated, however, the defendant continued hosting plaintiff's works without permission. *Id.* The defendant argued that "its alleged placement of watermarks" did not "indicate authorship or copyright ownership" but simply identified itself as "the originator of the website" on which the photos appeared; the court disagreed, finding that "a watermarked corporate name or symbol may refer to the author or copyright owner when displayed on a copyrighted work in connection with the marketing of that work for sale or license[.]"

The parties reach different conclusions as to *Alamy's* applicability; Plaintiff argues that the facts here are a close parallel, while Defendant distinguishes the case based on the addition of the words "downloaded from" or "shared via" in its own watermark, which it

claims makes clear that it is merely the source of the document as opposed to the copyright holder. In the Court's view, Plaintiff's interpretation is the better one; while the "alamy" or "a" on the photos were not literally "false" statements, the court considered the overall context in which they were made in determining whether the plaintiff had plausibly pled that the watermarks constituted false CMI, and at least one other court from within this circuit has taken the same approach. *See Penske Media Corp. v. Shutterstock, Inc.,* 548 F. Supp. 3d 370, 381 (S.D.N.Y. 2021) (denying a motion to dismiss a Section 1202(a) claim when the plaintiff's photos appeared on defendant's website with the name "Shutterstock" watermarked on them and were not accompanied with an explanation that another company owned the copyright); *but see Steinmetz v. Shutterstock, Inc.*, 629 F. Supp. 3d 74, 85 (S.D.N.Y. 2022), *appeal withdrawn*, No. 22-2699, 2022 WL 19560566 (2d Cir. Dec. 8, 2022) (finding that making a low-resolution, watermarked copy of an image uploaded by a third-party to its website to advertise that the non-watermarked, high-resolution copy was available for purchase from defendant was not false CMI but instead "identifie[d] Defendant as the source of an image downloaded from its portfolio or platform.")[4]

In the Court's view, *Alamy* and *Penske's* approach of leaving determinations about the impression created by a website for summary judgment or trial, rather than resolving them on a motion to dismiss, is the correct one, and at least one court outside this district has taken the same approach. *See Merideth v. Chicago Trib. Co., LLC*, No. 12 C 7961, 2014 WL 87518, at *3 (N.D. Ill. Jan. 9, 2014) (holding that so long as the complaint alleges facts and specific language used by the defendant that could "plausibly be said" to be construed as false CMI, the motion should be denied because "whether [the] language is sufficient to be considered

---

[4] *Steinmetz,* however, was decided on summary judgment based on the undisputed facts and included evaluation of the website, the terms of use, and the defendant's business model as a whole to determine what impression the information alleged to be false CMI created.

CMI in specific reference to the [plaintiff's works'] is a matter of degree, not kind.") Considering the overall impression created by the information added by a defendant is also consistent with how closely related Section 1202(b) claims are treated. *See Wood v. Observer Holdings*, LLC, No. 20 CIV. 07878 (LLS), 2021 WL 2874100, at *6 (S.D.N.Y. July 8, 2021) (finding for purposes of a 1202(b) claim that a "reasonable person" could find that the addition of defendant's copyright notice to the gutter credit below a photograph altered the the existing CMI in a photograph's metadata when the gutter credit was more prominently displayed, because the credit could be "construed" as "trumping, diluting, or superseding" the plaintiff's CMI.)

Taking the allegations in the complaint as true and drawing reasonable inferences in Plaintiff's favor, it has plausibly pled that Defendant's Watermark stating that a document was "shared via" or "downloaded from" Defendant's website could be construed as false CMI when considered in conjunction with the Copyright Notice at the bottom of the website, and the fact that watermarked copies of the document are available only after a user has paid Defendant in some way to unlock them, and thus, the pleading standards of a 12(b)(6) motion and broad construction of the DMCA counsel in favor of denying the motion.

**IV.   Conclusion**

Defendant's motion to dismiss the Section 1202(a) portions of Count VI pertaining to the Defendant's Copyright Notice and Watermark is DENIED.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 25th day of August, 2023