UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| POST UNIVERSITY, INC., Plaintiff, | No. 3:21-cv-01242-VDO |
| v. | October 29, 2024 |
| | 1:26 p.m. |
| LEARNEO, INC., Defendant. | 450 Main Street Hartford, Connecticut |

TELEPHONIC STATUS CONFERENCE

B E F O R E:

THE HONORABLE VERNON D. OLIVER, U.S.D.J.

Official Court Reporter:
Corinne T. Thomas, RPR
(203) 809-0848

A P P E A R A N C E S:

For the Plaintiff:

HARRIS ST. LAURENT & WECHSLER LLP
40 Wall Street
Suite 53 FL
New York, NY 10005
(212) 397-3370
E-mail: Yaronoff@hs-law.com
BY: YONATON ARONOFF, ESQ.
ALISHA L. MCCARTHY, ESQ.
ASHLEY N. ROBINSON, ESQ.
JACLYN DANIELLE NEWMAN, ESQ.

GETZ BALICH LLC
10 Waterside Drive
Suite 205
Farmington, CT 06032
(860) 470-4703
E-mail: Tjohnson@getzbalich.com
BY: TIMOTHY ANDREW JOHNSON, ESQ.

DILWORTH IP LLC
470 James Street, Suite 007
New Haven, CT 06513
(203) 220-8496
E-mail: Blehberger@dilworthip.com
BY: BENJAMIN J. LEHBERGER, ESQ.

For the Defendant:

MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Suite 6000
Los Angeles, CA 90017
(213) 892-5200
E-mail: Jgratz@mofo.com
BY: JOSEPH C. GRATZ, ESQ.
JUSTIN KAREEM REZKALLA, ESQ.
ANNIE LEE, ESQ.

SHIPMAN & GOODWIN LLP
One Constitution Plaza
Hartford, CT 06103
(860) 251-5000
E-mail: Ebuchanan@goodwin.com
BY: ELIZABETH H. BUCHANAN, ESQ.

APPEARANCES CONTINUED:

ALSO PRESENT:
KIMBER SUMMERS
MONIQUE HO

(Call to Order, 1:26 p.m.)

THE COURT: I apologize for the delay. We're on the record in civil matter *Post v. Learneo*.

Let's please begin with counsel for the plaintiff identifying themselves for the record. Good afternoon.

MR. ARONOFF: Good afternoon, Your Honor. This is Yonaton Aronoff of Harris St. Laurent & Wechsler. I'm joined from my firm by Alisha McCarthy, Jaclyn Newman, and Ashley Robinson. And my co-counsel is on the line, that's Timothy Johnson of Getz Balich, and Benjamin Lehberger of the Dilworth firm. And also Kimber Summers from Post is on the line as well.

THE COURT: Thank you. Good afternoon.

And for the defense.

MR. GRATZ: Good afternoon, Your Honor. This is Joe Gratz of the Morrison Foerster firm. With me from my firm are Annie Lee and Justin Rezkalla. Also on the line for defendant is Elizabeth Buchanan of the Shipman & Goodwin firm. We are also joined by Monique Ho, the general counsel of the defendant.

THE COURT: Thank you, counsel. Good afternoon. We're here for the pre-filing conference as well as to discuss as necessary trial and any

other findings -- filings, I should say, and the pretrial memo and the joint trial memo.

Let's start, please, with counsel for the plaintiff understanding -- I'm sorry, counsel for the defense understanding we have our written filings. If you could, for purposes of the record, just summarize the content of your pre-filing letter regarding a motion for summary judgment.

MR. GRATZ: Certainly, Your Honor. So as we identified in our letter, defendant intends to move for summary judgment on all of the claims in this case that have sort of any economic heft to them, the most notable of which is the DMCA claim under Section 1202. That motion will be on the basis that Learneo does not meet -- and the undisputed facts show that Learneo does not meet several of the elements of that statute such that the plaintiff cannot recover the billions of dollars in statutory damages that they ascribe to that claim.

There are a number of mental state elements associated with Section 1202, each of which must be met, and none of which, we posit, is met here under the undisputed facts, most notably that the alleged intentional removal of copyright management information results from an automated process that

operates on contents regardless of what they are, just takes out all but the top of the first page of a document, for example, and that doesn't count as intentional removal of copyright management information even if there is some copyright information somewhere in the document.

As we describe in our submission, we have a number of other arguments relating to the elements of the claims which I'm happy to go into in greater detail, but in short, with respect to the Section 1202 claim and the mental state elements, we think that the undisputed facts show that properly interpreted, those elements cannot be met here and that is a determination that a number of other Courts have made at the summary judgment phase.

