UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| POST UNIVERSITY, INC., | |
| Plaintiff, | Case No. 3:21-cv-01242-VDO |
| v. | |
| LEARNEO, INC., | |
| Defendant. | NOVEMBER 8, 2024 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LEARNEO, INC.'S
MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ................................................................................ 1

II. FACTUAL BACKGROUND .................................................................................. 3

    A. The Course Hero Website and Its Copyright Policies ......................................... 3

    B. Accessing Documents on Course Hero ................................................................. 4

    C. Additional Tools for Rightsholders to Protect Their Intellectual Property ............ 6

    D. Post University's Business Model ......................................................................... 6

    E. Post's Takedown Notices ...................................................................................... 7

    F. Post's Evolving Complaints and the Works in Suit ............................................. 7

III. SUMMARY JUDGMENT LEGAL STANDARD ........................................................ 10

IV. SECTION 1202 AND DOUBLE SCIENTER ........................................................... 10

V. ARGUMENT ..................................................................................................... 14

    A. Post Lacks Standing for Its § 1202 Claims (Count IV) ....................................... 14

        1. Post Has Not Suffered a Concrete Injury Traceable to Alleged § 1202 Violations .................................................................................. 14

        2. Post Lacks § 1202 Standing for the Works It Admits It Does Not Own ......................................................................................................... 17

    B. Post Cannot Show Learneo Meets the Double Scienter Requirements of § 1202 (Count IV) ......................................................................................... 18

        1. Post Cannot Meet the Double-Scienter Requirement of § 1202(a) ......... 18

        2. Post Cannot Meet the Double-Scienter Requirement of § 1202(b) ......... 23

    C. Post's Lanham Act and State Law Claims Are Legally Flawed .......................... 33

        1. Post's Lanham Act Claims Are Barred by Dastar (Counts V and VI) ........................................................................................................... 33

        2. Post's State and Common Law Claims Are Preempted by Federal Copyright Law (Counts VII, VIII, IX) ..................................................... 36

VI. CONCLUSION .................................................................................................. 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A Slice of Pie Prods., LLC v. Wayans Bros. Entm't*,
  392 F. Supp. 2d 297 (D. Conn. 2005)................................................................37, 38

*Alan Ross Machinery Corp. v. Machinio Corp.*,
  No. 17-CV-3569, 2019 WL 1317664 (N.D. Ill. Mar. 22, 2019)...............................16

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................................................15

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
  373 F.3d 296 (2d Cir. 2004).................................................................................36, 37

*Cap. Records, LLC v. Vimeo, LLC*,
  826 F.3d 78 (2d Cir. 2016)........................................................................................28

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)................................................................................................10

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003).................................................................................33, 34, 35, 36

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003)................................................................................................17

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
  No. 22-cv-1463-RGK-MAA, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022)......................25

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos, Inc.*,
  228 F.3d 56 (2d Cir. 2000).......................................................................................34

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*,
  756 F. Supp. 2d 1352 (N.D. Fla. 2010)....................................................................26

*Ferdman v. CBS Interactive Inc.*,
  342 F. Supp. 3d 515 (S.D.N.Y. 2018).......................................................................13

*Fischer v. Forrest*,
  286 F. Supp. 3d 590 (S.D.N.Y. 2018), *aff'd*, 968 F.3d 216 (2d Cir. 2020)............................26

*Frontier Grp., Inc. v. Nw. Drafting & Design, Inc.*,
  493 F. Supp. 2d 291 (D. Conn. 2007).......................................................................38

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
  No. 13-cv-0496 SOM/BMK, 2014 WL 5798282 (D. Haw. Nov. 7, 2014),
  *aff'd*, 700 F. App'x 674, 675 (9th Cir. 2017)............................................................25

*FurnitureDealer.Net, Inc v. Amazon.com, Inc.*,
  No. CV 18-232 (JRT/HB), 2022 WL 891473 (D. Minn. Mar. 25, 2022)................................26

*Hudson v. Universal Studios, Inc.*,
  No. 04-CV-6997 (GEL), 2008 WL 4701488 (S.D.N.Y. Oct. 23, 2008) ................................35

*Kelly v. Arriba Soft Corp.*,
  77 F. Supp. 2d 1116 (C.D. Cal. 1999), *aff'd in part & rev'd in part on other
  grounds*, 336 F.3d 811 (9th Cir. 2003) ....................................................................26

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
  No. 20-cv-1931-DMG (Ex), 2020 WL 5991503 (C.D. Cal. Aug. 14, 2020)..........................25

*Krechmer v. Tantaros*,
  747 F. App'x 6 (2d Cir. 2018) ..............................................................................18

*Lieb v. Korangy Publ'g, Inc.*,
  No. 15-CV-40 (AKT), 2016 WL 8711195 (E.D.N.Y. Oct. 4, 2016)....................................35

*Lipton v. Nature Co.*,
  71 F.3d 464 (2d Cir. 1995)..............................................................................13, 34

*McGucken v. Shutterstock, Inc.*,
  No. 22-Civ.-00905 (JHR), 2023 WL 6390530 (S.D.N.Y. Oct. 2, 2023) (appeal
  pending) ......................................................................................... *passim*

*Moser Pilon Nelson Architects, LLC v. HNTB Corp.*,
  No. 05 CV 422(MRK), 2006 WL 2331013 (D. Conn. Aug. 8, 2006)....................................37

*Porto v. Guirgis*,
  659 F. Supp. 2d 597 (S.D.N.Y. 2009)........................................................................38

*Radolf v. Univ. of Conn.*,
  364 F. Supp. 2d 204 (D. Conn. 2005)........................................................................35

*Raw Story Media, Inc. et al. v. OpenAI, Inc. et al.*,
  No. 24-civ-01514, slip op., ECF No. 117 (S.D.N.Y. Nov. 7, 2024)................................16, 17

*Res. Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*,
  926 F.2d 134 (2d Cir. 1991)..................................................................................12

*Roberts v. Genting N.Y. LLC*,
  68 F.4th 81 (2d Cir. 2023) ....................................................................................10

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)......................................................................................................14

*Steele v. Bongiovi*,
  784 F. Supp. 2d 94 (D. Mass. 2011) ............................................................................16

*Steinmetz v. Shutterstock, Inc.*,
  629 F. Supp. 3d 74 (S.D.N.Y. 2022)............................................................................19

*Stevens v. CoreLogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) ..................................................................................14, 32

*Thomas Publ'g Co., LLC v. Tech. Evaluation Ctrs., Inc.*,
  No. 06-Civ.-14212 (RMB), 2007 WL 2193964 (S.D.N.Y. July 27, 2007) ...........................34

*Tomelleri v. Zazzle, Inc.*,
  No. 13-CV-02576-EFM-TJJ, 2015 WL 8375083 (D. Kan. Dec. 9, 2015) .................19, 20, 23

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)..........................................................................................14, 15, 16

*Victor Elias Photography, LLC v. Ice Portal, Inc.*,
  43 F.4th 1313 (11th Cir. 2022) ....................................................................................32

*Zuma Press, Inc. v. Getty Images (US), Inc.*,
  845 F. App'x 54 (2d Cir. 2021) ................................................................11, 14, 24, 28

*Zuma Press v. Getty Images (US), Inc.*,
  349 F. Supp. 3d 369 (S.D.N.Y. 2018)..............................................................13, 14, 22, 27

**Statutes**

17 U.S.C. § 102................................................................................................................36

17 U.S.C. § 103................................................................................................................36

17 U.S.C. § 106..........................................................................................................36, 37

17 U.S.C. § 301(a) ..........................................................................................................36

17 U.S.C. § 501................................................................................................................10

17 U.S.C. § 512(c) ...................................................................................................1, 7, 28

17 U.S.C. § 1202(a) .............................................................................................. *passim*

17 U.S.C. § 1202(b) .............................................................................................. *passim*

17 U.S.C. § 1202(c) ........................................................................................................11

17 U.S.C. § 1203 ..............................................................................................................16, 17

Lanham Act § 32 (15 U.S.C. § 1114) .....................................................................................35

Lanham Act § 43 (15 U.S.C. § 1125(a)) .........................................................................33, 34, 35

**Other Authorities**

Authors, Attribution, and Integrity: Examining Moral Rights in the United States:
    A Report of the Register of Copyrights, U.S. Copyright Office (April 2019) .........................11

Fed. R. Civ. P. 56 ................................................................................................................10

2 McCarthy on Trademarks and Unfair Competition § 10:26 (5th Ed. 2024) ..............................34

## I.    PRELIMINARY STATEMENT

Course Hero is a website, owned by Learneo, Inc., where students and educators share study materials online.  Similar to YouTube and Facebook, Course Hero provides a platform for users to share their own content.  Course Hero users can both upload their own study resources and access study resources shared by others.  Users identify their documents by school and course, making it easy for students and educators to find the materials relevant to them.  Like many websites, Course Hero has a paywall; only users who pay for access or upload their own study resources may access study materials in the Course Hero library.

