UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| POST UNIVERSITY, INC., <br><br> Plaintiff, <br><br> v. <br><br> LEARNEO, INC., <br><br> Defendant. | Case No. 3:21-cv-01242 (VDO) |

**PLAINTIFF POST UNIVERSITY, INC.'S
NOTICE OF SUPPLEMENTAL AUTHORITIES**

Plaintiff Post University, Inc. ("Post") respectfully submits this notice of supplemental authorities to inform the Court of (i) a February 20, 2025 Opinion and Order by the United States District Court for the Southern District of New York, *The Intercept Media, Inc. v. OpenAI, Inc.*, No. 24-cv-1515 (JSR), 2025 WL 556019 (S.D.N.Y. Feb. 20, 2025), and (ii) a March 7, 2025 Order by the United States District Court for the Northern District of California, *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417-VC, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025). Copies of these decisions are attached hereto as **Exhibits A** and **B**, respectively.

These recent opinions are relevant because in its motion for summary judgment, Defendant Learneo, Inc. ("Learneo") claims that Post lacks standing for its § 1202 claims because it has failed to "show harm tied to its § 1202 allegations." Learneo's Reply (ECF 201) at 3. To be sure, Post vehemently disputes that it has failed to establish an actual harm traceable to its § 1202 claims and, in its opposition brief, cited ample evidence of actual, concrete injury beyond the mere fact of CMI manipulation. *See* Post's Opposition (ECF 189) at 20-23.

1

But these recent cases demonstrate that Learneo's recitation of the relevant harm standard is incorrect. Learneo primarily relies on *Raw Story Media, Inc. v. OpenAI, Inc.*, 2024 WL 4711729, at *4 (S.D.N.Y. Nov. 7, 2024) for its argument that Post is required to demonstrate an "'actual adverse effect[] stemming from [an] alleged DMCA violation." Learneo's Reply (ECF 201) at 3; *see also* Learneo's Motion for Summary Judgment (ECF 182-1) at 15 (claiming that Post is required to demonstrate "evidence of harms traceable to Learneo's alleged §1202 violations.") However, since February 7, 2025 (when the parties completed briefing related to Learneo's motion for summary judgment), other federal district courts, including the United States District Court for the Southern District of New York, have addressed this issue and have found that a violation of the DMCA *is itself a concrete harm* for purposes of Article III standing. *See e.g., The Intercept Media, Inc.*, 2025 WL 556019, at *4-6[1]; *see also Kadrey*, 2025 WL 744032, at *1.

Specifically, in *The Intercept,* the Southern District of New York clarified that an injury under the DMCA "implicate[s] the same kind of property-based harms traditionally actionable in copyright." 2025 WL 556019, at *5 (explaining that "[t]he DMCA adds another stick to the bundle of property rights already guaranteed to an author in her work under traditional copyright law") The Court explained the basis for its holding as follows:

> [T]he harm faced by The Intercept -- in the form of defendants' alleged interference with its property right -- implicates the same incentives to create that justify traditional copyright. This is the key contribution of the requirement that a defendant "kno[w], or, ... hav[e] reasonable grounds to know, that [the CMI removal] will induce, enable, facilitate, or conceal an infringement of" The Intercept's copyright. This element ensures that any violation of the DMCA is tied to concerns of downstream infringement. The increased possibility of infringement makes it more likely that The Intercept (or some other publication) will no longer find it

---

[1] Notably, the OpenAI defendants in that case were represented by (among others) Joseph Gratz of Morrison Foerster LLP, lead counsel for Learneo in this case.

> worthwhile to create new articles. To be sure, this specific "harm" is not always felt directly by The Intercept. But the Founders recognized that copyright, in addition to protecting the "claims of individuals," serves the "public good." … And, though the Court is concerned only with The Intercept's standing in this case, the close relationship of its property-based harm to the policy concern that has long animated copyright law confirms the close relationship of the harm it has allegedly suffered to a traditional copyright injury.

*Id.* at *6 (citation omitted). The Court thus held that the plaintiff had standing because it "specifically allege[d] that defendants removed CMI from its articles reproduced in the training sets, which concealed their own systematic practice of copyright infringement and facilitated infringement by ChatGPT users." *Id.*

Similarly, on March 7, 2025, the United States District Court for the Northern District of California followed the holding in *The Intercept* and found that "[t]he [p]laintiffs [] alleged a sufficient injury for Article III standing" where the plaintiffs alleged that "the CMI removal facilitated and concealed actual infringement of their copyrights." *Kadrey*, 2025 WL 744032, at *1. The court explained that "[a]lthough 'the specific right created by the DMCA may be comparatively new,' [defendant's] removal of copyright management information is an interference with a property right that is closely related to the 'kind of property-based harms traditionally actionable in copyright.' … ***The removal of CMI is thus a concrete injury for standing purposes***." *Id.* (emphasis added) (citation omitted).

The defendant in that case relied on *RawStory* for its argument that "these injuries don't suffice for standing because the DMCA protects different 'interests' than traditional copyright law, and standing requires an injury that is closely related to a harm traditionally recognized as providing a basis for a lawsuit." *Id.* The Court rejected that argument, explaining:

> [W]hether the DMCA seeks to prevent the exact injuries the plaintiffs allege is a separate question from whether the plaintiffs

3

> have been concretely injured by [defendant's] CMI removal. Article III standing requires that the injury to the plaintiff—not their cause of action or the statute under which it arises—have a close relationship to a traditional harm. … The DMCA's purpose might be relevant to the merits of their claim, or to whether the plaintiffs fall within the statute's zone of interests. But it is irrelevant to whether the plaintiffs have suffered a concrete injury.

*Id.* (citation omitted).

In sum, while Post has in fact submitted evidence of harm extending well beyond the mere removal of its CMI (and the addition of false CMI), that alone would have been enough for Article III standing under these recent decisions.

| | |
|---|---|
| Dated: April 3, 2025<br>New York, New York | Respectfully submitted,<br><br>HARRIS ST. LAURENT & WECHSLER LLP<br><br>By: */s/ Yonaton Aronoff*<br>Yonaton Aronoff (*pro hac vice*)<br>yaronoff@hs-law.com<br>Alisha L. McCarthy (*pro hac vice*)<br>amccarthy@hs-law.com<br>Ashley Robinson (*pro hac vice*)<br>arobinson@hs-law.com<br>Jaclyn D. Newman (*pro hac vice*)<br>jnewman@hs-law.com<br>40 Wall Street, 53rd Floor<br>New York, New York 10005<br>Tel.: 212-397-3370<br><br>DILWORTH IP, LLC<br>Benjamin J. Lehberger (ct26880)<br>470 James Street, Suite 007<br>New Haven, CT 06513<br>blehberger@dilworthip.com<br>Tel.: 203-220-8496 |

GETZ BALICH LLC
Timothy Andrew Johnson (ct25383)
10 Waterside Drive, Suite 205
Farmington, CT 06032
tjohnson@getzbalich.com
Tel.: 860-470-4703

*Attorneys for Plaintiff Post University, Inc.*