UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x

POST UNIVERSITY INC.,

                      Plaintiff,

      -against-

LEARNEO, INC.,

                    Defendant.

---------------------------------------------------------------- x

       **MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT**

       3:21-CV-1242 (VDO)

**VERNON D. OLIVER**, United States District Judge:

This action involves alleged unlawful conduct on Course Hero, an online platform where users upload materials, such as study resources, and access materials shared by others. Before the Court is Defendant's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure on the following grounds: (1) Plaintiff lacks standing for its copyright management information ("CMI") claims brought under the Digital Millennium Copyright Act ("DMCA"), (2) Plaintiff cannot show that Defendant meets the double scienter requirements of the CMI claims brought under the DMCA, (3) Plaintiff's claims brought under the Lanham Act fail as a matter of law under Supreme Court precedent, *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), and (4) Plaintiff's state and common law claims are preempted by the Copyright Act.  For the following reasons, the pending motion is **granted in part and denied in part**.

## I.    <u>BACKGROUND</u>

### A.    **Pre-Suit Events**

Familiarity with the background of this action is assumed. As relevant here, Defendant Learneo, Inc., a Delaware corporation with a principal place of business in Redwood City,

California, operates a website named Course Hero, an online learning platform of course-specific study resources.[1] The resources on Course Hero includes tens of millions of documents uploaded by users, and users can search for uploaded documents with the search function, which allow users to find documents by school, textbook, literature title, and subject.[2] As of September 2021, Course Hero users have uploaded documents from more than 24,275 colleges and grad schools, 26,820 high schools, and 3,069 trade schools.[3]

Prior to filing suit, Plaintiff sent Defendant letters notifying Defendant of ongoing infringement of Plaintiff's intellectual property on Course Hero. Plaintiff sent Defendant a January 6, 2021, letter identifying sixty-four web pages it believed were copyrighted materials that were owned by Post University and notifying Defendant that additional unauthorized use of infringing materials likely existed on Course Hero.[4] Defendant generated a ticket to address the issue and, on January 12, 2021, emailed Plaintiff indicating that it had disabled content located at sixty-two web pages.[5]

On February 24, 2021, Plaintiff sent a second letter to Defendant identifying the discrepancy between the number of webpages disabled by Defendant (sixty-two) and the number of webpages in Plaintiff's original notification (sixty-four).[6] That letter also notified Defendant of an additional thirty-five unique instances of Plaintiff's copyrighted course

---

[1] First. Am. Compl. ("FAC"), ECF No. 31 ¶¶ 2, 13.

[2] *Id.* ¶ 14.

[3] Answer, ECF No. 89 ¶ 15.

[4] FAC ¶ 47; FAC Ex. 16, ECF No. 31-17 at 2.

[5] FAC Ex. 17, ECF No. 31-18; FAC Ex. 18, ECF No. 31-19.

[6] FAC Ex. 19, ECF No. 31-20 at 2.

materials posted on Course Hero. It alleged that the manner in which Course Hero is operated severely hindered Plaintiff's ability to determine whether the site continues to violate its copyrights.[7] While Defendant subsequently disabled access to the content Plaintiff identified as copyrighted documents, it neither addressed Plaintiff's notification that the operation of Course Hero prevented Plaintiff from policing its intellectual property nor suggested further steps to determine if other copyrighted materials owned by Plaintiff were still uploaded on Course Hero.[8]

### B.    Procedural History

Plaintiff commenced this action on September 17, 2021.[9] On November 1, 2022, Plaintiff filed the First Amended Complaint (the "FAC").[10] In August 2023, the Honorable Janet B. Arterton issued an order regarding Defendant's partial motion to dismiss, denying the request to dismiss the Section 1202(a) portions of Count IV pertaining to the Defendant's Copyright Notice and Watermark.[11] On September 8, 2023 Defendant filed its Answer to the FAC.[12]

---

[7] *Id.* at 3.

[8] FAC Ex. 21, ECF No. 31-22; FAC ¶ 52.

[9] ECF No. 1.

[10] FAC.

[11] ECF No. 86 (*Post Univ. v. Course Hero, Inc.*, No. 21-CV-1242, 2023 WL 5507845 (D. Conn. Aug. 25, 2023)).

[12] Answer, ECF No. 89.

After discovery concluded, on November 8, 2024, Defendant filed the instant motion for summary judgment.[13] Plaintiff opposed, and Defendant replied.[14] The parties then filed supplemental briefing, and the Court heard oral argument.[15]

### C.    Plaintiff's Claims and Intellectual Property

The Amended Complaint alleges the following causes of action: (1) direct copyright infringement, (2) contributory copyright infringement, (3) vicarious copyright infringement, (4) removal of CMI in violation of the DMCA, (5) trademark infringement in violation of the Lanham Act, (6) false designation of origin in violation of the Lanham Act, (7) the Connecticut Unfair Trade Practices Act ("CUTPA"), (8) unjust enrichment, and (9) common law unfair competition.[16] It further alleges that Plaintiff's intellectual property includes copyrights and trademarks registered with the United States Patent and Trademark Office ("USPTO").