With respect to the Section 1202(a) claim for allegedly false copyright management information, in particular, we have a separate argument that does not relate to mental state, that is that the statements that are claimed to be false copyright management information are, in fact, factually true and thus cannot meet the element of being false copyright management information.

We have other arguments with respect to the DMCA claim, for example, that there is not standing

because the plaintiff has not been injured as a result of the absence of copyright management information since they do not police their copyrights using copyright management information. And that's a factor that a number of Courts have identified as important in adjudicating Section 1202 claims at the summary judgment phase.

Those are the arguments with respect to the Section 1202 claim at a high level which, of course, I'm happy to go into in greater detail.

With respect to other claims, the first thing I want to say about those other claims is that they are of greatly reduced economic significance based on the damages request, but there are infirmities with them as well with respect, for example, to the state law claims, that they are pre-emptive, and with respect to the trademark claim, that it is not -- the alleged trademark harm here is so tightly bound up with the claimed copyright right right that there can't be a separate trademark claim.

At a high level, those are the issues as we've described them in our pre-motion conference letter on which we intend to move for summary judgment.

THE COURT: Counsel, thank you very much.

And just to the extent it was mentioned, let me ask, has doctor -- is it Wind or Wind, please?

MR. GRATZ: Dr. Wind.

THE COURT: Has he been deposed?

MR. GRATZ: Yes.

THE COURT: All right. Thank you. For the defense, if you want to meet perhaps the strongest of the arguments, I'll leave that to you. No need to be too lengthy about it. Obviously, I've read the submissions and also the preliminary 56(a)(2) statements.

From the plaintiff, please.

MR. ARONOFF: Your Honor, this is Mr. Aronoff. I guess it depends on how much into the weeds you would like to get on some of the individual arguments. I may ask my colleagues to address, for example, the intent piece and the distribution piece.

At a high level, it will not surprise Your Honor to hear that we don't believe there's a meritorious summary judgment motion to be made here and we believe that these are factual issues that have been raised or that they intend to raise. Intent, as Your Honor knows, is a clear factual issue. That's a classic one.

And with respect to, for example, the false

-- true statements cannot be false CMI, our position there, which we put in our letter, is exactly what was addressed and rejected by Judge Arterton in denying the motion to dismiss. And even though that was on the motion to dismiss posture, Judge Arterton's opinion went into detail about how you have to look at the full context when evaluating whether the -- where the location of a copyright notice is relative to the document and how that matters and whether a watermark that otherwise contains a true -- technically true statement can nevertheless be misleading.

We put in expert evidence that consumers do find it misleading and we think these are fact issues for the same reason Judge Arterton seems to think these were fact issues notwithstanding it was on a motion to dismiss.

I'm happy to address in greater detail or have my colleagues address any of the specific arguments Mr. Gratz raised such as intent and the distribution question if Your Honor would like us to do that.

THE COURT: All right. Can you address, because I know it's going to come up later, the proper calculation of DMCA damages, preview,

download, upload, et cetera?

MR. ARONOFF: Yeah. I'm going to ask Mr. Johnson to do that, judge, if that's okay with you.

THE COURT: Absolutely. Thank you.

MR. JOHNSON: Yes, Your Honor. This is Timothy Johnson. I'm happy to address that issue.

As far as we see it, the Learneo website, Course Hero, is organized so that a document generally goes through what we call a life cycle that has four stages to it. Users upload those documents to their website. Learneo then alters and truncates and adds banners and logos to them at what we're calling a bespoke preview web page stage in that life cycle where people can kind of get a taste of a document to decide, depending on who they are, whether they want to become a member or a subscriber to Course Hero, or if they already are, they have the option of unlocking a document.

Then when a document is unlocked, you're taken to a new web page that then displays a window that has this document displayed without the blurring and usually without banners over the top of it. And the user can then also optionally download the document and receive typically a PDF document.

Our position is that at each of those stages, Course Hero, or Learneo, excuse me, violates 1202(a) and/or (b) differently at each stage based on what they do. For example, when a document is uploaded to them, they take that document; if necessary, they convert it to a PDF. One it's a converted to a PDF, they break that document up into a number of pieces. And then for each and every one of those pieces, they create a separate file that blurs that portion of the document.

And those -- so in other words, you know, I heard the other side say we don't target information on a website to look for CMI; however, what they do do is they blur every piece of the document. So, you know, we believe the intent there is to change everything on that document.

When you get to the preview stage, we are arguing that they provide, like, a bespoke preview web page where, depending on what your status is as a user, whether you're a member and logged in, whether you're not a member only seeing your first preview, the bespoke preview web pages, or you're a nonmember and you have already viewed a whole bunch of these preview web pages, Course Hero sends out a different web page to different users and they do so on a

click-by-click basis.