As with every other Internet site that allows user-uploaded content, Course Hero's users sometimes upload materials that they don't have permission to upload.  That's not what Course Hero is for:  Course Hero's Terms of Use prohibit copyright-infringing uploads.  Course Hero also maintains a robust system of both copyright upload filters and copyright notice and takedown protocols to combat potential infringement.  Learneo maintains a registered Digital Millennium Copyright Act ("DMCA") agent with the U.S. Copyright Office and qualifies for the copyright infringement safe harbor under 17 U.S.C. § 512(c).[1]  Thus, whenever Plaintiff Post University has sent DMCA notices to Learneo, Learneo has removed the identified materials from the Course Hero website.

From those ordinary facts, Post University (a for-profit university) seeks extraordinary damages.  Post demands *$33.9 billion* in statutory damages (more than 260 times Post's corporate valuation) because 2,342 documents were allegedly uploaded to Course Hero by Post

---

[1] Under 17 U.S.C. § 512(c), an online service provider cannot be liable for copyright infringement if "upon notification of claimed infringement," it "responds expeditiously" to remove or disable access to the material claimed to be infringing and has adopted and reasonably implemented a policy for terminating repeat infringers, among other requirements (commonly referred to as a "notice and take down" process and "repeat infringer" policy).

students without Post's permission.[2]  This request for damages is ***not*** grounded in claims for copyright infringement.  Post only holds copyright registrations for five works, and even those five works were registered with the Copyright Office too late for Post to seek statutory damages.  Instead, realizing its copyright infringement claims are worth a grand total of $114.85 under Post's own calculations, and likely blocked by Course Hero's eligibility for the DMCA safe harbor, Post pivoted to asserting a novel theory of interference with "copyright management information" under 17 U.S.C. § 1202.  Neither the facts nor the law support Post's novel § 1202 claims.

Post's § 1202 claims cannot survive summary judgment.  Post admits that it has experienced ***no*** harm from Learneo's alleged interference with copyright management information.  Furthermore, Post has ***no*** evidence that Learneo had the required mental state, a high bar set by the double scienter requirements of the statute.  These two absences of evidence are fatal to Post's § 1202 claims.

Post's actions have made clear that this lawsuit is not actually about combating copyright infringement, but about wielding a novel legal theory to seek a multi-billion-dollar windfall.  To wit:  Post ***stopped*** sending Learneo DMCA notices because Course Hero timely processed them. Post then affirmatively ***requested*** that Course Hero leave Post's content online during this litigation.  And Post has ***rejected*** every attempt by Learneo to assist Post with proactively preventing unauthorized Post content from being uploaded, such as Learneo's offer to give Post access to and training on Learneo's custom built technological tools for copyright-policing. Every action that Post has taken has been ***contrary*** to its stated copyright interests, and instead in

---

[2] Post's pre-filing conference letter states that Post seeks over $2 billion in statutory damages under § 1202.  Post's damages expert Drew Mooney however calculates statutory damages of $33.9 billion, and Post has never indicated to Learneo that it intends to seek less than Mr. Mooney opines is appropriate. SOUF ¶ 78.

pursuit of a "gotcha" strategy.  The Court should grant summary judgment against Post's § 1202 claims and end this gamesmanship.

## II.    FACTUAL BACKGROUND

### A.    The Course Hero Website and Its Copyright Policies

Course Hero is an online educational platform designed to help every student graduate confident and prepared, and to help educators design courses and share teaching strategies. SOUF ¶ 1; Wentworth Decl. ¶ 8.  Course Hero users—either students or educators—upload study resources for others to access.  SOUF ¶ 2.  To create an account or upload a document, a user must agree to Course Hero's Terms of Use, Copyright Policy, and Honor Code.  SOUF ¶ 3. By agreeing to those policies, users represent, warrant, and agree that they will only upload documents that they have the necessary rights to upload, and will not use the website in any manner that would violate school academic integrity policies or infringe the intellectual property rights of others.  SOUF ¶¶ 4-5.  Users also expressly grant Course Hero a license to modify, store, edit, display, reproduce, and distribute their uploaded documents on Course Hero.  SOUF ¶ 6.  The Honor Code warns that users who misuse the site for cheating will "likely get caught" because Course Hero goes "out of [its] way to make sure" that its materials are analyzed by technologies that scan for plagiarized material in student-submitted work.  SOUF ¶ 8.

Learneo has a DMCA notice and takedown process maintained by a dedicated compliance team.  SOUF ¶ 9.  Course Hero's Terms of Use directs copyright holders to report potentially infringing content using its online DMCA form.  SOUF ¶ 10.  Consistent with the Copyright Act, Learneo takes down all content reported by a § 512(c)-compliant notice and terminates the accounts of repeat infringers.  SOUF ¶ 9.  In 2020 and 2021, Learneo removed all content on Course Hero identified pursuant to a DMCA-compliant notice within ██████ ██ on average.  SOUF ¶ 11.

Course Hero's library currently hosts over ████████ documents and over ██████ educator accounts, including from educators associated with Harvard University, Yale University, Columbia University, Princeton University, Dartmouth College, University of Connecticut, Fairfield University, Quinnipiac University, Sacred Heart University, University of New Haven, Wesleyan University, Connecticut College, Southern Connecticut State University, and Housatonic Community College.  SOUF ¶ 12; Wentworth Decl. ¶ 10.

**B.    Accessing Documents on Course Hero**

Users can search for documents on Course Hero by school, course, and type of document. SOUF ¶ 13.  Users can also search the full text of the documents for key words and phrases using Course Hero's search tool or external search engines like Google.  SOUF ¶ 14.  Documents uploaded to Course Hero are "locked," and a user must use an "unlock" to access or download the full document.  SOUF ¶¶ 15-16.  Before a document is unlocked, the user is shown a preview of the document so they can confirm what they are unlocking.  SOUF ¶ 19.  A preview shows an excerpt of the document approximately half a page long with other portions blurred and other pages left off, as shown below.  SOUF ¶ 20.



Exhibit 2, Amended Complaint at 2.

Users may obtain unlocks by uploading their own study resources, by paying a subscription fee, or by purchasing unlocks à la carte.  SOUF ¶ 21.  Educators are given free unlocks each month.  SOUF ¶ 22.

For every user-uploaded document made available on Course Hero, the Course Hero software acts the same; it does not operate differently on parts of the document that could

constitute copyright management information ("CMI") versus other parts of the document. SOUF ¶ 38.

### C.    Additional Tools for Rightsholders to Protect Their Intellectual Property

Where appropriate, Learneo offers access to additional, powerful tools that Learneo has built for rightsholders to manage their intellectual property.  SOUF ¶¶ 45-52.  For instance, the Course Hero software runs an automatic copyright check that rejects documents upon upload that contain certain copyright-related terms, symbols, and phrases.  SOUF ¶ 45.  Learneo will also offer free unlocks where it may help a rightsholder confirm whether a document is infringing and instruct rightsholders to include a specific phrase on any documents that they wish to be blocked from the site.  SOUF ¶ 46.  In certain circumstances, Course Hero will offer "Pinpoint," a tool created to make it easier for rightsholders to police their content.  SOUF ¶ 47.  Pinpoint allows rightsholders to request bulk takedowns of documents.  SOUF ¶ 48.  Pinpoint also allows rightsholders to upload their copyrighted content on Course Hero's backend, not accessible by other users; Pinpoint then identifies duplicates across Course Hero's entire library and automatically blocks future uploads of matching content.  SOUF ¶ 48.  Course Hero only offers access to these tools to rightsholders on an ad hoc basis to prevent abuse.  SOUF ¶ 50.  In addition, Course Hero offers to all educator accounts the "Claim a Course" feature.  SOUF ¶ 49. Claim a Course allows an educator to list themself as the instructor of record for a course and receive automatic notifications of uploaded documents associated with their course, which they can then assess for whether that content should be on Course Hero.  SOUF ¶ 49.  Pinpoint and Claim a Course each took several months to build by a team of several engineers, and both features continue to be maintained and updated.  SOUF ¶ 51.

### D.    Post University's Business Model

Post is a for-profit college based in Waterbury, Connecticut.  ECF No. 31 ("Am.

Compl.") ¶ 6.  90% of Post's faculty are adjunct professors who do not design their own course materials but teach using materials pre-developed by Post.  Declaration of Annie A. Lee ("Lee Decl.") Ex. J at 47:7-11, 115:9-16 (Bauer Tr.).  Post separately hires course developers to create its course materials and update them approximately every three years.  *Id.* at 121:7-122:3, 137:13-16.  Approximately 95% of Post's students attend classes online.  *Id.* at 57:22-58:3, 58:12-14, 63:10-12.  Most students at Post are between the ages of 30 and 40.  *Id.* at 58:15-17. 50-60% of Post's student body is comprised of first-generation college students.  *Id.* at 64:3-6. Annual tuition on Post's main campus is approximately $30,000.  *Id.* at 59:22-25.  The average income of a Post student is $40,000 to $60,000.  *Id.* at 64:7-13.  Over 80% of students who enroll for the first time in a four-year degree program at Post do not graduate with a degree.  Lee Decl. Ex. N at 62:13-64:1 (Monteiro Tr.).