### 1.    Copyrights

At issue in this case are Plaintiff's copyrighted documents created by its faculty and staff, including: (1) the document titled "College Writing Post U Newspaper Assignment," alleged to be created as a work for hire in 2020, (2) the document titled "ENG110 College Writing Course Syllabus," alleged to be created as a work for hire in 2020, (3) the document titled "Foundation of Early Childhood Education Research Paper," alleged to be created as a work for hire in 2018, (4) the document titled "ACC111 Financial Accounting Course

---

[13] Def. Mot., ECF No. 182.

[14] Pl. Opp., ECF No. 189; Def. Reply, ECF No. 201.

[15] ECF Nos. 210, 212, 214, 221.

[16] *See generally* FAC.

Syllabus," alleged to be created as a work for hire in 2018, and (5) the document titled "HRM201 Unit 7 Final Exam," alleged to be created as a work for hire in 2018.[17]

### 2. Trademarks

Also at issue are trademarks registered with the United States Patent and Trademark Office, including the following:[18]

1.  the mark "POST UNIVERSITY"

2.  the mark "JOHN P. BURKE SCHOOL OF PUBLIC SERVICE AND EDUCATION"

3.  the mark "THE MALCOLM BALDRIDGE SCHOOL OF BUSINESS"

4.  the mark "POST"

5.  the mark "PU POST UNIVERSITY EST. 1890," including the following stylized logo design



6.  the stylized mark "PU" including the following stylized logo design

---

[17] *Id.* ¶¶ 53–58.

[18] *Id.* ¶¶ 59–65.



## II.  <u>LEGAL STANDARD</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[19] A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *Id.* The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a

---

[19] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). However, if the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof and submits "merely colorable evidence," then summary judgment is appropriate. *Celotex*, 477 U.S. at 322–23; *Anderson* 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). There must be evidence on which the jury reasonably could find for it. *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).

## III.    DISCUSSION

### A.    Section 1202 Claim (Count IV)

#### 1.    Standing

Defendant challenges Plaintiff's standing to bring a DMCA claim under 17 U.S.C. § 1202, which prohibits distributing works knowing that CMI was removed or altered without permission of a copyright owner. It asserts, first, that there is no evidence of concrete harms traceable to Defendant's alleged section 1202 violations, arguing that a generalized concern about Plaintiff's students using the Internet to cheat is not sufficient to show a concrete harm.[20] Second, Defendant asserts that Plaintiff lacks standing to assert Section 1202 claims for works

---

[20] Def. Mem., ECF No. 182-01 at 20–23.

that Plaintiff admits that it does not own, including at least 1,036 of the Works in Suit that were created by students and Plaintiff's subsidiaries.[21]

Article III of the United States Constitution requires a plaintiff to have standing to invoke federal jurisdiction. *Doody v. Bank of Am., N.A.*, 709 F. Supp. 3d 71, 78 (D. Conn. 2024). Whether a plaintiff has standing is a threshold inquiry, and a plaintiff bears the burden to show the following: "(i) that [the plaintiff] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

The record includes ample evidence showing Plaintiff's standing to assert a claim of removing or altering CMI in violation of the DMCA. To prevail on the DCMA claim, a plaintiff must show that a "defendant know or have reason to know that distribution of copyrighted material despite the removal of CMI 'will induce, enable, facilitate, or conceal an infringement.'" *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 172 (2d Cir. 2020) (citing 17 U.S.C. § 1202(b)). Considering the pre-litigation letters Plaintiff sent to Defendant, it is at least reasonable to infer that Plaintiff has incurred costs prior to filing this lawsuit, including attorney's fees, to investigate infringement on Course Hero and then to notify Defendant of alleged ongoing infringement. In January 2021, Plaintiff notified Defendant that it located at

---

[21] *Id.* at 23–24.

least sixty-four instances of Plaintiff's copyrighted course materials posted on Course Hero, providing Defendant with the URLs for the identified materials.[22] Plaintiff's counsel, under penalty of perjury, certified that he had a good faith belief that the use of these copyrighted materials was unauthorized.[23] Then, in February 2021, Plaintiff again notified Defendant of its good faith belief that there was ongoing infringement on Course Hero, identifying an additional thirty-five instances of course materials posted on the website.[24] Plaintiff further alleged that the manner in which Course Hero is operated flies in the face of the spirit and intent of the DMCA, as it severely hindered Plaintiff's ability to determine whether the website continues to violate its copyrights because relevant information identifying Plaintiff's copyrighted materials is concealed behind a subscription.[25] At this juncture, the inquiry into standing could end. It is well established that, "[i]f a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III" sufficient to confer standing. *TransUnion LLC*, 594 U.S. at 425. It is also sufficient to show a chain of events resulting from Defendant's removal of the CMI could result in harm to Plaintiff.