So when -- for example, when a user or someone who is logged in and is a subscriber goes to view a web page and they click on it, they reassemble the original document and then place the blurred overlay on top of it. Approximately five out of every six segments of the document are blurred so that you can only get a taste of the document.

In addition, they often truncate a document. So if it's four pages, you might only see two of those pages. And they have banners that are opaque and lay over top of the document. In many cases this alters many different types of CMIs. We've seen it alter the school name. We've seen it change the author's name, all different types of statutorily defined CMI.

If you're a nonsubscriber to the site, when you click on a link that leads to a bespoke preview page and they detect that you're a nonmember, they assemble a different web page for you and you get the same document as populated on the web page; however, they overlay it differently. If you're in your first few, you will get a fairly similar partial blurred preview document where still five out of six segments of the document are blurred and only one is still

visible but the banners are different and a different set of type of advertising trying to get you to become a member.

And then if you click on more than four preview -- bespoke preview web pages and you get to the fifth one, then Course Hero, the website, then blurs every aspect of the document and the entire document is blurred and a large banner is placed over top of it so that you're guaranteed if the document has CMI, they certainly alter or blur it. So on those pages, what we're arguing there -- excuse me. I'll step back one second.

At the upload stage, what we're saying is that they're violating 1202(b)(1) where the aspect of where they remove or alter CMI takes place both when they blur each and every segment of a document for use later as a preview but also because they detach any metadata that was associated with the original uploaded document from those files.

At the preview stage, what we're saying is that when they distribute or when they send you the HTML files after they discover what your status is on that website and send you the appropriate HTML file with the overlays that they want you to see, they are removing or altering CMI on a systematic basis.

We're also saying there that they have populated those web pages with their own CMI, that they've added banners and advertisements and logos and a copyright notice that our survey data shows is causing confusion with visitors to the website thinking that Learneo is either the author, the owner, or has obtained the rights to these documents in violation -- and we believe that is evidence of a violation of 1202(a).

Moving on to the unlocked, now, the only people that can unlock a document are those subscribers who have not used their limited monthly number of unlocks, but if they exchange, let's say -- we'll call it a token, they exchange an unlocked token in exchange for now moving on to an unlocked page, they then move on and they can see the four corners of the document. There's no more blurring. There is sometimes some bannering that overlays on the document; however, still what we're seeing is the advertisement banners, copyright notice, all populating a web page where there is a single, prominently displayed document.

In this case, we're seeing thousands of Post University documents being part of these web pages. And then optionally, a user can download a version of

the document if they so choose and what happens in most instances is that the Course Hero website creates a brand-new PDF file that, again, has the content from the four corners of the original document on each of the pages and what they do or what they used to do is provide a large diagonal watermark over the document that said something along the lines of this study resource is shared via Course Hero, I believe it's dot com.

In addition, at the bottom of the page, they also add two lines of text that both include a -- the Course Hero website name and identified when the document was downloaded and it also identified some user information.

In addition, when that PDF document is created by the Course Hero website, Course Hero designed it so that any -- so that in most instances when the PDF document is created, they add a notes section, some text that prevents the document from being re-uploaded to Course Hero as a new study resource generally ending a trick that users could do to create a loop; however, at the same time, any of the original metadata that was there that could include valuable information for identifying a document, such as an author name, the person who last

modified the document, the company name -- and again, we have hundreds of documents in this case that have metadata that identifies Post University as the owner of the document -- that is wiped. It is gone. It is no longer part of the document that is downloaded.

So generally speaking, we have seven different types of violations of 1202 spread across the four life cycle stages: Upload, preview, unlock, and download.

THE COURT: Thank you, counsel.

Anything, finally, from Learneo on that briefly?

MR. GRATZ: Yes. Briefly, Your Honor, I want to emphasize one thing in what we just heard which is that everyone agrees that what is blurred or taken out or -- with respect to metadata is all of it, that is all of the pieces of the document can be equally blurred and the purpose of the blurring doesn't have anything to do with CMI.

We heard, you know, it's our intent to change everything in the document and that goes to, I think, the dispositive of the legal question based on undisputed facts that's before the Court on summary judgment which is is it intent- -- did you intentionally remove CMI if you just blurred the

entire document, right, regardless what it contained, and the answer to that is no.

To intentionally remove CMI, you need to be doing something to target CMI rather than just blur content without regard to whether or not they are CMI. That's the first of my couple of brief responses.

The second is that we are hearing that they are sort of seven X dipping on statutory damages, but I want to note that even if they were only one X dipping on statutory damages, the result here would be millions or billions of dollars on a claim where their actual damages are by their own reckoning well under $1 million total.