### E.    Post's Takedown Notices

On January 6, 2021, Post sent a letter seeking the removal of 64 documents on Course Hero pursuant to 17 U.S.C. § 512(c) of the DMCA.  SOUF ¶ 53.  Learneo took down all documents listed in the letter and provided written confirmation of the takedowns.  SOUF ¶ 54. On February 24, 2021, Post sent a second letter seeking the takedown of 35 additional documents.  SOUF ¶ 55.  Learneo again removed the documents and provided written confirmation.  SOUF ¶ 56.  Each time, the documents were removed within a week of Learneo receiving Post's request.  SOUF ¶¶ 54, 56.  None of the documents identified in either letter are the subject of Post's present claims.

### F.    Post's Evolving Complaints and the Works in Suit

Apparently unsatisfied with the notice-and-takedown procedure established by Congress, Post filed suit alleging copyright infringement and violations of § 1202(b), among other claims. ECF No. 1 (Compl.).  Before Learneo was even served, Learneo offered Post additional free

tools to help prevent its materials from appearing on its website. Lee Decl. Ex. A (CH0481120). While the parties were still negotiating special terms that Post requested for access to those free tools, Post served the complaint on November 3, 2021. *Id.*

Post first identified 4,576 documents for its § 1202 claims in a letter on October 22, 2022, after nearly a year of discovery. Post has since supplemented and narrowed that list multiple times. On November 1, 2022, Post amended its complaint to add a claim under § 1202(a). Am. Compl.

Post currently asserts that 2,342 documents (the "Works in Suit") are the subject of its § 1202 claims. Lee Decl. Ex. E. All identified documents were removed from Course Hero upon Post's request within days.[3] SOUF ¶ 58.

Under § 1202(a), Post claims that Learneo provided or distributed false CMI in the Works in Suit by:

1)    employing its own copyright notice to the bottom corner of the Course Hero website (but not to any specific Post document), SOUF ¶¶ 24-25;

| | |
|---|---|
| Copyright © 2021. Course Hero, Inc. | Course Hero is not sponsored or endorsed by any college or university. |

2)    adding watermarks on downloaded versions of certain Works in Suit stating that the document was "downloaded from" or "shared via" Course Hero, ¶¶ 27-28;

---

[3] Certain Works in Suit were left on the Course Hero website through the pendency of expert discovery at Post's request. Lee Decl. Exs. B, C (email correspondence). Those documents were also promptly removed after the close of expert discovery. *Id.*

This study source was downloaded by 100000824591884 from CourseHero.com on 06-14-2021 14:03:34 GMT -05:00

https://www.coursehero.com/file/67353016/ENG110-Course-Syllabuspdf/

3)      adding metadata[4] to the downloaded versions of certain Works in Suit stating the userIDs of the uploader and downloader and the text string "CHDL-UGC-Meta," which stands for "Course Hero Download – User Generated Content – Meta,"  SOUF ¶ 29; and

4)      displaying banners on the Course Hero website, *e.g.*, "Upload your study docs or become a Course Hero member to access this document / Continue to access," "Need the answer? / [#] tutors online.  Answers in as fast as 15 minutes. / Get it – with an explanation," SOUF ¶ 31.

---

[4] Metadata is hidden data about a file that is not visible to a user unless a user explicitly directs a program to display the information. SOUF ¶ 41.

Upload your study docs or become a
Course Hero member to access this document

Continue to access

As for § 1202(b), Post claims that Learneo removed or altered existing CMI in the Works in Suit by showing document previews, by not displaying document metadata on the website, and by distributing downloaded versions of certain documents without their original metadata.

## III.    SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Roberts v. Genting N.Y. LLC*, 68 F.4th 81, 88 (2d Cir. 2023). In cases where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the burden is not on the moving party to "produce evidence showing the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rather, the burden on the moving party "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

As set forth in the Argument below, Post University does not have evidence to support either Post's harm flowing from the alleged § 1202 violations or Learneo's state of mind, among other reasons Post cannot meet its burden under § 1202. Post also cannot show any dispute of material fact as to its claims under the Lanham Act and Connecticut state and common law, each of which is legally barred.

## IV.    SECTION 1202 AND DOUBLE SCIENTER

17 U.S.C. § 1202 was enacted as part of the DMCA to facilitate the online exchange of copyrighted works and licensing arrangements. Section 1202 provides a separate cause of action from copyright infringement (17 U.S.C. § 501). Instead, it regulates certain categories of

"copyright management information" or "CMI" for a copyrighted work. "Copyright management information" is defined in the statute as including identifying information such as a work's title, author, copyright owner, and terms and conditions of use. 17 U.S.C. § 1202(c). Subject to specific requirements, § 1202(a) addresses situations involving the provision of false CMI and § 1202(b) addresses situations involving the removal or alteration of CMI. *Id.* §§ 1202(a), (b).

Section 1202 neither mandates the inclusion of CMI on works nor penalizes the mere removal of CMI. Instead, the falsification, removal, or alteration of CMI is only actionable under § 1202 if a "***double-scienter***" requirement is satisfied. *See Zuma Press, Inc. v. Getty Images (US), Inc.*, 845 F. App'x 54, 57 (2d Cir. 2021) (summ. order) ("*Zuma II*"). Initial drafts of § 1202 included only a single scienter requirement.[5] In response to concerns that the statute would be overly broad, the second scienter requirements for both §§ 1202(a) and (b)—that the alleged action be done with a particular state of mind to "induce, enable, facilitate, or conceal infringement"—were specifically negotiated for in the World Intellectual Property Organization ("WIPO") Internet Treaties and the U.S. Congress.[6]

Liability under §1202 therefore requires, among other requirements, that the defendant satisfied each of the state of mind requirements in the table below at the time of the alleged violation, 17 U.S.C. § 1202 (emphases added throughout):

---

[5] *See* Authors, Attribution, and Integrity: Examining Moral Rights in the United States: A Report of the Register of Copyrights, U.S. Copyright Office (April 2019) at 93-94 (available at https://www.copyright.gov/policy/moralrights/full-report.pdf) (discussing the legislative history of the double scienter standard).
[6] *Id.*

| Subsection | 1st Scienter Requirement | 2nd Scienter Requirement |
|---|---|---|
| § 1202(a) | "*knowingly*" provided or distributed false CMI | "*inten[ded]* to induce, enable, facilitate, or conceal infringement [of a copyright]" by that provision or distribution of false CMI |
| § 1202(b)(1) | "*intentionally* removed or altered" CMI | "*knowing*, or . . . having *reasonable grounds to know,* that [the removal of CMI] *will* induce, enable, facilitate, or conceal an infringement [of a copyright]" |
| § 1202(b)(3)[7] | "distribute[d] . . . copies of works . . . *knowing* that [CMI] has been removed or altered *without authority of the copyright owner or the law*" | "*knowing*, or . . . having *reasonable grounds to know,* that [the distribution with removed or altered CMI] *will* induce, enable, facilitate, or conceal an infringement [of a copyright]" (same as for § 1202(b)(1)) |

Thus, the elements of a claim under § 1202(a) are that the defendant (1) "knowingly" and (2) "with the intent to induce, enable, facilitate, or conceal infringement" (3) "provide[d] copyright management information" (4) "that is false." The elements of a claim under § 1202(b)(1) are that the defendant (1) "without the authority of the copyright owner or the law" (2) "intentionally" (3) "remove[d] or altere[d] any copyright management information" (4) "knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement [of a copyright]." The elements of a claim under § 1202(b)(3) are that the defendant (1) "without the authority of the copyright owner or the law" (2) "distribute[d] . . . copies of works" (3) "knowing that copyright management information has been removed or altered without authority of the copyright owner or the law" (4) "knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement [of a copyright]."

Lack of scienter can be, and routinely is, adjudicated at summary judgment. *See Res.*

---

[7] Post does not allege a § 1202(b)(2) claim.

12

*Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 141 (2d Cir. 1991) ("The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion.'") (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)); *Lipton v. Nature Co.*, 71 F.3d 464, 472 (2d Cir. 1995) ("Although courts are generally reluctant to dispose of a case on summary judgment when mental state is at issue, it is permissible to do so where there are sufficient undisputed material facts on the record to make the question appropriate for summary judgment."); *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 543 (S.D.N.Y. 2018) (granting summary judgment of no willfulness on copyright infringement claim against plaintiff who submitted no evidence defendant acted "with knowledge of Plaintiff's copyright or with reckless disregard or willful blindness as to his rights").