Defendant's citation to testimony from Mr. Montiero, Plaintiff's designated corporate witness on Plaintiff's alleged harm, does not relevantly alter the Court's conclusion that Plaintiff incurred a concrete injury. Defendant overstates its position in asserting that Mr. Montiero disclaimed any ability to trace the harm to the alleged section 1202 violations. **First**,

---

[22] FAC Ex. 16 at 2.

[23] *Id.*

[24] FAC Ex. 19 at 2.

[25] *Id.*

at a minimum, Mr. Montiero's testimony further shows that Plaintiff is likely to incur monetary injury. While Mr. Montiero testified that he "never said the blurring of the Post logo was causing harm," he also testified that Defendant's distributing Plaintiff's document in the open "forces us to spend money doing courses much sooner or hiring lawyers for discussion on things like this."[26]

**Second**, Mr. Montiero's testimony also shows that the unauthorized removal of CMI from Plaintiff's course materials inflicted a concrete injury analogous to an injury recognized by common law sufficient to confer standing. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). In *Spokeo,* the Supreme Court explained that, while "Congress plainly sought to curb the dissemination of false information by adopting procedures" through the Fair Credit Reporting Act ("FCRA"), a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation" because a "violation of one of the FCRA procedural requirements may result in no harm." *Id.* at 342. For there to be a concrete injury, an injury must be "'real,' and not 'abstract.'" *Id.* at 340. The Supreme Court clarified *Spokeo* in *TransUnion*, explaining that "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts[,]" such as "reputational harms, disclosure of private information, and intrusion upon seclusion." 594 U.S. at 424–25.

Plaintiff sufficiently shows that it experienced a harm that has traditionally been regarded as providing a basis for a claim of unfair competition. A comparison to *Gilliam v. Am. Broadcasting Cos.* 538 F.2d 14, 17 (2d Cir.1976), where the Second Circuit Court of

---

[26] Montiero Dep., ECF No. 182-17 at 153:4–5, 17–20.

Appeals affirmed a finding of irreparable injury to the professional reputation of a group of writers and performers known as "Monty Python" caused by broadcasting edited versions of their programs, is instructive. The *Gilliam* Court noted that "courts have long granted relief for misrepresentation of an artist's work by relying on theories outside the statutory law of copyright," such as the "tort of unfair competition," and that they "properly vindicate the author's personal right to prevent the presentation of his work to the public in a distorted form." *Id.* at 24. Similar to the editing and broadcasting of programs, it is alleged that Defendant creates and displays blurred and truncated previews of documents to users, where visible CMI is hidden by blurred overlays, making it more difficult for non-account holders to identify its works and request that they be taken down:

> A user who is not an account holder is able to preview four documents without creating an account. All subsequent documents such a user visits are fully blurred. Further, upon viewing five or more documents, a pop-up asks such a user to create an account. Additionally, some of the overlay elements have different text for account holders and non-account holders.[27]

Therefore, just as with a common law unfair competition plaintiff who alleges injury through the broadcast of edited versions of their work, the damage done to Plaintiff through distributing works with removed CMI is sufficiently concrete to confer constitutional standing.

Moreover, courts in the Second Circuit have held that the harm caused by unauthorized removal of CMI in violation of the DMCA is closely related to another property-based harm traditionally recognized in American courts: copyright infringement. While copyright infringement claims differ from DMCA claims in that they protect against the unauthorized reproduction and distribution of creative works protected by a copyright, "[f]or both DMCA

---

[27] Supp. Resp. to Pl. Interrogs., ECF No. 189-51 at 11.

and traditional copyright infringement claims, the harm involves an injury to 'an author's property right in his original work of authorship.'" *N.Y. Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 312 (S.D.N.Y. 2025) (quoting *The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 23 (S.D.N.Y. 2025)). These claims are grounded in notions of property rights, and both claims are designed to "promote the Progress of Science and useful Arts." *N.Y. Times*, 777 F. Supp. 3d at 312 (quoting U.S. Const. art. I, § 8, cl. 8); *see also The Intercept Media*, 767 F. Supp. 3d at 27 ("The DMCA adds another stick to the bundle of property rights already guaranteed to an author in her work under traditional copyright law.). So too in the present case: this Court concludes that "even though the specific right created by the DMCA may be comparatively new, the injury experienced by [a plaintiff] because of the violation of that right sounds in the same kind of harm long recognized in copyright suits," and thus, for another independent ground, Plaintiff here has sufficiently shown standing. *The Intercept Media*, 767 F. Supp. 3d at 28.