And finally, that we didn't hear that anything was false. We heard, for example, that the document said this study resource was downloaded from Coursehero.com, which is simply true. And all of the things that Learneo puts on these documents are not there to associate them with Learneo. They are true statements that are there to ensure that these documents are used in the right way, and in the event someone uses them in the wrong way, that they can be traced back to their source so that appropriate measures can be taken to address any issues that

arise.

THE COURT: All right. Thank you, counsel. Thank you both.

Might I ask -- this is separate from the contents of pre-filing letters, might I ask to the extent that counsel has discussed the *Daubert* motion related to the doctor, have there been any ongoing settlement discussions post magistrate Judge Richardson in June?

MR. ARONOFF: Your Honor, this is Mr. Aronoff again. I wasn't following the connection exactly to the *Daubert* issue, but the answer to your second question is there have not been.

THE COURT: I'm sorry. The answer to my second question is what? You dropped.

MR. ARONOFF: No, there have not been discussions, settlement discussions, since the settlement conference.

THE COURT: Okay. Well, the Court is satisfied at least with the briefing schedule as provided. I think defense counsel wrote the first date as October 9th, obviously meaning November 9th, then January, then February.

MR. GRATZ: So Your Honor, in ECF 172, we have a revised -- we have a revised schedule, right.

It begins November 8th.

THE COURT: Okay. Thank you. I'm working from the copy I printed before in the interest of being good to the environment. So you have November 8th and the other due dates are what, please?

MR. GRATZ: Correct. November 8th for the motion, January 10th for the opposition, and February 7th for the reply with an indication that we anticipate -- I mean, as Your Honor's probably gleaned from our discussion today, there are some issues here that we think bear and benefit from live discussion. So we expect we'll be requesting oral argument on our motion.

THE COURT: That is noted. There seems to be no objection to that date. The only question is whether trial is set thereafter, and I'll let the parties know that we can accommodate our trial on our trial date set in May, which is May 20, 2025. It seems that would be enough time to decide the motion for summary judgment, then carve out as necessary during the pretrial conference a decision on all of the motions, motions in limine, including the *Daubert* motion relating to the expert, I'll say calculation or assessment of damages for lack of a more precise

phrase.

Does anyone have an issue with the May 20, 2025, date and we'll work backwards from there for the filing of the other necessary filings including the joint trial memo?

MR. GRATZ: Your Honor, our technology expert, Ms. Frederickson-Cross, is unavailable that week but is available the following week, and we are sort of all available the following week, that is May 25th to 30th.

THE COURT: I'm sorry. May 25?

MR. GRATZ: Correct.

THE COURT: Okay. And how would that date look? I think we may have to tweak it a bit as necessary with our jury clerk, but is that a date that works for everyone?

MR. ARONOFF: Your Honor, this is Mr. Aronoff. I believe that works for plaintiff. We would let the Court know very promptly if for some reason it doesn't, but that should be fine.

THE COURT: Thank you. We'll work from there. And I brought up the doctor because I'm not Magistrate Richardson but it seems that it may be potentially dispositive, with a small D, in terms of the likelihood of settlement if there's some

successful or unsuccessful challenge to his opinion and his methodology.

Am I wrong or right, counsel for Learneo, please?

MR. GRATZ: I think that is right as to the 1202(a) claim. Frankly, we think we -- we think we should probably get summary judgment on that claim on the basis that -- regardless of how that turns out. But even if we don't, yes, the *Daubert* is, in our view, likely to be dispositive of that claim even if it survives summary judgment.

THE COURT: Understood. All right then. So we can have that *Daubert*. It certainly does not have to be -- if the parties agree that they perhaps want to carve out an earlier filing date with the Court's permission for the *Daubert* claim separate from the remainder of the pretrial motions including motions in limine, the Court would be amenable to that. We can discuss that and reach out to the Court's law clerk.

Other than that, I do agree with the filing dates for the motions for summary judgment as well as that trial date, May 25th, but we'll see what we can do with that and I'll check with the jury clerk as soon as we're done here.

Is there anything else we need to address?

MR. ARONOFF: Not on the plaintiff side, Your Honor.

MR. GRATZ: Nothing else from defendants, Your Honor.

THE COURT: Well, counsel, thank you very much. Again, I apologize for the late start and we will adjourn. Thank you.

(Proceedings adjourned, 1:53 p.m.)

C E R T I F I C A T E

RE: POST UNIVERSITY, INC. v. LEARNEO, INC.
No. 3:21-cv-01242-VDO

I hereby certify that the within and foregoing is a true and accurate transcript taken in the aforementioned matter to the best of my skill and ability.

/s/ Corinne T. Thomas

CORINNE T. THOMAS, RPR
Official Court Reporter
United States District Court
450 Main Street
Hartford, Connecticut 06103
(203) 809-0848