This includes findings of lack of scienter on summary judgment in § 1202 cases.  For example, in *McGucken v. Shutterstock, Inc.*, No. 22-Civ.-00905 (JHR), 2023 WL 6390530, at *10 (S.D.N.Y. Oct. 2, 2023) (appeal pending), plaintiff alleged that Shutterstock, an online marketplace for photographic images, had provided false CMI in violation of § 1202(a) by adding its watermark to plaintiff's images uploaded by other users of Shutterstock.  Shutterstock removed all 337 images from its website.  *Id.*  The court granted summary judgment to the defendant on the § 1202(a) claim for failure to satisfy either scienter requirement and on plaintiff's § 1202(b) claim (alleging that defendant's software had automatically removed metadata in plaintiff's images) for failure to satisfy the second scienter requirement.  *Id.*

Likewise, in *Zuma Press v. Getty Images (US), Inc.*, 349 F. Supp. 3d 369 (S.D.N.Y. 2018) ("*Zuma I*"), plaintiffs accused Getty of posting more than 47,000 of its photos on Getty's website with altered metadata in violation of § 1202(b)(3).  *Id.* at 370.  Getty removed the images

from its website promptly after being notified of plaintiffs' rights. *Id.* at 375. The court granted summary judgment to the defendant, finding that Getty "lacked the requisite intent." *Id.* at 370. The Second Circuit affirmed on those grounds. *Zuma II*, 845 F. App'x 54.

Similarly, in *Stevens v. CoreLogic, Inc.*, the Ninth Circuit granted summary judgment to the defendant on a § 1202(b) claim brought by real estate photographers alleging that the developer of a real estate software removed CMI metadata from their photographs. 899 F.3d 666, 671 (9th Cir. 2018). The Court found the second scienter requirement lacking because the evidence showed that plaintiff did not *use* the CMI to police infringement in the first place. *Id.*

These leading § 1202 cases supply the legal standard here. As set forth in the Argument below, Post University lacks evidence to support Learneo's violation of the double-scienter requirements of § 1202.

## V.   ARGUMENT

### A.   Post Lacks Standing for Its § 1202 Claims (Count IV)

As a threshold matter, Post lacks both constitutional and statutory standing to bring its § 1202 claims because it admits that it has experienced no harm traceable to Learneo's alleged § 1202 violations.

#### 1.   Post Has Not Suffered a Concrete Injury Traceable to Alleged § 1202 Violations

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). To establish Article III standing, "[a] plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). For the second requirement, Post must provide evidence that it has suffered a concrete

14

injury traceable to violations of § 1202.  *Id.* at 427 ("Only those plaintiffs who have been concretely harmed ***by a defendant's statutory violation*** may sue that private defendant ***over that violation*** in federal court.") (emphases added, original emphasis omitted).  That is, Post must "set forth specific facts" that its alleged injury was likely caused ***by the alleged falsifications, alterations, and removals of CMI*** (*i.e.*, the alleged violations of § 1202).  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Post has not offered any evidence of harms traceable to Learneo's alleged § 1202 violations.  Post's own designated corporate witness on Post's alleged harm, Mr. Frank Monteiro, repeatedly testified that any alleged harm had ***no tie*** to any violation of § 1202.  SOUF ¶¶ 66-74.  For instance, Post alleges that Course Hero's automated blurring of documents in previews is an improper removal or alteration of CMI under § 1202(b).  But when asked about alleged harm caused by the blurring of Post's logo on a document uploaded to the Couse Hero website, Mr. Monteiro responded, "I never said the blurring of the Post logo was causing harm," and "I can't specifically tie it to that."  SOUF ¶¶ 67-68.  Similarly, when asked about harm caused by the copyright notice displayed at the bottom of the Course Hero website, which Post alleges to be false CMI, Mr. Monteiro responded, "I can't testify to that."  SOUF ¶ 69.

Mr. Monteiro even disclaimed any ability to trace the harm to the alleged § 1202 violations by testifying that Post has never quantified the harm "in any way, shape, or form." SOUF ¶ 72.  Mr. Monteiro also disclaimed any link of harm to the footer watermark on downloaded documents, which Post alleges to be false CMI.  SOUF ¶ 73 ("So my durable competitive advantage, which is teaching this class, has been compromised by you allowing this information to be out there, ***footer or no footer***, and allowing it to be downloaded.") (emphasis added).  In fact, Mr. Monteiro affirmatively testified that any alleged harm is one single harm

15

tied to the *possession* of the document, rather than any allegedly false CMI, such as the footer. SOUF ¶ 74 ("Q. Okay.  What is the harm that is specifically linked to the addition of the footer in the document? A. *It's one harm.  It's you having the document.*  The footer on there is just telling me it's you.") (emphasis added).

The only harm that Post does assert is a generalized concern about students using the Internet to cheat, which is not tied in any way to Post's § 1202 claims.  For example, Mr. Monteiro testified that documents on Course Hero result in Post having to accelerate the refreshing of its classes to prevent cheating.  SOUF ¶ 70.  But Mr. Monteiro simultaneously testified that cheating existed prior to the Internet and admitted that Post had "no facts" tying the alleged cheating harm to the allegedly false copyright notice.  SOUF ¶ 71.

Without evidence that any harm is traceable to the alleged § 1202 violations, Post cannot show a genuine dispute of fact that it has been "concretely harmed by [Learneo's] statutory violation." *TransUnion,* 594 U.S. at 426-427.  Post lacks Article III standing for its § 1202 claims.  *See Raw Story Media, Inc. et al. v. OpenAI, Inc. et al.*, No. 24-civ-01514, slip op., ECF No. 117 at 6-7 (S.D.N.Y. Nov. 7, 2024) (dismissing § 1202 claims for lack of standing because plaintiffs failed to allege "any *actual* adverse effects stemming from [an] alleged DMCA violation") (emphasis in original).

Post lacks statutory standing to bring its claims for § 1202 violations for the same reasons.  *See* 17 U.S.C. § 1203 ("Any person *injured by a violation* of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation.") (emphasis added); *Steele v. Bongiovi*, 784 F. Supp. 2d 94, 98 (D. Mass. 2011) (dismissing claim under § 1203(a) in part because plaintiff could not articulate an injury specific to § 1202); *Alan Ross Machinery Corp. v. Machinio Corp.*, No. 17-CV-3569, 2019 WL 1317664, at *4 (N.D. Ill. Mar.

16

22, 2019) (dismissing claim under § 1203(a) where plaintiff's allegation that defendant's actions caused confusion in the marketplace did not amount to an injury such as reduced sales or advertisements).  Post has no evidence that it has experienced injuries stemming from Learneo's alleged § 1202 violations, and therefore all of Post's § 1202 claims must be dismissed.

As the Southern District of New York recently remarked in another case where § 1202 was being asserted without an underlying copyright infringement claim relating to the same works (as Post does here), "[l]et us be clear about what is really at stake here."  *Raw Story Media*, *supra*, at 9.  The alleged injury for which Post seeks redress, as Mr. Monteiro repeatedly admitted, "is not the exclusion of CMI . . . but rather Defendants' *use* of Plaintiffs' articles . . . without compensation to Plaintiffs."  *Id.* (emphasis in original).  That "is not the type of harm" that constitutes a legally cognizable injury under § 1202.  *Id.*  Post has no standing for its § 1202 claims.

### 2.    Post Lacks § 1202 Standing for the Works It Admits It Does Not Own

In addition to lacking standing because it has not experienced traceable harm, Post further lacks standing—both constitutional and statutory—to assert § 1202 claims for works that Post **admits** it does not own.  Post does not dispute that at least 1,036 of the Works in Suit were created by students who are not employed by Post University.  SOUF ¶ 59.  Post's former Chief Academic Officer and Interim Co-Provost, Dr. Jeremi Bauer, testified that Post does not claim ownership over works created by students.  SOUF ¶ 60.

Post further lacks standing for the at least 93 Works in Suit owned by its subsidiaries, because Post does not own those assets.  SOUF ¶¶ 61-62; *see Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary.").

Post has offered no evidence that it has been injured in connection with documents that it

17

does not own.  All claims based on Works in Suit that Post does not own should thus be dismissed from this suit for lack of standing.

**B.      Post Cannot Show Learneo Meets the Double Scienter Requirements of § 1202 (Count IV)**

Post's § 1202 claims must also be dismissed because it has no evidence that Learneo had the requisite mental state required by the statute.

**1.      Post Cannot Meet the Double-Scienter Requirement of § 1202(a)**

To establish a violation of § 1202(a), a plaintiff must show that the defendant (1) "knowingly provided false [CMI];" and (2) "did so with the intent to induce, enable, facilitate, or conceal an infringement."  *Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018).  Post cannot bear its burden as to either element.

**a.      Learneo did not knowingly provide or distribute false CMI because the alleged statements are not false**

When Learneo adds context to uploaded documents to indicate that they were available on Course Hero, those statements are literally true.  They therefore cannot support a CMI claim premised on falsity.

As discussed in the Factual Background, Post accuses as false CMI the copyright notice at the bottom of the Course Hero website ("Copyright © 2021. Course Hero, Inc."); the watermarks added to downloaded documents (stating "This study resource was shared via Course Hero.com" and "This study source was downloaded by [user id] from CourseHero.com on [date] [url]"); the metadata added to downloaded documents (stating the uploader and downloader user ids, and the phrase "CHDL-UGC-Meta"); and the banners added to the Course Hero website (*e.g.*, "Upload your study docs or become a Course Hero member to access this document / Continue to access.").  To prevail on the first scienter requirement, Post must show that Learneo provided those alleged statements *knowing they were false*.  17 U.S.C. § 1202(a);

18

*see Tomelleri v. Zazzle, Inc.*, No. 13-CV-02576-EFM-TJJ, 2015 WL 8375083, at *12 (D. Kan. Dec. 9, 2015) ("[T]o recover under § 1202(a), a plaintiff must show that a defendant who falsifies CMI knows that it is false. . .").  Post cannot meet its burden.