In *Raw Story Media, Inc. v. OpenAI, Inc.*, 756 F. Supp. 3d 1 (S.D.N.Y. 2024), in contrast, the court dismissed the DMCA claims and denied leave to amend for lack of standing. The *Raw Story Media c*ourt was "not convinced that the mere removal of identifying information from a copyrighted work—**absent dissemination**—has *any* historical or common-law analogue." *Id.* at 6 (emphasis added). The instant case is distinguishable because it does not simply involve incorporating documents with manipulated CMI into as internal database. Plaintiff has specifically put forth evidence to create a triable issue as to whether Defendant displayed the Works in Suit with manipulated CMI to users on Course Hero, sold direct access to the manipulated documents, and enables users to download copies of those documents. Publicly displaying the Works in Suit and enabling users to download the files has,

as Plaintiff contends, "force[d] [it] to spend money doing courses much sooner or hiring lawyers for discussion on things like this."[28]

Defendant's assertion that Plaintiff lacks constitutional and statutory standing to sue for the Works in Suit it does not own is unavailing. The statutory text does not provide any basis to limit DMCA claims to *only* owners of a copyrighted document. Instead, the DMCA provides that "**[a]ny** person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation." 17 U.S.C. § 1203 (emphasis added). As relevant here, section 1202(a) provides that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement" by providing or distributing CMI that is false, section 1202(b)(1) provides that "[n]o person shall . . . intentionally remove or alter any [CMI]," section 1202(b)(2) provides that "[n]o person shall . . . distribute . . . [CMI] knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law," and section 1202(b)(3) provides that "[n]o person shall . . . distribute . . . works . . . , knowing that [CMI] has been removed or altered without authority of the copyright owner or the law." Limiting actions to *only* the copyright owner finds no footing in the unambiguous text of the DMCA providing that any person injured by a DMCA violation may bright a civil action. Regardless, as discussed above, Plaintiff has sufficiently presented evidence to show that Plaintiff was harmed by Defendant's alleged DMCA violations involving the Work In Suit, including documents it does not own, resulting in monetary injury and injuries analogous to unfair competition and copyright infringement claims.

---

[28] Montiero Dep. at 153:4–5, 17–22.

As Plaintiff has presented evidence of injury sufficient to show standing, the Court denies summary judgment on this ground.

### 2.    Double Scienter Requirement For Section 1202 Claims (Count IV)

#### a.    Section 1202(a)

Section 1202(a) of the DMCA provides that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement—(1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false." 17 U.S.C. § 1202(a). Therefore, in order to prevail on a section 1202(a) claim, Plaintiff must show "[1] defendant knowingly provided false copyright information *and* [2] that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement." *Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018).

As to the first requirement, Defendant argues that it has not provided false CMI because Defendant adds context that is factually true to the uploaded documents on Course Hero to indicate that they were available on that website.[29] Put another way, Defendant argues that display of "Course Hero" in various forms on or around a document cannot be considered false CMI because the statements identify Course Hero as the source or distributor of the documents accessed from Defendant's website.

Understanding Defendant's position necessitates some background on the workings of Course Hero. Here, Defendant notes that the parties agree as to the technical functionality of the Course Hero website, including how documents are uploaded, displayed, and distributed.[30]

---

[29] Def. Mem. at 24–27.

[30] Def. Reply, ECF No. 201 at 7 (citing Post's Statement of Additional Material Facts ("Post SOF"), ECF No. 189-1.)

The life cycle of a document on the Course Hero website consists of four stages: upload, preview, unlock, and download.[31]

First, at the upload stage, when a user uploads a non-.pdf document, Defendant converts it to a .pdf file and then converts that file to HTML files containing extracted text and images.[32] Metadata associated with the uploaded document is not carried over to the HTML files used to show the document to users at later stages of the lifecycle.[33] Defendant creates blurred versions of the HTML files, which can be assembled in combination to show partially or fully viewed versions of the uploaded documents ("assets").[34]

Then, at the preview stage, users cannot view certain types of documents in full until they unlock them on Course Hero.[35] While the document remains locked, users can only see a preview created by Defendant, which is a modified version of a document in which at least some of the content is intentionally blurred/truncated and metadata is hidden.[36] The previews are surrounded by Course Hero logos, an HTML overlay banner (including Course Hero advertisements), a Course Hero copyright notice, thumbnail images suggesting relevant documents, among other things.[37] To illustrate, below the previews and at the bottom left-hand corner of the website, the words "Copyright © 2021, Course Hero, Inc." appear in white text

---

[31] Post SOF ¶ 22.

[32] *Id.* ¶ 26.

[33] *Id.* ¶ 27.

[34] *Id.* ¶ 29.

[35] Answer, ECF No. 89 ¶ 18.

[36] Post SOF ¶¶ 31, 32.