Learneo does not dispute that it placed the alleged statements on its website and certain downloaded documents.  But nothing about those statements is false, much less knowingly false, and the evidence affirmatively shows that Learneo believed them to be *true*.  SOUF ¶¶ 24-37. For instance, the watermarks placed on documents downloaded from and shared via Course Hero accurately state that the document was "downloaded by [downloader user id] from CourseHero.com on [date and time of download]" and "shared via CourseHero.com."  SOUF ¶¶ 27-28, 30, 32.  Far from conveying anything false about copyright ownership or authorship, the statements accurately identify Course Hero as the "source or distributor" of the documents. SOUF ¶¶ 27-28, 30, 32; *see McGucken*, 2023 WL 6390530, at *10 (finding lack of the first scienter requirement where defendant's evidence showed that its watermark was "intended to identify Shutterstock as the source or distributor of the image, rather than as the author or copyright owner"); *Steinmetz v. Shutterstock, Inc.*, 629 F. Supp. 3d 74, 77 (S.D.N.Y. 2022) ("[A]lthough Defendant adds a 'Shutterstock' watermark to all images uploaded to its platform, this information is not false because it designates the source of the photograph if accessed or distributed from Defendant's website.").  Indeed, it is well understood that "websites generally do not claim ownership or authorship over an image just because the image appears on the website.  For example, when a user visits google.com or imdb.com a number of images come up, but no user is lead to believe that the websites created or owns these images." *Tomelleri*, 2015 WL 8375083, at *12.  The evidence is even clearer here than in *McGucken* and *Steinmetz* because Learneo does not simply place a "Course Hero" watermark on documents without

19

context: the watermarks explain that Course Hero is the location from which the document was downloaded or shared. Any remaining doubt that Learneo's watermarks were not intended to claim ownership over the documents is resolved by Learneo's express disclaimer in its Terms of Use. SOUF ¶ 7 ("Course Hero ***does not claim any ownership rights*** in your Submissions. After submitting your Submissions to the Service, ***you continue to retain all ownership rights*** in such Submissions . . .") (emphasis added). The same is true of the alleged metadata, which truthfully provides the userIDs of the uploader and downloader and the text string "CHDL-UGC-Meta" which stands for "Course Hero Download – User Generated Content – Meta." SOUF ¶¶ 29-30, 32.

Similarly, Course Hero's copyright notice stating "Copyright © 2021. Course Hero, Inc." and placed at the bottom corner of its website accurately identifies Course Hero as the copyright owner of its own website and is not false CMI, nor did Learneo believe it to be false. SOUF ¶¶ 24-26, 32. And while Post alleges Course Hero banners to be false CMI, those statements truthfully tell users the actions that they can take on the website. For instance, one states that users can access locked documents by uploading study documents or becoming a Course Hero member. SOUF ¶¶ 21, 31, 32. Others advertise Course Hero's tutoring services. SOUF ¶¶ 2, 31- 32. Nothing suggests that Learneo believed any of its banners conveyed false information to any visitor to the Course Hero website.

No reasonable juror would find any of the alleged statements to be false or that Learneo believed them to be false. *See McGucken*, 2023 WL 6390530, at *10 ("[T]he fact that Defendant's illustrations simply appear on Plaintiff's website does not convey false CMI."); *Tomelleri*, 2015 WL 8375083, at *12.

Post has adduced ***no*** evidence to the contrary. It did not even ask Learneo's witnesses in

deposition about their state of mind regarding the alleged falsity of any alleged CMI. If it had, it would have learned from Course Hero's Vice President of Engineering designated on the topic that, *e.g.*, the watermark and footer statements were, as is clear from their plain text, "intended to convey truthful information about the document and where it came from," and "not to falsely hold out user-uploaded documents as Learneo's own." SOUF ¶ 34. After all, the statements are purely additive; the original content of the document, including any CMI on the face of the document that might identify a copyright owner or author, remains in place as uploaded. SOUF ¶¶ 17-18.

Post has failed to adduce evidence that Learneo knowingly provided false CMI under § 1202(a)'s first scienter requirement, and therefore the § 1202(a) claim must be dismissed.

### b.    Learneo's intent behind the statements was not to induce, enable, facilitate, or conceal infringement

Post cannot meet its *additional* burden to show that Learneo provided false CMI "with the intent to induce, enable, facilitate, or conceal an infringement" under the second § 1202(a) scienter requirement because Learneo's intent behind the allegedly false statements, if anything, was to *prevent*, rather than to aid, infringement. 17 U.S.C. § 1202(a).

The evidence demonstrates that Learneo added the statements to its website for reasons having nothing to do with encouraging infringement. SOUF ¶ 37. The watermarks and metadata were added to downloaded documents to enable them to be traced back to Course Hero and to *prevent* unapproved uses of those documents. SOUF ¶ 34. Mr. Wentworth's testimony to that effect is supported by the plain text of the watermarks, which convey—truthfully—that the document was "downloaded from" and "shared via" CourseHero.com and provide the userIDs of the uploader and downloader. SOUF ¶¶ 27-28, 30. By identifying Course Hero as the source of the download, the statements make it easier for rightsholders to request the takedown of the

21

document from Course Hero, and for Learneo to take appropriate action against users violating its Terms of Use.  Wentworth Decl. ¶ 34; *see* SOUF ¶ 34.  Mr. Wentworth also explains in his declaration that the text "CHDL-UGC-Meta" was added to the metadata ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████    Wentworth Decl ¶ 30; SOUF ¶ 35.  Similarly, the copyright notice on Course Hero's website was added to claim Course Hero's ownership over its own website and to prevent others from infringing on Course Hero's copyrights.  SOUF ¶ 33.  And the banners were added to help users take advantage of Course Hero's offerings, for example, to explain to users the steps that they would need to take to unlock documents and to make users aware of Course Hero's tutoring services.  SOUF ¶ 36.  Such evidence of legitimate intent behind the alleged statements is fatal to Post's § 1202(b) claim.  *See McGucken*, 2023 WL 6390530, at *10 (finding lack of the second § 1202(a) scienter requirement where defendant showed that it added its watermark "in order to prevent third parties from using the images without a license").

There is *no* evidence that the alleged statements were intended for any other reason, let alone to induce, enable, facilitate, or conceal infringement.  *See Zuma I*, 349 F. Supp. 3d at 375-76 (granting summary judgment of § 1202(a) claim because there was "no evidence that [it] intended to induce or facilitate infringement"), *aff'd*, *Zuma II*, 845 F. App'x 54 (2d Cir. 2021).

Further, there is undisputed evidence that Learneo is committed to ***preventing*** infringement on Course Hero.  SOUF ¶¶ 3-12, 45-52.  Course Hero's Terms of Use, Copyright Policy, and Honor Code, each of which makes clear that copyright infringement is prohibited, are linked at the bottom of every Course Hero webpage, and provided again each time a user uploads a document.  SOUF ¶ 3.  Learneo has also invested significant resources into

22

maintaining its robust DMCA notice and takedown process, repeat infringer policy, and a suite of technical tools built from the ground up—including an automatic copyright filter at upload—to help rightsholders manage their intellectual property on Course Hero.  SOUF ¶¶ 9-11, 45-52. Evidence of such preventative measures is independently sufficient to negate the second scienter requirement.  *See Tomelleri*, 2015 WL 8375083, at *12 (holding that defendant did not provide false CMI with the intent to aid infringement at summary judgment where "[d]efendant ha[d] invested significant resources to remove any designs on its website accused of intellectual property infringement.").

Because Learneo added the allegedly false statements for legitimate reasons unrelated to inducing, enabling, facilitating, or concealing infringement, and in fact to ***prevent*** unauthorized conduct, Post cannot establish the second scienter requirement, and Learneo is entitled to judgment on Post's § 1202(a) claims.

### 2.     Post Cannot Meet the Double-Scienter Requirement of § 1202(b)

Section 1202(b) makes it unlawful to "intentionally ***remove*** or alter any copyright management information" or to "distribute … copies of works … knowing that copyright management information has been ***removed*** or altered without authority of the copyright owner." 17 U.S.C. §§ 1202(b)(1), (3).  Sections 1202(b)(1) and (b)(3) also contains a second scienter requirement:  the defendant must "know[ ], or … hav[e] reasonable grounds to know, that [its removal or alteration of CMI or distribution with removed or altered CMI] will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b).  Post cannot meet its burden for either mental state requirement under § 1202(b)(1) or under § 1202(b)(3).