[37] *Id.* ¶ 36.

on a blue bar; the bottom right-hand corner states that "Course Hero is not sponsored or endorsed by any college or university"[38]



Third, at the unlock stage, users can unlock a document by purchasing a subscription, paying for one-time document access, or by uploading unique materials.[39] After a document is unlocked, a user is shown the document as originally uploaded but Defendant with withholds from view all metadata associated with the document, including metadata fields known to contain CMI (e.g., File Company, File Author, File Last Author).[40]

Finally, at the download stage, unlocked documents may be downloaded by a user on Course Hero. Most documents downloaded during the damages period were missing the original metadata (including the "Author" and "Title" fields), and new metadata, a diagonal CH watermark, and CH footer were added.[41] For example, Plaintiff asserts Defendant applies multiple watermarks to show that the document was obtained from the Course Hero, including "study resource was shared via CourseHero.com" in pale gray behind the text:

---

[38] FAC Ex. 1, ECF No. 31-2 at 4.

[39] Post SOF ¶ 41.

[40] *Id.* ¶ 43.

[41] *Id.* ¶ 45.

**Post U Newspaper Assignment**

**Due Date:** 11:59 p.m. EST, Sunday, of Units 3 and 5, Friday, of Unit 8
**Points:** 10

**Instructions:**

Throughout the course of this class, you will write three different newspaper articles.
You will approach each a bit differently, because the nature of the article is always
influenced by the type of article you are writing and the publication you are writing for.
As with any type of writing, it is important to consider the *genre* you are writing in and
*who* you are writing for. Imagine that you are a writer for the campus newspaper. You
will create three articles for three different sections of the campus newspaper.

- Unit 3: Local News
  - Focus on a current event affecting your local community
- Unit 5: National News
  - Focus on a current event affecting the nation
- Unit 8: International News
  - Focus on a current event affecting the international community

In Units 3, 5, and 8, you will write one story (three paragraphs) about a current event in
the local, national, and international news as specified previously. Your story should be
based on something you either read in the news, seen a news broadcast, or even see
as part of a social media story. You will write this story as if you were writing a real
newspaper article. You should bring in one outside source that is either a video, a
photograph, or an article that supports what you are writing about. You should
cite/reference that source in APA format.

The style of the newspaper article is up to you. For example, for the first article, you
can create a column based on an article you read in your local paper. Or, for the
second article, you could interview someone based on a story that ran on a national
news program. For the last article, you could write an international business article
based on what you read from an international newspaper. The most important thing
with style is that the article reflects the ideas you are trying to get across to the reader
with clear word choice.

*Please keep in mind that these articles are a chance for you to explore the topics
that matter to you.*

This study source was downloaded by 100000824591884 from CourseHero.com on 06-14-2021 13:49:30 GMT -05:00

https://www.coursehero.com/file/89968964/Assignment-Weekly-Newspaperpdf/

And at the bottom of the page, small black text appears that notes when a document was downloaded; for example, text at the bottom of each page states that "This study source was downloaded by 100000824591884" from CourseHero.com on 06-14-2021 13:49:30 GMT -05:00" and on the line below it, https://www.coursehero.com/file/89968964/Assignment-Weekly-Newspaperpdf/.[42]

Here, an analysis of the language of the statute makes plain that Defendant relies on an improper interpretation of the DMCA. Section 1202 of the DMCA provides that CMI can be many kinds of information so long as it is "**conveyed in connection with**" copies or displays of a work; including (i) "[t]he title and other information identifying the work"; (ii) "**[t]he name of, and other identifying information about, the author of a work**"; (iii) "**[t]he name**

---

[42] *Id.*

of, and other identifying information about, the copyright owner of the work"; (iv)

"[t]erms and conditions for use of the work"; and (v) "[i]dentifying numbers or symbols

referring to such information or links to such information." 17 U.S.C. § 1202(c) (emphasis

added). Thus, under the plain text of the DMCA, which broadly provides that CMI can be

"conveyed in connection" with works, Plaintiff's evidence of Defendant displaying and

hosting documents to be downloaded, and modifying documents to add Course Hero's names

in banners, logos, watermarks, and copyright notices raises triable issues that Defendant

"conveyed" copies of works with false CMI. *Agence France Presse v. Morel*, 934 F. Supp. 2d

547, 558 (S.D.N.Y. 2013) (adding names in watermarks and captions could improperly suggest

ownership where defendants were not owners); *Michael Grecco Prods., Inc. v. Alamy, Inc.*,

372 F. Supp. 3d 131, 138 (E.D.N.Y. 2019) ("Because a watermarked corporate name or symbol

may refer to the author or copyright owner when displayed on a copyrighted work in

connection with the marketing of that work for sale or license, such watermarks do constitute

CMI for the purpose of stating a violation of § 1202(a)."). As to the second requirement,

Defendant contends that it is undisputed that Defendant did not provide false CMI with the

"intent to induce, enable, facilitate, or conceal an infringement" under the second Section

1202(a) scienter requirement.[43] But there can be no question that Defendant was aware of

alleged ongoing infringement of Plaintiff's intellectual property through Plaintiff's pre-suit

letters and Defendant's conduct. Defendant has had increasingly detailed notice of Plaintiff's

infringement allegations for years, since January 2021, when Plaintiff sent Defendant a letter

identifying sixty-four web pages it believed were copyrighted materials that were owned by

---

[43] Def. Mem. at 27–29.