**a.     Learneo did not "intentionally" remove or alter CMI from the Works in Suit or distribute copies of the Works in Suit "knowing" CMI had been removed or altered "without authority of the copyright owner or the law"**

**(i)    Learneo does not intentionally or knowingly remove or alter anything in user-uploaded documents**

Course Hero ***does not remove or alter*** the original contents of user-uploaded documents. SOUF ¶¶ 17-18.  This fact means that Post ***cannot*** show Learneo had the requisite state of mind to remove or alter CMI under § 1202(b)(1) or § 1202(b)(3).  SOUF ¶ 44.

Course Hero provides a platform for users to upload documents for other users—in their original form and with their original content.  SOUF ¶¶ 17-18.  The website is accordingly designed such that when a user unlocks a document, they are given access to the full document and the ability to download a copy of the document—***exactly as it was originally uploaded***. *Id.* Because there is no removal or alteration of original CMI, Post's claim fails.

Learneo acknowledges that there was an error in its watermarking software that caused some original metadata in user-uploaded files—which Post alleges contained its CMI—to be removed upon download for certain types of documents.[8]  SOUF ¶ 39.  This error only affected the metadata,[9] and at most 170 of the Works in Suit.  SOUF ¶¶ 39-40.  It is undisputed, however, that this watermarking error was due to a technological glitch in a third-party software called "TCPDF," which Learneo ***did not know*** of until it was revealed during discovery of this lawsuit.[10]  SOUF ¶ 42.  Any alleged removal of CMI due to this watermarking error therefore could not have been an "intentional" or "knowing" removal. *See Zuma II*, 845 F. App'x at 58 (holding a reasonable juror could find "only that the purported changes to Plaintiffs' CMI

---

[8] Watermarked documents also differ from uploaded documents in that watermarks and metadata are added (as discussed with respect to § 1202(a)) and the file type may be changed as part of the watermarking process (e.g., from Word to PDF).  SOUF ¶ 18.  Those additions of watermarks and metadata are irrelevant to § 1202(b), which only governs the removal or alteration of existing CMI. *Compare* 17 U.S.C. § 1202(a) *with* 17 U.S.C. § 1202(b).
[9] Learneo disputes that the affected metadata constituted CMI at all, but that dispute is not material to the determination of this motion.
[10] Metadata is retained in the downloaded versions of many document types and sizes on the Course Hero website (e.g., Excel and PowerPoint documents, and Word and PDF documents above a certain size).  SOUF ¶ 40.  It makes no sense that Learneo would intend to remove CMI from only certain types of documents but not others.

resulted not from some intentional act of which Getty was aware but from aberrations and mistakes in the automatic migration process itself").

The calculus is not changed by Post's allegations that CMI is removed or altered because metadata is not shown on the website. The absence of metadata on Course Hero was not intentional or knowing. SOUF ¶ 43. Metadata is hidden data that is not normally displayed. SOUF ¶ 41.

Post's allegations regarding document previews do not save its claims. When Course Hero displays previews of documents, it does not remove or alter the documents' CMI. Previews show approximately half-page document excerpts; once a user unlocks the document, they are shown the full document—**with** any and all original CMI. SOUF ¶¶ 17, 19, 20. To the extent that Post is pointing to the individual blurred page segments as the subjects of "removal," as numerous courts have held, creation of a copy that is different from the original in ways other than the absence of CMI—such as by blurring some or all of the content of the page—does not constitute "removal" under § 1202. That is because "no DMCA violation exists where the works are not identical." *Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. 20-cv-1931-DMG (Ex), 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020). For instance, DMCA claims have been dismissed when a defendant's "[v]irtually identical plans could have been created by redrawing" the plaintiff's "plans and not including" plaintiff's "copyright management information," because that situation "would not involve any removal or alteration of copyright management information from" the plaintiff's "original work." *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-cv-0496 SOM/BMK, 2014 WL 5798282, at *5 (D. Haw. Nov. 7, 2014), *aff'd*, 700 F. App'x 674, 675 (9th Cir. 2017) (affirming "for the reasons stated in the district court's order"). *See also Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 22-cv-1463-RGK-MAA, 2022 WL 16961477, at

*3-*4 (C.D. Cal. Aug. 25, 2022) (applying identicality requirement to "removal" under § 1202); *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010) (same); *Fischer v. Forrest*, 286 F. Supp. 3d 590, 610 (S.D.N.Y. 2018) (approvingly citing *Frost-Tsuji* and *Faulkner*), *aff'd*, 968 F.3d 216 (2d Cir. 2020).

Nor can the *display* of material on a web page, as opposed to the downloading and saving of a copy of that material, constitute "distribution" under § 1202(b)(3).  That is because "public display does not constitute distribution, and thus is not a violation of § 1202(b)(3)." *FurnitureDealer.Net, Inc v. Amazon.com, Inc.*, No. CV 18-232 (JRT/HB), 2022 WL 891473, at *23 (D. Minn. Mar. 25, 2022).

Even assuming *arguendo* that previews displayed on the website could constitute removals or alterations under § 1202, Post cannot show that any removal or alteration was intentional or knowing, because it is undisputed that the document-processing software that Course Hero uses does exactly the same thing whether or not CMI is present.  Regardless of the contents of the specific document, and regardless of whether any particular text in the document might constitute CMI, Course Hero's software acts the same every time—without any specific intent as to CMI.  SOUF ¶ 38.  Any removals and alterations were as a side effect of an automated process that works the same way and does exactly the same thing whether or not CMI is present.  *See Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1121-22 (C.D. Cal. 1999), *aff'd in part & rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003) (granting summary judgment of § 1202(b) claim brought against an online image search engine that used automated "crawler" software to retrieve plaintiff's images from the web without the copyright notices in the surrounding text, because plaintiff did not offer "any evidence showing Defendant's actions were intentional, rather than merely an unintended side effect of the [] crawler's operation").  *See*

26

*also Zuma I*, 349 F. Supp. 3d at 370 (finding that defendant "lacked the requisite intent" under § 1202(b) where defendant used "an automated process to migrate" the images and defendant's code did not "look at" the alleged CMI in the metadata), *aff'd*, *Zuma II*, 845 F. App'x 54 (finding lack of scienter because the engineers who developed the migration process "did not account for the possibility that CMI would appear in the [alleged metadata]").

Because Post cannot show that Learneo intentionally or knowingly removed or altered CMI in any of the Works in Suit under the first scienter requirement, Post's § 1202(b) claims should be dismissed.

> **(ii)** **Learneo did not know of Post's purported rights in the Works in Suit at the time of the alleged violations (§ 1202(b)(3))**

Post's § 1202(b)(3) claims should be dismissed for the additional reason that Learneo did not know of Post's purported rights in the Works in Suit, and therefore could not have known that it was acting "without authority of the copyright owner or the law" under § 1202(b)(3)'s first scienter requirement.

All of the Works in Suit were uploaded by users who represented and agreed that the documents were uploaded with the necessary rights, and who gave Learneo a license to modify and display the documents on Course Hero. SOUF ¶¶ 3-6. Learneo thus had no reason to believe, let alone actual knowledge, that legitimate documents uploaded to its website were commingled with documents subject to Post's purported rights until Post notified Learneo of its alleged rights.

Learneo had no actual notice of Post's purported rights in the Works in Suit until Post identified the Works in Suit in Post's interrogatory responses and subsequent correspondence during this lawsuit, *i.e.*, after the alleged uploads, displays, and downloads. SOUF ¶¶ 3-6, 53-56, 63-65. Such notice after the fact is insufficient to confer knowledge under § 1202(b)(3). *See*

27

*Zuma II*, 845 F. App'x at 57-58 (granting summary judgment because a reasonable juror "could conclude only that Getty did not know about Plaintiff's purported rights in the images until Zuma contacted Getty . . . to complain that Getty did not have authorization to use the images— *i.e.*, until after Getty had completed the migration process and posted the images to its website."). Indeed, Learneo took each of the Works in Suit down within days, if not hours, of Post requesting their removal[11]—except for instances where Post specifically requested that the documents be kept on the website through discovery.  Lee Decl. Exs. B (email correspondence). Learneo also did not acquire knowledge regarding the Works in Suit prior to the filing of the suit. Both times that Post submitted takedown notices pursuant to § 512(c), Learneo took the identified documents down.  SOUF ¶¶ 53-56.  Those documents are not included in the Works in Suit and therefore cannot confer the requisite knowledge.  *Cf. Cap. Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 99 (2d Cir. 2016) ("[B]ecause that evidence was not shown to relate to any of the videos at issue in this suit, it is insufficient to justify a finding of red flag knowledge, under the principle of *Viacom*, as to those specific videos."); *id.* at 98 ("[We] can see no reason to construe [§ 512(c)] as . . . requiring investigation merely because the service provider learns facts raising a *suspicion* of infringement (as opposed to facts making infringement *obvious*).  Protecting service providers from the expense of monitoring was an important part of the compromise embodied in the safe harbor.").