Post University and notifying Defendant that additional unauthorized use of infringing materials likely existed on Course Hero. Then, in February 2021, Plaintiff notified Defendant of additional instances of Plaintiff's copyrighted course materials posted on Course Hero and the allegation that the manner in which Course Hero was operated severely hindered Plaintiff's ability to determine whether the site continues to violate its copyrights.[44] A reasonable jury could therefore conclude that Defendant's personnel failed to substantively respond to Plaintiff's allegations of ongoing infringement. Considering Defendant's pre-suit notice, the allegations of ongoing infringement, and the Second Circuit's guidance that "summary judgment is notoriously inappropriate for determinations of claims in which intent, good faith, and other subjective feelings play dominant roles," *Hartford Life Ins. Co. v. Einhorn*, 497 F. Supp. 2d 398, 402 (E.D.N.Y. 2007) (quoting *Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 16 (2d Cir. 1993)), the Court finds that summary judgment must be denied.

Attempting to sidestep the implication of the pre-suit notices, Defendant cites to *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 32 (2d Cir. 2012), for the proposition that a service provider of a user-generated content site does not have knowledge of infringement unless a specific item is pointed out to them or unless infringement would be obvious to any reasonable person without special expertise.[45] But that argument appears to conflate the so-called "red flag" knowledge provision relevant to the DMCA safe harbor, 17 U.S.C.A. § 512, with the knowledge and intent requirement to sustain a CMI claim, 17 U.S.C. § 1202(a). For the same reason, the Court does not find Defendant's citation to *Capitol Recs., LLC v. Vimeo,*

---

[44] FAC Ex. 19 at 3.

[45] ECF No. 221 at 9:3–14.

*LLC*, 826 F.3d 78, 93 (2d Cir. 2016), which similarly involved the DMCA safe harbor, to be analogous to this context.

>   **b.**    **Section 1202(b)**

To prevail on a claim of altering CMI without authority under section 1202(b)(3) of the DMCA, a plaintiff must "prove the following: (1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant distributed works or copies of works; (3) while knowing that CMI has been removed or altered without authority of the copyright owner or the law; and (4) while knowing, or having reasonable grounds to know that such distribution will induce, enable, facilitate, or conceal an infringement." *Mango v. Buzzfeed*, 970 F.3d 167, 171 (2d Cir. 2020) (citation modified). Elements three and four comprise a "so-called 'double-scienter requirement.'" *Id.*

First, Defendant asserts that it did not intentionally remove or alter CMI from the Works in Suit or distribute copies of the Works in Suit knowing that CMI had been removed or altered. But, as Defendant acknowledges, Defendant erred in causing some original metadata in user-uploaded files, which Plaintiff alleges contained its CMI, to be removed upon download for certain types of documents.[46] While Defendant asserts that the error was due to a technological glitch in a third-party software that was not revealed until this lawsuit, a jury could also reasonably conclude that this was intentional. Plaintiff points to evidence showing that nothing has changed three years after commencement of this lawsuit, and that 90% of Plaintiff's Works in Suit receive watermarks and have their original metadata stripped, thus raising genuine

---

[46] Def. Mem. at 30.

disputes as to whether Defendant knowingly and serially removes CMI from documents by choosing the exact portions of a document it wants a user to see and it wants to remove.

Second Defendant asserts that it could not have known that it was acting "without authority of the copyright owner or the law" under section 1202(b)(3)'s scienter requirement.[47] Defendant also contends that it did not have reasonable grounds to know that the alleged CMI removals or alterations would induce, enable, facilitate, or conceal copyright infringement. But, as previously discussed, that assertion is belied by Plaintiff's pre-suit letters notifying Defendant of ongoing use of Plaintiff's copyrighted materials without permission and of the Course Hero website impeding Plaintiff's policing of unlawful use of its intellectual property. *Buzzfeed*, 970 F.3d at 172 ("[A] defendant's awareness that distributing copyrighted material without proper attribution of CMI will conceal his own infringing conduct satisfies the DMCA's second scienter requirement."). At a minimum, there is a genuine dispute as to Defendant's scienter.

### B.    Lanham Act Claims (Counts V and VI)

Defendant contends that Plaintiff's Lanham Act claims, including the false designation of origin (Count VI) and trademark infringement (Count V) claims, are barred by the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).[48]

A defendant is liable in a civil action for false designation of origin in violation of the Lanham Act where it "uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin" which is "likely to cause confusion,

---

[47] Def. Mem. at 33–35.