Learneo ***must*** rely on the user representations and agreements because Learneo has no independent way to verify whether the user has the necessary rights to upload a particular document.  SOUF ¶ 63.  And aside from the user, ***only Post*** has access to the information necessary to determine what rights it has in a particular document.  SOUF ¶¶ 64-65.  For

---

[11] Learneo removed the Works in Suit from Course Hero even though Post did not submit § 512(c)-compliant takedown notices.  Lee Decl. Ex. C (email correspondence).

instance, Post's witnesses testified that they needed to analyze Post's own documents in its private databases to confirm ownership of documents in this case. SOUF ¶ 64. It is undisputed that Learneo does not have access to Post's databases holding such information. SOUF ¶ 65. Indeed, Post itself has had significant trouble identifying which works it actually has any rights in. Despite repeated discovery requests from Learneo, Post did not identify any of the Works in Suit until nearly a year of discovery had passed and has expanded and narrowed that list multiple times. And as discussed above with respect to standing, Post admits that the current Works in Suit include works owned by students and by Post subsidiaries. SOUF ¶¶ 59-62. Where Post itself cannot determine which uploads were performed with or without "authority of the copyright owner or the law," 17 U.S.C. § 1202(b)(3), Learneo certainly could not have had that knowledge at the time of the alleged violations, and Post's § 1202(b)(3) claim should be dismissed.

**b.      Learneo did not have reasonable grounds to know the alleged CMI removals or alterations would induce, enable, facilitate, or conceal copyright infringement**

The second scienter requirement independently bars Post's claims, because the undisputed facts show that Learneo did not have reasonable grounds to know that any alleged CMI removals or alterations would induce, enable, facilitate, or conceal copyright infringement.

**(i)      Learneo knows that its policies and technical features are effective in preventing infringement**

The evidence establishes that Learneo had *no* reason to know its alleged actions would induce, enable, facilitate, or conceal infringement under the second § 1202(b) scienter requirement because it knows that the control measures it has implemented in Course Hero are successful in *preventing* infringement. SOUF ¶ 52. As discussed, Course Hero's policies prohibit infringement of any kind and Learneo invests significantly—both in compliance

29

personnel and in building custom technology such as the Claim a Course and Pinpoint features—to enforce those policies.  SOUF ¶¶ 3-5, 8-11, 45-51.  Learneo also makes the full text of all documents searchable on its own website and allows all documents to be indexed on search engines like Google to make it easy to find a particular document.  SOUF ¶ 14.

Any argument that Post would not be able to identify their own document on Course Hero for purposes of identifying infringement because documents are locked is undermined by the fact that *every* display of a document on Course Hero—whether in a preview or an unlocked document—is accompanied by a prominent labeling of the school, the course title, and who it was uploaded by, at the top of the webpage (as shown below).  SOUF ¶ 23.



Exhibit 2, Amended Complaint at 2.

Those labels, in conjunction with the preview, enable a rightsholder like Post to easily identify their own documents and request their takedown, even without unlocking the document.  Indeed, when asked about a locked document on the Course Hero website, Post's own witness, Mr. Monteiro, testified, "***It's obvious it's a Post document . . . I'm not blind***."  SOUF ¶ 75 (emphasis added).  Mr. Monteiro then reiterated, "***It's clearly a Post document, okay.  I'm not a***

*moron*."  SOUF ¶ 76 (emphasis added).

A rightsholder like Post can thus easily search for its own documents, including using the Course Hero search tool or Google or by reviewing documents associated with Post, and request those documents to be taken down.  SOUF ¶¶ 13, 14, 23.

Learneo's efforts are remarkably effective.  In 2021, of the over ▮▮▮▮▮ documents uploaded to the Course Hero website, only about ▮ out of ▮ was subject to a takedown request from a rightsholder who believed the content to be infringing, and all documents identified by a compliant takedown notice were taken down ▮▮▮▮▮▮.  SOUF ¶¶ 11, 12.  Based on this evidence, a reasonable juror could only find that Learneo had no reason to know that its alleged actions—even if true—would induce, enable, facilitate, or conceal infringement.  Post has not adduced any evidence to the contrary.  *See McGucken*, 2023 WL 6390530, at *10 (granting summary judgment of plaintiff's § 1202(b) claim where plaintiff "ha[d] not adduced any evidence that Defendant removed his metadata 'knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement.'").

Because Post cannot show that Learneo had any reason to know that its alleged removals and alterations of CMI would induce, enable, facilitate, or conceal infringement under the second scienter requirement; Learneo is entitled to judgment on Post's § 1202(b) claims.

> **(ii)    Learneo had no reason to know that Post was using the alleged CMI to police infringement, because it wasn't**

Post's § 1202(b) claims should also be dismissed for the *additional* reason that Post did not actually *use* the alleged existing CMI to manage its copyrights at the time of the alleged removals and alterations.  Post, as the alleged copyright owner, would be the only one enforcing its own copyrights.  Thus, if Post never used the alleged CMI to manage its copyrights before this lawsuit, it is effectively incontrovertible that removal or alteration of that alleged CMI would

31

not have had any effect on Post's efforts to stop infringement—and by logical extension, Learneo could not have had any reason to know that its actions allegedly removing or altering that CMI would "induce, enable, facilitate, or conceal infringement."  17 U.S.C. § 1202(b).

Post "ha[s] not offered *any* specific evidence" that the alleged CMI removals and alterations "[would] impair their policing of infringement."  *Stevens*, 899 F.3d at 675 (emphasis in original).  The evidence is to the contrary:  Post does not proactively monitor websites for infringement of its copyrighted materials in its ordinary course of business.  SOUF ¶ 79.  And aside from this case, Post has never requested that any of its copyrighted material be taken down from any other website for infringement.  SOUF ¶ 80.  Regarding the metadata allegations specifically, Post does not track document metadata, and several of Post's professors testified that they had never looked at metadata before, didn't know what it was, and had never heard of anyone trying to use metadata to police copyright infringement.  SOUF ¶ 81; *see Stevens*, 899 F.3d at 675.

In short, there is no evidence that the presence or absence of the alleged Post CMI has ever played any role in inducement, enablement, facilitation, or concealment of infringement of the Works in Suit.  Learneo therefore cannot have had reason to know that the alleged removals or alterations of that information would induce, enable, facilitate, or conceal any copyright infringement.

Even if Post could show that it used the alleged CMI to prevent or detect infringement (which would be in conflict with its admissions), Learneo did not have reason to know that Post was using the alleged CMI in that manner.  SOUF ¶ 82.  Post ***gave no indication*** of its use of the alleged CMI in either letter sent before filing this lawsuit or otherwise.  SOUF ¶ 57; *see Victor Elias Photography, LLC v. Ice Portal, Inc.*, 43 F.4th 1313, 1323 (11th Cir. 2022) (plaintiff could

not show that defendant "knew or had reason to know" even where defendants did use CMI to police infringement online because there was "no indication in the record the [defendant] knew at the relevant time that copyright owners use CMI" to police copyright infringement"). Post therefore cannot show that Learneo had reasonable grounds to know that Post was using the alleged CMI to prevent or detect infringement at the time of the alleged violations; Post's § 1202(b) claims should be dismissed for this additional reason.

In summary, Post cannot meet its burden to show any of the double scienter requirements under § 1202(a) or § 1202(b), and Post's § 1202 claims are barred in their entirety by the fatal flaw that Post was never harmed in a way traceable to its § 1202 allegations and therefore never had standing to begin with.

### C.    Post's Lanham Act and State Law Claims Are Legally Flawed

In addition to its § 1202 claims, Post asserts numerous ancillary claims that are likewise meritless. Post's Lanham Act claims are barred by the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), and Post's claims of unjust enrichment, unfair competition, and a violation of the Connecticut Unfair Trade Practices Act ("CUTPA") are preempted by the Copyright Act.

### 1.    Post's Lanham Act Claims Are Barred by *Dastar* (Counts V and VI)

*False Designation of Origin (Count VI).* Post's false designation of origin claim fails as a matter of law because the works that form the basis of Post's claim are not actionable under § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)). *See Dastar Corp.*, 539 U.S. at 23.

In *Dastar*, the Supreme Court drew a line between trademark and copyright protection to avoid instances where a party claims trademark rights to prevent expression governed by copyright law. Otherwise, someone could defeat statutory and constitutional limitations on copyright law by including a trademark within a work, giving the work indefinitely long

protection and "creat[ing] a species of mutant copyright law." 539 U.S. at 34. Recognizing this concern, the Supreme Court defined "origin of goods" in the Lanham Act to "refer[] to the producer of the ***tangible goods*** that are offered for sale, and not the author of any idea, concept, or communication embodied in those goods." *Id.* at 37 (emphasis added). In other words, the Lanham Act protects against misleading consumers about the origin of ***goods***, but it does not protect against confusion over the source of ***content***. *See* 2 McCarthy on Trademarks and Unfair Competition § 10:26 (5th Ed. 2024) ("The [*Dastar*] Court held that 'origin' in this statutory context denotes only the manufacturer or producer of the physical goods and not the creator of the intellectual property embodied in those goods."). The *Dastar* court therefore dismissed the plaintiff's Lanham Act claim brought against videotapes allegedly copied from an older set of videotapes because they were a "communicative product" that was valued "not primarily for its physical qualities, such as a hammer, but for the intellectual content that it conveys, such as a book." *Id.* This Circuit invoked a similar principle, even long before *Dastar*. *See Lipton*, 71 F.3d at 473 ("We find, as a matter of law, a false copyright notice alone cannot constitute a false designation of origin within the meaning of § 43(a) of the Lanham Act."); *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos, Inc.*, 228 F.3d 56, 64 (2d Cir. 2000) ("[C]ases involving trademark infringement should be those alleging the appropriation of symbols or devices that identify the composition or its source, not the appropriation or copying or imitation of the composition itself.").