[48] *Id.* at 39–42.

or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a). In *Dastar*, however, the Supreme Court held that no Lanham Act liability attached to a party that sold a video made by copying and editing a television series which was in the public domain. *Dastar*, 539 U.S. at 26. *Dastar* involved a tangible good (a videotape) containing a creative work (film footage) that was copied and modified from a series in the public domain. *Id.* The *Dastar* Court concluded that allowing liability for likelihood of confusion of the video set's "origin" under a theory where the origin is "the creator of the content that the physical item conveys" would "cause the Lanham Act to conflict with the law of copyright," as "[t]he right to copy, and to copy without attribution, once a copyright has expired . . . passes to the public." *Dastar*, 539 U.S. at 33. The Court further explained that "reading § 43(a) of the Lanham Act as creating a cause of action for, in effect, plagiarism—the use of otherwise unprotected works and inventions without attribution—would be hard to reconcile with its previous decisions." *Id.* at 36.

Contrary to Defendant's assertions, the Court finds that Plaintiff's false designation of origin and trademark infringement claims are not squarely precluded by the Supreme Court's decision in *Dastar*. The *Dastar* Court held that any claim involving alleged likelihood of confusion as to the "origin of goods" must relate to the "producer of the tangible good that are offered for sale, as opposed to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. The Court is, however, not convinced that Plaintiff's claims are solely rooted in "any idea, concept, or communication" embodied in goods. And this case is distinguishable from precedent holding that Lanham Act claims fail as a matter of law for

being directed towards creative works. To illustrate, as Defendant points out, the Second Circuit has held "that a musical composition cannot be protected as its own trademark under the Lanham Act," noting that "once an original work has been produced trademark law is not the proper means of protecting the rights in this originality." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos, Inc.*, 228 F.3d 56, 64 (2d Cir. 2000). But here, there are triable issues as to whether Defendant displayed and sold Plaintiff's proprietary course materials bearing valid marks, which bears little resemblance to the unprotected film footage found in *Dastar* and the unprotected musical composition found in *EMI Catalogue P'ship*. This context is more analogous to *Kelly-Brown v. Winfrey*, 717 F.3d 295 (2d Cir. 2013), where, after the Supreme Court decided *Dastar*, the Second Circuit "impliedly rejected the notion that the Lanham Act applies only to physical goods" by reversing dismissal of claims involving the "unauthorized use of a plaintiff's trademarked slogan 'Own Your Power' on [a company's] website." *Hermes Int'l v. Rothschild,* 590 F. Supp. 3d 647, 656 (S.D.N.Y. 2022) (citing *Kelley-Brown*). *Dastar* does not foreclose Plaintiff's Lanham Act claims on this record.

Therefore, the Court denies summary judgment on this ground.

### C.    State and Common Law Claims (Count VII, VIII, IX)

Defendant asserts that Plaintiff's claims of unjust enrichment, unfair competition, and a violation of the CUTPA are preempted by the Copyright Act.

"[T]he Copyright Act preempts state law claims asserting rights equivalent to those protected within the general scope of the statute." *Urbont v. Sony Music Ent.*, 831 F.3d 80, 93 (2d Cir. 2016). "The purpose of statutory preemption is essentially to ensure a nationwide, uniform federal copyright system, ousting the states from imposing any control of the area."

*In re Jackson*, 972 F.3d 25, 42 (2d Cir. 2020). Section 301 of the Copyright Act describes the situations where statutory preemption applies:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). The Second Circuit has set forth a two-part analysis for determining whether there is preemption under section 301, holding that the Copyright Act solely governs a cause of action where: (1) "the plaintiff's claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works" under 17 U.S.C. §§ 102 and 103 (the "subject matter" requirement), and (2) "the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law" (the "general scope" or "equivalence" requirement). *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 300 (2d Cir. 2022).

As for the first part of the preemption analysis, the subject matter requirement is met "if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d. Cir. 2005). The subject matter requirement is satisfied here because the Works in Suit here include Plaintiff's course information, course materials, tests, and answers, are literary works afforded protection under the Copyright Act. 17 U.S.C. § 102(a)(1).

And as for the second part of the analysis, under the subject matter standard, if an "extra element" is "required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright, and there is no preemption." *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992). Courts may utilize the "extra element" test as part of a "holistic evaluation of the nature of the rights sought to be enforced and then make a determination whether the state law action is qualitatively different from a copyright infringement claim." *Melendez*, 50 F.4th at 302. As explained below, the Court finds that Plaintiff's unjust enrichment, unfair competition, and CUTPA claims do not differ qualitatively from a copyright infringement claim.