Courts in this Circuit have since applied *Dastar* to bar claims against website content similar to Post's. *See Thomas Publ'g Co., LLC v. Tech. Evaluation Ctrs., Inc.*, No. 06-Civ.-14212 (RMB), 2007 WL 2193964, at *3 (S.D.N.Y. July 27, 2007) ("Because Plaintiff's False Designation Claim centers around its contention that it originated certain ideas and concepts

34

contained at Defendant's website, Plaintiff's claim is dismissed."); *Lieb v. Korangy Publ'g, Inc.*, No. 15-CV-40 (AKT), 2016 WL 8711195, at *10 (E.D.N.Y. Oct. 4, 2016) (dismissing plaintiff's false designation of origin claim alleging that defendant copied and promoted the contents of plaintiff's online article in a separate article on defendant's website).

Post's false designation of origin claim is directed to the same category of study resources on the Course Hero website, *i.e.*, communicative works, that are protectable, if at all, under copyright law. Am. Compl. ¶¶ 138-143. Post even affirmatively alleges that its claim is based on allegations that Learneo "distributes" materials "bearing Post University's name, branding, and trademarks" causing "confusion" "in that ***the materials are Post University's copyrighted works***." Am. Compl. ¶¶ 139, 140 (emphasis added). That allegation alone reveals that Post's false designation of origin claim is really a copyright claim in disguise, and is fatal to Post's § 43(a) claim. *Dastar*, 539 U.S. at 33-34.

***Trademark Infringement (Count V).*** Post's trademark infringement claims brought under §§ 32 and 43 of the Lanham Act (15 U.S.C. §§ 1114, 1125) concern the same "communicative products" that form the basis of Post's false designation—and copyright—claims. *See Dastar*, 539 U.S. at 33. Post's trademark infringement claims are thus also foreclosed by *Dastar*. *See Hudson v. Universal Studios, Inc.*, No. 04-CV-6997 (GEL), 2008 WL 4701488, at *8 (S.D.N.Y. Oct. 23, 2008) (emphasis added) ("Since *Dastar*, Lanham Act claims arising from the alleged copying of creative work have been ***clearly foreclosed***."); *Radolf v. Univ. of Conn.*, 364 F. Supp. 2d 204, 222 (D. Conn. 2005) (finding that plaintiff's Lanham Act claim "necessarily fails" because it "centers around his contention that he was the 'author'" of the contested work). Permitting Post to sustain its trademark infringement claims would lead to "misuse or over-extension of trademark and related protections into areas traditionally occupied

35

by patent or copyright." *Dastar*, 539 U.S. at 33-34 (internal quotations and citation omitted).

### 2. Post's State and Common Law Claims Are Preempted by Federal Copyright Law (Counts VII, VIII, IX)

Post's unjust enrichment and unfair competition claims brought under common law and Post's claims brought under the CUTPA are each preempted by the federal Copyright Act and should also be dismissed outright.  The Copyright Act exclusively governs a claim when:  (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103 (the "subject matter" requirement), and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106 (the "general scope" requirement).  *See* 17 U.S.C. § 301(a); *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004).

#### a. The underlying works are protected by the Copyright Act

The first subject matter requirement is satisfied "if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works," including literary works.  *Briarpatch*, 373 F.3d at 305. There is no dispute that the works underlying Post's state and common law claims are literary works subject to the protection afforded under 17 U.S.C. § 102(a) and therefore meet this requirement.

#### b. Post seeks to vindicate rights not "qualitatively different" from a copyright infringement claim

The second general scope requirement for preemption is satisfied when the state law claim seeks to vindicate one of the exclusive rights provided by federal copyright law—the acts of reproduction, adaptation, performance, distribution, or display.  *Briarpatch*, 373 F.3d at 305. Only if the state law claim includes extra elements that make it "qualitatively different" from a

copyright infringement claim can the claim escape federal preemption.  *Id.*

"[C]ourts have taken 'a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim.'"  *A Slice of Pie Prods., LLC v. Wayans Bros. Entm't*, 392 F. Supp. 2d 297, 315 (D. Conn. 2005) (quoting *Biarpatch Ltd.,* 373 F.3d at 305-06).  For instance, in *Briarpatch*, the plaintiff alleged that the defendant was unjustly enriched when it turned a novel and screenplay into a motion picture without compensating plaintiff.  *Id.*  The Second Circuit held that the act of making the motion picture would, "in and of itself, infringe the adaptation rights protected by § 106(2)," and the additional element of "enrichment" did not "go[] far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim."  373 F.3d at 306.

**Unjust Enrichment (Count VIII).**  Post's unjust enrichment claim suffers the same fate. Post accuses the "use" and "dissemination" of Post's materials on the Course Hero website, the very same acts that Post accuses in its copyright infringement claims.  *Compare* Am. Compl. ¶¶ 163-65 *with id.* ¶¶ 85, 87, 88.  As in *Briarpatch*, the additional element of "enrichment" does not make Post's state law claim qualitatively different; Post's claim is preempted.  *See Moser Pilon Nelson Architects, LLC v. HNTB Corp.*, No. 05 CV 422(MRK), 2006 WL 2331013, at *11 (D. Conn. Aug. 8, 2006) ("Plaintiffs' unjust enrichment claim is based on Defendants' alleged wrongful copying of their copyright-protected expression, and in such cases the Second Circuit has held that neither misappropriation nor enrichment, without more, is sufficient to avert preemption.").

**Unfair Competition (Count IX).**  Post's common law unfair competition claim is preempted for the same reasons.  Post's amended complaint incorporates by reference all the same allegations made in its unjust enrichment claim and provides no additional factual

allegations.  Am. Compl. ¶¶ 169-73.  Post's unfair competition claim is thus based on the exact same alleged acts of displaying and distributing documents on the Course Hero website as Post's copyright infringement claim and is not qualitatively different.  *See Porto v. Guirgis*, 659 F. Supp. 2d 597, 616-17 (S.D.N.Y. 2009) (finding plaintiff's common law unfair competition claim preempted because it "aims to vindicate the same rights as the plaintiff's copyright infringement claim").

> ***Connecticut Unfair Trade Practices Act (Count VII).***  Post's CUTPA claim also fails. The unfair or deceptive trade practices that Post alleges are again based on the same aspects of the Course Hero website—displaying and distributing documents—as Post's other state law claims.  Am. Compl. ¶ 153.  The few additional allegations that Post makes as part of its CUTPA claim—for instance, that Learneo "deceptively promotes itself" as an educational platform and sells subscriptions and rewards users for uploading documents "in an effort to grow Course Hero's content library" are based on the same foundational acts of running the Course Hero website for users to upload documents that Post accuses in its copyright claims.  *Compare* Am. Compl. ¶¶ 146-147 *with* ¶¶ 85, 87-88.  Post's CUTPA claim is therefore also preempted by the Copyright Act.  *See A Slice of Pie*, 392 F. Supp. 2d at 315-16 ("Slice of Pie's CUTPA claims arise from the same circumstances as its copyright claims . . . Plaintiff's conclusory statement of law that defendants 'deceiv[ed] the public as to the true source and nature of the screenplay and [passed] the screenplay … off as its own,' is insufficient . . . this is in reality a 'disguised copyright infringement claim.'" (internal citations omitted)); *Frontier Grp., Inc. v. Nw. Drafting & Design, Inc.*, 493 F. Supp. 2d 291, 301 (D. Conn. 2007) (finding plaintiff's CUTPA claim preempted by the Copyright Act).

## VI.    CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion for summary

judgment.

DEFENDANT LEARNEO, INC.

By: _/s/ Joseph C. Gratz_

Patrick M. Fahey (ct13862)
pfahey@goodwin.com
Elizabeth H. Buchanan (ct31230)
ebuchanan@goodwin.com
SHIPMAN & GOODWIN LLP
One Constitution Plaza
Hartford, Connecticut 06103-1919
Telephone:      806-251-5824
Facsimile:      806-251-5219

Joseph C. Gratz (*pro hac vice*)
jgratz@mofo.com
Vera Ranieri (*pro hac vice*)
vranieri@mofo.com
Annie A. Lee (*pro hac vice*)
annielee@mofo.com
Ian Bennett (*pro hac vice*)
ibennett@mofo.com
Justin K. Rezkalla (*pro hac vice*)
jrezkalla@mofo.com
MORRISON & FORESTER LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone:      415.268.7000
Facsimile:      415.268.7522

Carolyn M. Homer (*pro hac vice*)
cmhomer@mofo.com
MORRISON & FORESTER LLP
2100 L Street, NW, Suite 900
Washington, D.C., 20037
Telephone:      202.887.1500
Facsimile:      202.887.0763

Its Attorneys

39