### 1.    Unjust Enrichment

First, in Count VIII of the FAC, Plaintiff alleges that Defendant continues to be unjustly enriched by, among other things, using Plaintiff's materials and intellectual property for its own financial gain and has benefitted therefrom in the form of payment from subscribers accessing Plaintiff's materials.[49] At oral argument, Plaintiff argues that Defendant is profiting off of Plaintiff's protected works and preventing Plaintiff from accessing those documents without payment.[50]

Plaintiff argues in a conclusory manner that the alleged misconduct goes beyond the mere copying of Plaintiff's copyrighted works, but it makes no attempt to identify any additional element sufficient to render it different from a federal copyright claim. In fact,

---

[49] FAC Count VIII.

[50] ECF No. 221 at 61:6–20.

Plaintiff accuses the "use" and "dissemination" of its materials on Course Hero, the very same acts that support its copyright claim.[51] Plaintiff has not shown anything that can be properly understood as an extra element sufficient to transform the unjust enrichment claim to be qualitatively different form a copyright infringement claim. Therefore, Plaintiff's unjust enrichment claim is preempted by the Copyright Act. *RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 676 F. Supp. 2d 9, 34 (D. Conn. 2009); *see also Briarpatch*, 373 F.3d at 307.

### 2.    Unfair Competition

Next, in Count IX of the Amended Complaint, Plaintiff alleges that Defendant engaged in unfair competition by trading on Plaintiff's name and good will as well as misappropriating Plaintiff's documents and labor.[52]

Again, Plaintiff has not shown anything that can be properly understood as an extra element sufficient to differentiate the unfair competition claim from the copyright infringement claim. Plaintiff incorporates by reference all the same allegations made in its unjust enrichment claim and provides nothing beyond a conclusory recital of the elements of the claim. Therefore, Plaintiff's unfair competition is preempted by the Copyright Act. *RBC Nice Bearings, Inc.*, 676 F. Supp. 2d at 3; *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992); *Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, No. 07-CV-0194 (TLM), 2011 WL 13228167, at *17 (D. Conn. Jan. 19, 2011) ("The Second Circuit has consistently held that unfair competition claims alleging the misappropriation of content in essence seek the enforcement of rights conferred by the Copyright Act, and are thus preempted.").

---

[51] *Compare* FAC ¶¶ 163–65 *with* FAC ¶¶ 85, 87–89.

[52] FAC Count IX.

### 3. CUTPA

Finally, in Count VII of the Amended Complaint, the additional allegations that Plaintiff includes are that Defendant "deceptively promotes itself" as an educational platform and sells subscriptions and rewards users for uploading documents "in an effort to grow Course Hero's content library."[53]

Just as before, the essence of Plaintiff's state law claim includes enforcing the rights vested by copyrights and stopping the distribution of its course materials. Nevertheless, while Plaintiff argues that its CUTPA claim goes beyond the mere copying of its work, Plaintiff has failed to present evidence sufficient to survive summary judgment. Merely asserting that there is additional misconduct sufficient to differentiate the CUTPA claim from a copyright claim, without presenting evidence going beyond the pleadings, does not satisfy the extra elements test at the summary judgment posture. *See McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) ("[R]ather than merely 'deny the moving party's allegations in a general way,' the party opposing summary judgment 'must present competent evidence that creates a genuine issue of material fact.'"). While cases from the District of Connecticut indicate that a cause of action sounding in CUTPA can be qualitatively different from a copyright claim, such as when a defendant is alleged to have breach a fiduciary duty, *Bagwell v. World Wrestling Ent., Inc.*, No. 16-CV-1350 (JCH), 2017 WL 3579609, at *13 (D. Conn. May 5, 2017), when a defendant is alleged to have violated a trade secret, *Frontier Grp., Inc. v. Nw. Drafting & Design, Inc.*, 493 F. Supp. 2d 291, 301 (D. Conn. 2007), or when a defendant is alleged to violate public policy by licensing films to certain movie theaters to the exclusion of others,

---

[53] FAC Count VII.

*Broadway Theatre Corp. v. Buena Vista Pictures Distribution*, No. 00-CV-706 (SR), 2002 WL 32502100, at *1 (D. Conn. Sept. 19, 2002), the context of the instant case is distinguishable. It is not enough to simply assert that Defendant's business model includes selling Plaintiff's copyrighted documents and preventing Plaintiff from accessing those documents without paying for them.[54] The allegations are based on the same foundational acts of running the Course Hero website that Plaintiff accuses in its copyright claims.[55] Therefore, Plaintiff's CUTPA claim is preempted by the Copyright Act.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, Defendant's motion for summary judgment is **granted in part and denied in part**. Specifically, Defendant's motion for summary judgment is granted with respect to the following claims: Count VII CUTPA, Count VIII unjust enrichment, and Count IX common law unfair competition, and those claims are dismissed. Defendant's motion is otherwise denied.

**SO ORDERED.**

Hartford, Connecticut
September 23, 2025

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge

---

[54] ECF No. 221 at 61:6–20.

[55] *Compare* FAC ¶¶ 146–47 *with* FAC ¶¶ 85, 87–89.