**Post University, Inc. v. Learneo, Inc.**
**Proposed Jury Instructions and Objections**

| No. | Title | Page Number | Disputed |
|---|---|---|---|
| 1 | Digital Millennium Copyright Act (DMCA), Generally | 2 | Yes |
| 2 | Providing and Distributing False Copyright Management Information (§ 1202(a)) | 8 | Yes |
| 3 | Meaning of "False Copyright Management Information" (§ 1202(a)) | 19 | Yes |
| 4 | Removing or Altering Copyright Management Information (§ 1202(b)) | 21 | Yes |
| 5 | Violations Under the DMCA (§ 1203(c)) | 32 | Yes |
| 6 | Meaning of CMI "Conveyed in Connection With" a Work in the DMCA (17 U.S.C. §1202) | 44 | Yes |
| 7 | No DMCA Violation Exists Where the Works are Not Identical | 46 | Yes |
| 8 | Copyright Preliminary Instruction | 48 | No |
| 9 | Copyright - Defined | 51 | No |
| 10 | Copyright Infringement Elements: Ownership and Copying | 52 | Yes |
| 11 | Ownership of a Valid Copyright | 56 | No |
| 12 | Copyright Infringement - Copyright Registration Certificate | 57 | No |
| 13 | Copyright Interests - Authorship | 58 | No |
| 14 | Copyright Interests - Joint Authors | 59 | No |
| 15 | Copyright Interests - Copyright Work Made for Hire by Employee | 61 | No |
| 16 | Copying | 62 | No |
| 17 | Vicarious Copyright Infringement | 63 | No |
| 18 | Contributory Copyright Infringement | 64 | No |
| 19 | Copyright Affirmative Defense: Fair Use | 65 | No |
| 20 | Affirmative Defense - DMCA Safe Harbor (17 U.S.C. § 512(c)) | 66 | Yes |
| 21 | DMCA Safe Harbor Defense (17 U.S.C. § 512(c)) – Valid Notification Defined | 72 | Yes |
| 22 | DMCA Safe Harbor Defense (17 U.S.C. § 512(c)) – Actual or Red Flag Knowledge Defined | 78 | Yes |
| 23 | DMCA Safe Harbor Defense (17 U.S.C. § 512(c)) – Willful Blindness Defined | 82 | Yes |
| 24 | DMCA Safe Harbor Defense (17 U.S.C. § 512(c)) – Financial Benefit | 85 | Yes |
| 25 | Statutory Damages Under Section 1202 of the DMCA | 88 | No |
| 26 | Copyright Damages | 90 | No |
| 27 | Recoveries for the Same Injury | 91 | Yes |
| 28 | Damages - Mitigation | 94 | Yes |

**INSTRUCTION NO. 1: DIGITAL MILLENNIUM COPYRIGHT ACT**
**(DMCA), GENERALLY**
[COMPETING; PLAINTIFF'S PROPOSED INSTRUCTION]

Post University, Inc. ("Post") asserts that Course Hero, Inc. ("Course Hero") violated the Digital Millennium Copyright Act, 17 U.S.C. § 1202, which I will refer to as Section 1202 of the DMCA, in two ways. First, Post asserts that Course Hero unlawfully provided or distributed false "copyright management information" or "CMI" in connection with Post's works on, or downloaded from, the Course Hero website. Second, Post asserts that Course Hero unlawfully altered or removed Post's CMI in connection with the Post works on, or downloaded from, the Course Hero website. Course Hero denies these allegations.

I will describe the elements that Post must prove in order for you to find Course Hero liable for these two alleged violations in a moment. First, I will explain to you what CMI means.

CMI includes any of the following conveyed in connection with a work or of a copy, or display of a work:

1. The title and other information identifying the work, including the information set forth on a notice of copyright;

2. The name of, and other identifying information about, the author of the work;

3. The name of, and other identifying information about, the copyright owner of the work including the information set forth in a notice of copyright;

4. Terms and conditions for use of the work; and

5. Identifying numbers or symbols referring to the above information, or links to such information.

*Source*: 17 U.S.C. § 1202(c).

**Course Hero's Objections:**
1. Course Hero objects to this instruction's omissions of the purpose of CMI, which is relevant to the jury's understanding of what CMI is and its evaluation of whether Course Hero by its actions intended to falsify, remove, or alter CMI. As written in Course Hero's proposed instruction, this instruction should include the following: "The purpose of copyright management information, or CMI, is to inform the public that something is copyrighted, facilitate licensing of copyright for use on the Internet, and discourage piracy." *Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719, 737 (S.D.N.Y. 2021) ("[T]he point of CMI is to inform the public that something is copyrighted."); *Lane Coder Photography, LLC v. Hearst Corp.*, No. 22-CV-5071-LTS, 2023 WL 5836216, at *5 (S.D.N.Y. Sept. 8, 2023) ("The essential purpose of CMI is to inform the public that something is copyrighted." (internal quotations omitted)); S. Rep. No. 105–190, at 11, n.18 (1998) ("The purpose of CMI is to facilitate licensing of copyright for use on the Internet and to discourage piracy.").

2. Course Hero objects to the omission of "***copyrighted*** work" from the definition of CMI. Second Circuit case law expressly states that the DMCA protects the integrity of CMI conveyed in connection with "a copyrighted work." *Fischer v. Forrest*, 968 F.3d 216, 222 (2d Cir. 2020) ("In broad strokes, § 1202(c) protects the '[i]ntegrity of copyright management information' and prohibits the removal of CMI from *copyrighted works*." (emphasis added) (citing 17 U.S.C. § 1202(a)-(c))); *Smith v. L. Off. of Richard St. Paul, Esq., PLLC*, No. 22 CV 5648 (VB), 2023 WL 3570606, at *6 (S.D.N.Y. May 18, 2023) ("The DMCA protects the integrity of CMI 'conveyed in connection with' *a copyrighted work*." (emphasis added) (quoting 17 U.S.C. § 1202(c))).

3. Course Hero objects to the instruction because it omits the definition of "conveyed in connection with." The instruction should include the following: "To be 'conveyed in connection with' a work, the information must appear in either the body or the area around the work." *See FurnitureDealer.Net, Inc. v. Amazon.com, Inc*, No. CV 18-232 (JRT/HB), 2022 WL 891473, at *19 (D. Minn. Mar. 25, 2022) ("To constitute 'conveyed in connection with' information must appear in the body or area around the work." (citation omitted)); *Drauglis v. Kappa Map Grp., LLC*, 128 F. Supp. 3d 46, 61 (D.D.C. 2015) ("The information was not in the body of, or the area around, the Photograph, and so it was not 'conveyed in connection with' the Photograph in a way that makes that information CMI.").

**Post's Response:**

1. Course Hero's proposed explanation of the purpose of CMI is unnecessary, overly narrow, misleading to the extent it implies that a registered copyright is required for DMCA violations, and inconsistent with statute and the legislative history of the DMCA. Neither the statutory language nor the legislative history indicates that the purpose of CMI is to inform the public that something is copyrighted. S. Rep. No. 105–190 at 11, n.18 (1998) specifies only that "[t]he purpose of CMI is to facilitate licensing of copyright for use on the Internet and to discourage piracy." H.R. Rep. 105-551(I) (1998) states that Section 1202 of the DMCA, by prohibiting false CMI and the removal of CMI, will "ensure the integrity of the electronic marketplace by preventing fraud and misinformation," and "protect consumers from misinformation as well as authors and copyright owners from interference with the private licensing process."

2. The phrase "*copyrighted* work" is inconsistent with section 1202(c) and misleading to the extent it implies that a registered copyright is required for DMCA violations. 1202(c) defines "copyright management information" as "any of the following information conveyed in connection with copies… *of a work* … or display *of a work*."

3. Requiring that "the information must appear in either the body or the area around the work" is not supported by controlling case law and is contrary to findings by this Court earlier in the case. In denying Course Hero's Motion to Dismiss, this Court found that "Physical proximity is not the only appropriate measure of whether a copyright notice constitutes CMI." Dkt. 86 at p. 8, *citing Pierson v. Infinity Music & Ent., Inc.*, 300 F. Supp. 3d 390, 391 (D. Conn. 2018)(internal citations omitted). The non-precedential case law Course Hero relied on could not "be reconciled with the DMCA's legislative history, in which legislators expressed their intent that the phrase 'conveyed' be understood in the 'broadest sense' possible." Dkt. 86 at p. 8. Course Hero now relies on decisions from the District of Minnesota and the District of Columbia for its narrow interpretation. However, in *FurnitureDealer.Net*, the court acknowledged the lack of a universal conclusion on the interpretation of "conveyed in connection with" and recognized the broader interpretations used by courts in the Second Circuit. As discussed in *FurnitureDealer.Net*, "Other courts have held that 'the term

'conveyed' is used in its broadest sense and is not meant to require any type of transfer, physical or otherwise, of the information. It merely requires that the information be accessible in conjunction with, or appear with, the work being accessed." *FurnitureDealer.Net,* 2022 WL 891473, at *19, *citing to Janik v. SMG Media, Inc.*, 2018 WL 345111, at *12 (S.D.N.Y. Jan. 10, 2018) (quoting S. Rep. No. 105–190 at 35 (1998)). *FurnitureDealer.Net* also noted this court's decision in *Pierson v. Infinity Music & Entm't, Inc.*, "holding the terms of use linked at the bottom of the webpage was conveyed in connection with the works." *FurnitureDealer.Net,* 2022 WL 891473, at *19, *citing Pierson*, 300 F.Supp.3d 390, 395-96 (D. Conn. 2018). As in *Janik*, *Pierson* held that "The term 'conveyed' in section 1202(c) 'is used in its broadest sense" and "merely requires that the information be accessible in conjunction with, or appear with, the work being accessed.'" *Pierson*, 300 F.Supp.3d at 394.

**INSTRUCTION NO. 1: DIGITAL MILLENNIUM COPYRIGHT ACT (DMCA), GENERALLY**
**[COMPETING; DEFENDANT'S PROPOSED INSTRUCTION]**

Post University, Inc. ("Post") asserts that Course Hero, Inc. ("Course Hero") violated the Digital Millennium Copyright Act, 17 U.S.C. § 1202, which I will refer to as Section 1202 of the DMCA, in two ways. First, Post asserts that Course Hero unlawfully provided or distributed false "copyright management information" or "CMI" in connection with Post's works on, or downloaded from, the Course Hero website. Second, Post asserts that Course Hero unlawfully altered or removed Post's CMI in connection with the Post works on, or downloaded from, the Course Hero website. Course Hero denies these allegations.

I will describe the elements that Post must prove in order for you to find Course Hero liable for these two alleged violations in a moment. First, I will explain to you what CMI means.

The purpose of copyright management information, or CMI, is to inform the public that something is copyrighted, facilitate licensing of copyright for use on the Internet, and discourage piracy.[1] CMI includes any of the following conveyed in connection with a copy or display of a copyrighted work:[2]

1. The title and other information identifying the work, including the information set forth on a notice of copyright;

2. The name of, and other identifying information about, the author of the work;

3. The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright;

---

[1] *Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719, 737 (S.D.N.Y. 2021) ("[T]he point of CMI is to inform the public that something is copyrighted."); *Lane Coder Photography, LLC v. Hearst Corp.*, No. 22-CV-5071-LTS, 2023 WL 5836216, at *5 (S.D.N.Y. Sept. 8, 2023) ("The essential purpose of CMI is to inform the public that something is copyrighted." (internal quotations omitted)); S. Rep. No. 105-190 at 11, n.18 (1998) ("The purpose of CMI is to facilitate licensing of copyright for use on the Internet and to discourage piracy."); *Fischer v. Forrest*, 968 F.3d 216, 224 (2d Cir. 2020) ("'Fischer's Bee-Quick' used in material published by a third party like Brushy Mountain, which contains advertisements for dozens of other products from many different suppliers, cannot be reasonably construed as an identifier of the copyright holder of the advertising text. In other words, 'Fischer's' in 'Fischer's Bee-Quick' is not used for 'managing' copyright information with respect to the text at issue.").

[2] 17 U.S.C. § 1202(c) ("As used in this section, the term 'copyright management information' means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work . . . ."); *Fischer v. Forrest*, 968 F.3d 216, 222 (2d Cir. 2020) ("In broad strokes, § 1202(c) protects the '[i]ntegrity of copyright management information' and prohibits the removal of CMI from *copyrighted works*." (emphasis added) (citing 17 U.S.C. § 1202(a)-(c))); *Smith v. L. Off. of Richard St. Paul, Esq., PLLC*, No. 22 CV 5648 (VB), 2023 WL 3570606, at *6 (S.D.N.Y. May 18, 2023) ("The DMCA protects the integrity of CMI 'conveyed in connection with' *a copyrighted work*." (emphasis added) (quoting 17 U.S.C. § 1202(c))).

4. Terms and conditions for use of the work; and

5. Identifying numbers or symbols referring to the above information or links to such information.

To be "conveyed in connection with" a work, the information must appear in either the body or the area around the work.[3]

**Post's Objections:**

1. Post objects to Course Hero's explanation of the purpose of CMI as being unnecessary, overly narrow, misleading to the extent it implies that a registered copyright is required for DMCA violations, and inconsistent with statute and the legislative history of the DMCA. Neither the statutory language nor the legislative history indicates that the purpose of CMI is to inform the public that something is copyrighted. S. Rep. No. 105–190, at 11, n.18 (1998) specifies only that "[t]he purpose of CMI is to facilitate licensing of copyright for use on the Internet and to discourage piracy." H.R. Rep. 105-551(I) (1998) states that Section 1202 of the DMCA, by prohibiting false CMI and the removal of CMI, will "ensure the integrity of the electronic marketplace by preventing fraud and misinformation," and "protect consumers from misinformation as well as authors and copyright owners from interference with the private licensing process."

2. Course Hero's proposed language, that "CMI includes any of the following conveyed in connection with a copy or display of a *copyrighted* work" is inconsistent with section 1202(c) and misleading to the extent it implies that a registered copyright is required for DMCA violations. 1202(c) defines "copyright management information" as "any of the following information conveyed in connection with copies… *of a work* … or display *of a work*."

3. The statement, "To be 'conveyed in connection with' a work, the information must appear in either the body or the area around the work" is not supported by controlling case law and is contrary to findings by this Court earlier in the case. In denying Course Hero's Motion to Dismiss, this Court found that "Physical proximity is not the only appropriate measure of whether a copyright notice constitutes CMI." Dkt. 86 at p. 8, *citing Pierson v. Infinity Music & Ent., Inc.*, 300 F. Supp. 3d 390, 391 (D. Conn. 2018)(internal citations omitted). The non-precedential case law Course Hero relied on could not "be reconciled with the DMCA's legislative history, in which legislators expressed their intent that the phrase 'conveyed' be understood in the 'broadest sense' possible." Dkt. 86 at p. 8. Course Hero now relies on decisions from the District of Minnesota and the District of Columbia for its narrow interpretation. However, in *FurnitureDealer.Net*, the court acknowledged the lack of a universal conclusion on the interpretation of "conveyed in connection with" and recognized the broader interpretations used by courts in the Second Circuit. As discussed in *FurnitureDealer.Net*, "Other courts have held that 'the term 'conveyed' is used in its broadest

---

[3] *FurnitureDealer.Net, Inc. v. Amazon.com, Inc*, No. CV 18-232 (JRT/HB), 2022 WL 891473, at *19 (D. Minn. Mar. 25, 2022) ("To constitute 'conveyed in connection with' information must appear in the body or area around the work." (citation omitted)); *Drauglis v. Kappa Map Grp., LLC*, 128 F. Supp. 3d 46, 61 (D.D.C. 2015) ("The information was not in the body of, or the area around, the Photograph, and so it was not 'conveyed in connection with' the Photograph in a way that makes that information CMI.").

sense and is not meant to require any type of transfer, physical or otherwise, of the information. It merely requires that the information be accessible in conjunction with, or appear with, the work being accessed." *FurnitureDealer.Net*, 2022 WL 891473, at *19, *citing to Janik v. SMG Media, Inc.*, 2018 WL 345111, at *12 (S.D.N.Y. Jan. 10, 2018) (quoting S. Rep. No. 105–190 at 35 (1998)). *FurnitureDealer.Net* also noted this court's decision in *Pierson v. Infinity Music & Entm't, Inc.*, "holding the terms of use linked at the bottom of the webpage was conveyed in connection with the works." *FurnitureDealer.Net*, 2022 WL 891473, at *19, *citing Pierson*, 300 F.Supp.3d 390, 395-96 (D. Conn. 2018). As in *Janik*, *Pierson* held that "The term 'conveyed' in section 1202(c) 'is used in its broadest sense" and "merely requires that the information be accessible in conjunction with, or appear with, the work being accessed.'" *Pierson*, 300 F.Supp.3d at 394.

**Course Hero's Response:**

1. Course Hero's proposed language is consistent with the statutory text and case law in the Second Circuit, to which Post cites no contrary authority. Given that the jury will be asked to make a number of key determinations concerning allegations of CMI removal, alteration, and falsity—as well as whether Course Hero's actions manifested intent to falsify, remove, or alter CMI—it is only appropriate to provide the jury with context concerning what CMI is and what it is for.

2. Including the purpose of CMI would not mislead the jury to think that a copyright registration is necessary to bring a cause of action for a DMCA violation. As explained *infra* Instruction No. 8, copyright does not require a copyright registration.

3. Course Hero's proposed language defining "conveyed in connection with" is not inconsistent with the case law cited by Post. Post seeks a "broad" reading of the term "conveyed in connection with," but the definition is not unlimited. *Pierson* frames the standard as requiring that the CMI must be "accessible in conjunction with, or appear with, the work being accessed" to be considered "conveyed in connection with." *Pierson v. Infinity Music & Ent., Inc.*, 300 F. Supp. 3d 390, 396 (D. Conn. 2018) (quoting *Janik v. SMG Media, Inc.*, No. 16CIV7308JGKAJP, 2018 WL 345111, at *12 (S.D.N.Y. Jan. 10, 2018)). *Pierson* then found that in the case before the Court, the website's copyright notice and terms of service were "easily accessible in conjunction with Plaintiff's photographs" because they appeared at the bottom of a webpage containing the photographs and "clearly state[d] that they are intended to cover all content on the website." *Id.* at 396. That holding is equally consistent with the formulation that CMI must "appear in the body or area around the work" to be "conveyed in connection with" that work. *See FurnitureDealer.Net, Inc. v. Amazon.com, Inc*, No. CV 18-232 (JRT/HB), 2022 WL 891473, at *19 (D. Minn. Mar. 25, 2022) ("To constitute 'conveyed in connection with' information must appear in the body or area around the work." (citation omitted)); *Drauglis v. Kappa Map Grp., LLC*, 128 F. Supp. 3d 46, 61 (D.D.C. 2015) ("The information was not in the body of, or the area around, the Photograph, and so it was not 'conveyed in connection with' the Photograph in a way that makes that information CMI."). And Course Hero's proposed recitation of the standard from *FurnitureDealer.net* is more concrete and easier for the jury to apply than either the bare phrase from the statute or the "accessible in conjunction with" formulation from *Pierson*, both of whose boundaries are at best unclear.

**INSTRUCTION NO. 2: PROVIDING AND DISTRIBUTING FALSE
COPYRIGHT MANAGEMENT INFORMATION (§ 1202(a))
[COMPETING; PLAINTIFF'S PROPOSED INSTRUCTION]**

The first way in which Post alleges that Course Hero violated the DMCA is by providing or distributing false CMI in connection with works under Section 1202(a). More specifically, Post alleges that Course Hero knowingly provided and/or distributed false CMI each time it placed Course Hero's own CMI, including its own copyright notice, logos, banners, prompts, footers, and/or watermarks on, or conveyed them in connection with, a Post document. Post alleges that a violation for knowingly distributing false CMI occurred each time Course Hero knowingly distributed false CMI on, or conveyed false CMI in connection with, a Post document that was previewed, unlocked, and/or downloaded on or from the Course Hero platform, and for which Course Hero had the intent to induce, enable, facilitate or conceal copyright infringement. Course Hero denies these allegations.

In order to prevail on this claim, Post must prove all three of the following elements by a preponderance of the evidence:

1.  Course Hero provided or distributed CMI that was false;

2.  Course Hero knew that the CMI was false at the time it provided or distributed the CMI;

3.  Course Hero provided or distributed the false CMI with the intent to induce, enable, facilitate or conceal copyright infringement.

In other words, Course Hero must both have actual knowledge that the CMI at issue is false and have acted with the intent to induce, enable, facilitate, or conceal infringement.

*Source*: 17 U.S.C. § 1202(a); 17 U.S.C. § 1202(c); 17 U.S.C. § 1203(a); Order On Summary Judgment (ECF No. 225) at 13-14; Ruling Denying Defendant's Partial Motion to Dismiss (ECF No. 86), at p. 6-9; *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *3 (2d Cir. Feb. 10, 2026).

**Course Hero's Objections:**

1.  Course Hero objects to the omission of "*copyrighted* works" from the first sentence of Post's proposed instruction as inconsistent with the language of the statute and related case law. The case law is clear that Section 1202 protects the integrity of CMI conveyed in connection with copies of *copyrighted* works. *See* 17 U.S.C. § 1202(c) ("As used in this section, the term 'copyright management information' means any of the following information *conveyed in connection with copies or phonorecords of a work or performances or displays of a work . . .* ." (emphasis added)); *Fischer v. Forrest*, 968 F.3d 216, 222 (2d Cir. 2020) ("In broad strokes, § 1202(c) protects the '[i]ntegrity of copyright management information' and prohibits the removal of CMI from *copyrighted works*." (emphasis added) (citing 17 U.S.C. § 1202(a)-(c))); *Smith v. L. Off. of Richard St. Paul, Esq., PLLC*, No. 22 CV 5648 (VB), 2023 WL 3570606, at *6 (S.D.N.Y. May 18, 2023) ("The DMCA protects the integrity of CMI 'conveyed in connection with' *a copyrighted work*." (emphasis added) (quoting 17 U.S.C. § 1202(c))).

2.  Course Hero objects to Post's inclusion of allegations in the instructions read to the jury, which risk confusing the jury as to what constitutes a violation of Section 1202(a). *See Panolam Indus. Int'l, Inc. v. F&F Composite Grp., Inc.*, No. 3:07-CV-01721(AWT), 2015 WL

13637139, at *2 (D. Conn. Jan. 16, 2015) (refusing to give instructions that "were not only unnecessary but contained improper advocacy. In the court's view, the jury instructions taken as a whole complied with the requirement that they adequately inform the jury of the law and that they not mislead the jury as to the proper legal standard."). In particular, Course Hero objects to the statement "Post alleges that Course Hero knowingly provided and/or distributed false CMI each time it placed Course Hero's own CMI, including its own copyright notice, logos, banners, prompts, footers, and/or watermarks on, or conveyed them in connection with, a Post document" as inconsistent with the law concerning what constitutes a violation of Section 1202, an issue discussed in greater detail under Instruction No. 4 *infra. See Sheldon v. Plot Commerce*, No. 15-CV-5885-CBA-CLP, 2016 WL 5107072, at *12 (E.D.N.Y. Aug. 26, 2016), report and recommendation adopted, No. 15-CV-5885-CBA-CLP, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016) (holding that a § 1202 violation requires volitional conduct); *Stockwire Rsch. Grp., Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1266-67 (S.D. Fla. 2008) (holding that the number of violations of § 1202 is determined by the number of the defendant's violative acts, not the number of users to whom a work-in-suit is distributed); *McClatchey v. Associated Press*, No. 305-CV-145, 2007 WL 1630261, at *6 (W.D. Pa. June 4, 2007) (similar); *Shihab v. Source Digital, Inc.*, No. 23CV7266 (DLC), 2024 WL 3461351, at *8-9 (S.D.N.Y. July 18, 2024) ("The defendant's Instagram account handle, @thesource, and its hashtag, #sourceclassics, are not conveyed 'in connection with' the work. . . . The Source handle and hashtag are associated with the defendant's Instagram account and identify that account and its features. The defendant's Instagram handle appears on every post made on its Instagram account, identifying the defendant as the author of the posts. It does not imply that the defendant is also the author of all or any of the posted material, including the Posted Photo. The same is true of the defendant's hashtag. The hashtag identified a topic of relevance for the Posted Photo, but does not imply that the defendant is the author."). Should the Court include Post's allegations in the instructions to the jury, Course Hero proposes that the following should be added: "Course Hero denies these allegations. Course Hero says that no violation occurred because Post cannot make the required showing that Course Hero knew that the CMI was false at the time it provided or distributed the CMI or that Course Hero provided the CMI with the intent to induce, enable, facilitate, or conceal copyright infringement. Course Hero further says that it has not violated Section 1202(a) of the DMCA because the alleged CMI (1) is not conveyed in connection with a Post copyrighted work and (2) does not constitute false CMI. Finally, Course Hero says that Post was not injured by any of Course Hero's acts."

3. Course Hero objects to the description of what is required to establish the elements of a Section 1202(a) claim. The first element should state: "Course Hero provided or distributed CMI that was false in connection with a particular copyrighted work"; the second element should state: "[a]t the time Course Hero provided or distributed the CMI in connection with that particular copyrighted work, Course Hero had actual knowledge that the information was false and knew that the information constituted CMI"; and the third element should state: "[a]t the time Course Hero provided or distributed the false CMI in connection with that particular copyrighted work, Course Hero had the intent to induce, enable, facilitate, or conceal copyright infringement." *See Shihab v. Source Digital, Inc.*, No. 23CV7266 (DLC), 2024 WL 3461351, at *8 (S.D.N.Y. July 18, 2024) ("To establish a violation of § 1202(a), a plaintiff must prove that (1) the defendant provided, distributed, or imported for distribution CMI *in connection with a copyrighted work*; (ii) the CMI was false; and (iii) the defendant knew the CMI was false; and (iv) acted with the intent to induce, enable, facilitate, or conceal an infringement. The last two elements are the so-called double scienter requirement." (emphasis added));

*Harrington v. Pinterest, Inc.*, No. 5:20-CV-05290-EJD, 2022 WL 4348460, at *4 (N.D. Cal. Sept. 19, 2022) (dismissing complaint because it did "not allege sufficient facts from which to infer Pinterest knew as to any *particular Work* that Harrington's metadata constituted CMI. Without such knowledge, there are insufficient facts from which to reasonably infer Pinterest intentionally removed CMI from his Works or that Pinterest distributed his Works with knowledge that CMI had been removed or altered." (emphasis added)); *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *3 (2d Cir. Feb. 10, 2026) ("to be liable, a party must both have *actual knowledge* that the CMI at issue is false and have acted with the *intent* to induce, enable, facilitate, or conceal infringement"); *id.* at *4 ("McGucken points to no evidence suggesting that Shutterstock affixed its watermark to his images—or, indeed, to any images—with **knowledge that it constituted false CMI** and for the purpose of concealing copyright infringement." (emphasis added)). The Second Circuit's language in *McGucken* is notable. It is saying that the knowledge must be of something that was not only false, but also, specifically, "*knowledge that it constituted false CMI*." *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *4 (2d Cir. Feb. 10, 2026). Course Hero further objects to the language "[i]n other words, Course Hero must both have actual knowledge that the CMI at issue is false and have acted with the intent to induce, enable, facilitate, or conceal infringement" as an incomplete and misleading summation of the elements required under Section 1202(a). Post itself acknowledges that violations under Section 1202(a) require an additional third element: that the defendant "provided or distributed CMI that was false." Section 1202(a) liability also requires actual knowledge that the information was CMI. *See McGucken v. Shutterstock, Inc.*. No. 23-7652, 2026 WL 364412, at *3 (2d Cir. Feb. 10, 2026). In *McGucken*, the court held that because there was "no evidence suggesting that Shutterstock affixed its watermark to his images—or, indeed, to any images— ***with knowledge that it constituted false CMI***" there was no violation of Section 1202(a). *Id.* at 4 (emphasis added). The Second Circuit's standard—"knowledge that it constituted false CMI"—is not satisfied simply by knowledge that the statement was false (but not CMI), or knowledge that the statement was CMI (but not false). One would not say that a witness knew a perpetrator was driving a blue Toyota if the witness only knew that the perpetrator was driving a blue car, or only knew that the perpetrator was driving a Toyota.

4. Course Hero objects to the instruction because it omits the fourth element of a Section 1202(a) claim. The instruction should include the following fourth element: "Post was injured by Course Hero's acts." *See* 17 U.S.C. § 1203(a) ("Any person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation."). Courts routinely include injury as an element of proof in their instructions to the jury. *See, e.g.*, *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16 C 3401, 2023 WL 6198827, at *1 (N.D. Ill. Sept. 22, 2023), *aff'd*, 135 F.4th 572 (7th Cir. 2025) (affirming jury was properly instructed that one of the elements of the plaintiff's Lanham Act claim was that the plaintiff "has been or is likely to be injured as a result of the false statement"); *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 899 F.2d 951, 956 n.2 (10th Cir. 1990) ("The jury found that [the plaintiff] had suffered no injury as a result of the antitrust violations and concluded that [the plaintiff] had failed to establish all the elements of tortious interference."); *Ingevity Corp. v. BASF Corp.*, No. CV 18-1391-RGA, 2024 WL 579667, at *7 (D. Del. Feb. 13, 2024) ("To establish an antitrust injury, . . . [the plaintiff] needed to show that [the defendant]'s conduct was a material or substantial cause of its injury. The jury instructions . . . are consistent with this requirement. ('[The plaintiff] is entitled to recover

damages for an injury to its business or property if it can establish ... that the alleged illegal conduct was a material cause of [the plaintiff]'s injury.')." (citations omitted)).

5. Course Hero objects to this instruction because it does not clarify that Course Hero does not violate the DMCA by adding its own name or CMI on a work distinct from the work owned by the copyright holder, even if the work incorporates the copyright holder's work. *See Michael Grecco Prods., Inc. v. Time USA, LLC*, No. 20 CIV. 4875 (NRB), 2021 WL 3192543, at *5 (S.D.N.Y. July 27, 2021) ("[A] party that puts its own CMI on work distinct from work owned by a copyright holder is not liable under Section 1202(a), even if the party's work incorporates the copyright holder's work."); *Park v. Skidmore, Owings & Merrill LLP*, No. 17-CV-4473 (RJS), 2019 WL 9228987, at *11 (S.D.N.Y. Sept. 30, 2019) ("Although incorporating the plaintiff's materials might have constituted copyright infringement, the court concluded that the defendant did not violate the DMCA by printing its name on the distinct products it had generated."); *Crowley v. Jones*, 608 F. Supp. 3d 78, 90 (S.D.N.Y. 2022) ("However, where an allegedly infringing work is derivative to the original, a defendant does not violate the DMCA by printing his own name on the derivative work, even if the derivative work is an act of infringement."). It is Post's burden to demonstrate a violation of Section 1202(a). What constitutes a "violation" under the statute is a proper instruction to the jury in this context. The instruction is also highly relevant to the facts of this case where, for instance, Post has alleged that Course Hero's own website's copyright notice and bannering constitute false CMI in connection with preview webpages on Course Hero in violation of Section 1202(a). Course Hero intends to argue that such webpages constitute distinct works which do not violate the DMCA. *See* Course Hero's Proposed Instruction No. 2.

6. Course Hero objects to the omission of language from this instruction that 'a defendant does not violate section 1202(a) by providing false CMI not for any reasons related to infringement, but instead provided the false CMI for other reasons,' as inconsistent with the Second Circuit's opinion in *McGucken v. Shutterstock, Inc.*. No. 23-7652, 2026 WL 364412, at *3 n.2 (2d Cir. Feb. 10, 2026) (in the absence of affirmative evidence on scienter, a 1202 defendant can negate the scienter requirement "by providing some explanation").

**Post's Response:**

1. Substituting "work" for "copyrighted work" is inconsistent with section 1202(c) and misleading to the extent it implies that a registered copyright is required for DMCA violations. 1202(c) defines "copyright management information" as "any of the following information conveyed in connection with copies… *of a work* … or display *of a work*."

2. Post submits that summarizing Post's allegations is permissible and helpful for the jury's understanding of the case when applying Section 1202(a). "Within this Circuit, the law is settled that a litigant is entitled to have the jury instructed as to his claims and theories of law if supported by the evidence and brought to the attention of the court," provided it does not mislead the jury as to the correct legal standard or does not adequately inform the jury on the law. *Boyce v. Soundview Technology Group, Inc.*, 464 F.3d 376, 389-90 (2nd Cir. 2006).

3. The first and third elements should not include additional language specifying that the false CMI is "*in connection with a particular copyrighted work.*" This language is not found in the statute and would incorrectly impose an additional requirement for the jury to find. Further, there is no support for requiring a finding that Course Hero "knew that the information constituted CMI." In *McGucken*, the Second Circuit stated that "to be liable, a party must both have actual knowledge that the CMI at issue is false." The Second Circuit did not separately require knowledge that information constitutes CMI.

11

4.  Section 1202 does not require the jury to find that "Post was injured by Course Hero's acts." Course Hero improperly seeks to import language from Section 1203 setting forth the standing requirement for bringing an action under the DMCA. Whether or not Post was injured for purposes of standing is a legal question determined by the court, not a jury. *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 78 (2d Cir. 2002) (citing *United States v. Cambio Exacto, S.A.,* 166 F.3d 522, 526 (2d Cir.1999)) ("Standing is, moreover, a legal question to be determined by the court, not a jury."). The Court already determined that Post does have standing to bring its DMCA claims. *See* ECF No. 225 at 14 ("[a]s Plaintiff has presented evidence of injury sufficient to show standing, the Court denies summary judgment on this ground."). Course Hero's objection is also not supported by authority related to Section 1202 or the DMCA. *Republic Techs.* concerns the requirements for bringing a false advertising claim under the Lanham Act. *Reazin* and *Ingevity Corp.* concern antitrust claims. Course Hero has not provided any examples of courts including an injury requirement in jury instructions for Section 1202. However, in *Presse v. Morel*, No. 10 CIV. 2730, 2013 WL 10163046, *10 (SDNY Nov. 21, 2013), the jury was instructed that the plaintiff must prove the same three elements recited in Post's proposed instruction for a 1202(a) violation, with no mention of the "fourth element" alleged by Course Hero to be required. Similarly, in *Huffman v. Activision*, 2:19-cv-00050 (EDTX June 23, 2021), the jury instructions for 1202(a) did not include an element requiring the jury to find an injury.

5.  An instruction concerning derivate works is not applicable to this case. Course Hero does not create or generate a new derivative work that "is unquestionably a distinct work." See *Crowley v. Jones*, 608 F. Supp. 3d 78, 90 (S.D.N.Y. 2022). "In order for a work to qualify as a derivative work it must be independently copyrightable." *Woods v. Bourne Co.*, 60 F.3d 978, 991 (2nd Cir. 1995). "[T]here must be at least some substantial variation from the underlying work, not merely a trivial variation." *Id.*, citing *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976) (*en banc*). Further, as discussed in Post's objections to Course Hero's Proposed Instruction No. 7 below, Course Hero has repeatedly admitted in discovery that it does not create derivative works.

6.  Course Hero's proposed instruction, that "a defendant does not violate section 1202(a) by providing false CMI not for any reasons related to infringement, but instead provided the false CMI for other reasons" is not supported by *McGucken v. Shutterstock, Inc*. Course Hero relies on a footnote in *McGucken* describing how a defendant in a 1202 case may, on summary judgment, demonstrate there is no genuine issue of material fact after a plaintiff has discharged their burden. *See Friedman v. Live Nation Merch., Inc.*, 8333 F.3d 1180, 1118 (9th Cir. 2016). The citation is not relevant to the facts of this case, does not support the general rule that Course Hero is claiming and does not support the proposed instruction.

**INSTRUCTION NO. 2: PROVIDING AND DISTRIBUTING FALSE
COPYRIGHT MANAGEMENT INFORMATION (§ 1202(a))
[COMPETING; DEFENDANT'S PROPOSED INSTRUCTION]**

The first way in which Post alleges that Course Hero violated the DMCA is by providing or distributing
false CMI in connection with copies or displays of copyrighted works under Section 1202(a). In order
to prevail on this claim, Post must prove all four of the following elements by a preponderance of the
evidence:

1. Course Hero provided or distributed CMI that was false in connection with a particular
   copyrighted work;[4]

2. At the time Course Hero provided or distributed the CMI in connection with that particular
   copyrighted work, Course Hero had actual knowledge that the information was false and knew
   that the information constituted CMI;[5]

3. At the time Course Hero provided or distributed the false CMI in connection with that particular
   copyrighted work, Course Hero had the intent to induce, enable, facilitate, or conceal copyright
   infringement;[6] and

---

[4] *Shihab v. Source Digital, Inc.*, No. 23CV7266 (DLC), 2024 WL 3461351, at *8 (S.D.N.Y. July 18,
2024) ("To establish a violation of § 1202(a), a plaintiff must prove that (1) the defendant provided,
distributed, or imported for distribution CMI *in connection with a copyrighted work*; (ii) the CMI was
false; and (iii) the defendant knew the CMI was false; and (iv) acted with the intent to induce, enable,
facilitate, or conceal an infringement. The last two elements are the so-called double scienter
requirement." (emphasis added)); *Harrington v. Pinterest, Inc.*, No. 5:20-CV-05290-EJD, 2022 WL
4348460, at *4 (N.D. Cal. Sept. 19, 2022) (dismissing complaint because it did "not allege sufficient
facts from which to infer Pinterest knew as to any *particular Work* that Harrington's metadata
constituted CMI. Without such knowledge, there are insufficient facts from which to reasonably infer
Pinterest intentionally removed CMI from his Works or that Pinterest distributed his Works with
knowledge that CMI had been removed or altered" (emphasis added)).

[5] *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *3 (2d Cir. Feb. 10, 2026) ("to
be liable, a party must both have *actual knowledge* that the CMI at issue is false and have acted with
the *intent* to induce, enable, facilitate, or conceal infringement"); *id*. at *4 ("McGucken points to no
evidence suggesting that Shutterstock affixed its watermark to his images—or, indeed, to any
images—with **knowledge that it constituted false CMI** and for the purpose of concealing copyright
infringement." (emphasis added)); *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) ("A
plaintiff must thus prove the following: (1) the existence of CMI in connection with a copyrighted
work; and (2) that a defendant "distribute[d] . . . works [or] copies of works"; (3) *while* "knowing that
[CMI] has been removed or altered without authority of the copyright owner or the law"; and (4) *while*
"knowing, or . . . having reasonable grounds to know" that such distribution "will induce, enable,
facilitate, or conceal an infringement.") (emphasis added).

[6] *Id.*; 17 U.S.C. § 1202(a); 17 U.S.C. § 1202(c) ("As used in this section, the term 'copyright
management information' means any of the following information conveyed in connection with copies
or phonorecords of a work or performances or displays of a work . . . .").

4.   Post was injured by Course Hero's acts.[7]

As to the third element, the question whether Course Hero had the intent to induce, enable, facilitate, or conceal copyright infringement asks whether Course Hero had the purpose of inducing, enabling, facilitating, or concealing copyright infringement.[8] A defendant does not violate section 1202(a) by providing false CMI not for any reasons related to infringement, but instead providing the false CMI for other reasons.[9]

If Course Hero adds its own name or CMI on a work distinct from the work owned by the copyright holder, it is not liable under Section 1202(a), even if the work incorporates the copyright holder's work.[10] Course Hero does not violate the DMCA by printing its name on distinct materials it has generated.[11]

**Post's Objections:**

1.   Post objects to removing its allegations from this instruction. Post submits that summarizing Post's allegations is permissible and helpful for the jury's understanding of the case when applying Section 1202(a). "Within this Circuit, the law is settled that a litigant is entitled to have the jury instructed as to his claims and theories of law if supported by the evidence and brought to the attention of the court," provided it does not mislead the jury as to the correct legal standard or does not adequately inform the jury on the law. *Boyce v. Soundview Technology Group, Inc.*, 464 F.3d 376, 389-90 (2nd Cir. 2006).

2.   Post objects to Course Hero's references to "copyrighted works," which is not recited in the statute, and is misleading to the extent it implies that a copyright registration is required.

---

[7] 17 U.S.C. § 1203(a) ("Any person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation.").

[8] *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *4 (2d Cir. Feb. 10, 2026) ("McGucken points to no evidence suggesting that Shutterstock affixed its watermark to his images—or, indeed, to any images—with knowledge that it constituted false CMI and **for the purpose** of concealing copyright infringement." (emphasis added)).

[9] *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *3 n.2 (2d Cir. Feb. 10, 2026) (in the absence of affirmative evidence on scienter, a 1202 defendant can negate the scienter requirement "by providing some explanation" of the reasons for the addition of false CMI).

[10] *Michael Grecco Prods., Inc. v. Time USA, LLC*, No. 20 CIV. 4875 (NRB), 2021 WL 3192543, at *5 (S.D.N.Y. July 27, 2021) ("[A] party that puts its own CMI on work distinct from work owned by a copyright holder is not liable under Section 1202(a), even if the party's work incorporates the copyright holder's work."); *Crowley v. Jones*, 608 F. Supp. 3d 78, 90 (S.D.N.Y. 2022) ("However, where an allegedly infringing work is derivative to the original, a defendant does not violate the DMCA by printing his own name on the derivative work, even if the derivative work is an act of infringement."); *Park v. Skidmore, Owings & Merrill LLP*, No. 17-CV-4473 (RJS), 2019 WL 9228987, at *11 (S.D.N.Y. Sept. 30, 2019) ("SOM may have – at least as alleged by Plaintiff – infringed Plaintiff's copyright in Cityfront '99 during the creation of 1 WTC, but 1 WTC is unquestionably a distinct work from Cityfront '99; thus, SOM cannot violate the DMCA by associating its name with the building.").

[11] *Park v. Skidmore, Owings & Merrill LLP*, No. 17-CV-4473 (RJS), 2019 WL 9228987, at *11 (S.D.N.Y. Sept. 30, 2019) ("Although incorporating the plaintiff's materials might have constituted copyright infringement, the court concluded that the defendant did not violate the DMCA by printing its name on the distinct products it had generated.").

3. The language proposed by Course Hero that the allegedly false CMI be "in connection with a particular copyrighted work" is not recited in section 1202(a) and would incorrectly impose an additional requirement for the jury to find.

4. Post objects to the inclusion of the fourth element. Section 1202 does not require the jury to find that "Post was injured by Course Hero's acts." Course Hero improperly seeks to import language from Section 1203 setting forth the standing requirement for bringing an action under the DMCA. Whether or not Post was injured for purposes of standing is a legal question determined by the court, not a jury. *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 78 (2d Cir. 2002) (citing *United States v. Cambio Exacto, S.A.,* 166 F.3d 522, 526 (2d Cir.1999)) ("Standing is, moreover, a legal question to be determined by the court, not a jury."). The Court already determined that Post does have standing to bring its DMCA claims. *See* ECF No. 225 at 14 ("[a]s Plaintiff has presented evidence of injury sufficient to show standing, the Court denies summary judgment on this ground."). Course Hero's proposed instruction is also not supported by authority related to Section 1202 or the DMCA. *Republic Techs.* concerns the requirements for bringing a false advertising claim under the Lanham Act. *Reazin* and *Ingevity* Corp. concern antitrust claims. Course Hero has not provided any examples of courts including an injury requirement in jury instructions for Section 1202 violations. However, in *Presse v. Morel*, No. 10 CIV. 2730, 2013 WL 10163046, *10 (SDNY Nov. 21, 2013), the jury was instructed that the plaintiff must prove the same three elements recited in Post's proposed instruction for a 1202(a) violation, with no mention of the "fourth element" alleged by Course Hero to be required. Similarly, in *Huffman v. Activision*, 2:19-cv-00050 (EDTX June 23, 2021), the jury instructions for 1202(a) did not include an element requiring the jury to find an injury.

5. Post objects to the inclusion of a defense within the instruction on section 1202(a). Post also objects to the instruction as not being relevant to the facts of this case because Course Hero does not create or generate a new derivative work that "is unquestionably a distinct work." *Crowley v. Jones*, 608 F. Supp. 3d 78, 90 (S.D.N.Y. 2022) "In order for a work to qualify as a derivative work it must be independently copyrightable." *Woods v. Bourne Co.,* 60 F.3d 978, 991 (2nd Cir. 1995). "[T]here must be at least some substantial variation from the underlying work, not merely a trivial variation." *Id., citing L. Batlin & Son, Inc. v. Snyder,* 536 F.2d 486, 490 (2d Cir. 1976) (*en banc*). Further, as discussed in Post's objections to Course Hero's Proposed Instruction No. 7 below, Course Hero has repeatedly admitted in discovery that it does not create derivative works.

6. Post objects to the proposed instruction requiring a finding that Course Hero "knew that the information constituted CMI." In *McGucken*, the Second Circuit stated that "to be liable, a party must both have actual knowledge that the CMI at issue is false." The Second Circuit did not separately require knowledge that the information constitutes CMI.

7. Post objects to Course Hero's proposed instruction that "the third element… asks whether Course Hero had the *purpose* of inducing, enabling, facilitating, or concealing copyright infringement" as being inconsistent with section 1202 and potentially confusing to the jury. Post also objects to Course Hero's proposed instruction, that "a defendant does not violate section 1202(a) by providing false CMI not for any reasons related to infringement, but instead provided the false CMI for other reasons" is not supported by *McGucken v. Shutterstock, Inc*. Course Hero relies on a footnote in *McGucken* describing how a defendant in a 1202 case may, on summary judgment, demonstrate there is no genuine issue of material fact after a plaintiff has discharged their burden. *See Friedman v. Live Nation Merch., Inc.*, 8333 F.3d 1180, 1118

(9th Cir. 2016). The citation is not relevant to the facts of this case, does not support the general rule that Course Hero is claiming and does not support the proposed instruction.

**Course Hero's Response:**

1. Inclusion of allegations in the instructions read to the jury risks confusing the jury as to what constitutes a violation of Section 1202(a). *See Panolam Indus. Int'l, Inc. v. F&F Composite Grp., Inc.*, No. 3:07-CV-01721(AWT), 2015 WL 13637139, at *2 (D. Conn. Jan. 16, 2015) (refusing to give instructions that "were not only unnecessary but contained improper advocacy. In the court's view, the jury instructions taken as a whole complied with the requirement that they adequately inform the jury of the law and that they not mislead the jury as to the proper legal standard."). In particular, the statement "Post alleges that Course Hero knowingly provided and/or distributed false CMI each time it placed Course Hero's own CMI, including its own copyright notice, logos, banners, prompts, footers, and/or watermarks on, or conveyed them in connection with, a Post document" is inconsistent with the law concerning what constitutes a violation of Section 1202, an issue discussed in greater detail under Instruction No. 4 *infra. See Sheldon v. Plot Commerce*, No. 15-CV-5885-CBA-CLP, 2016 WL 5107072, at *12 (E.D.N.Y. Aug. 26, 2016), report and recommendation adopted, No. 15-CV-5885-CBA-CLP, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016) (holding that a § 1202 violation requires volitional conduct); *Stockwire Rsch. Grp., Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1266-67 (S.D. Fla. 2008) (holding that the number of violations of § 1202 is determined by the number of the defendant's violative acts, not the number of users to whom a work-in-suit is distributed); *McClatchey v. Associated Press*, No. 305-CV-145, 2007 WL 1630261, at *6 (W.D. Pa. June 4, 2007) (similar); *Shihab v. Source Digital, Inc.*, No. 23CV7266 (DLC), 2024 WL 3461351, at *8-9 (S.D.N.Y. July 18, 2024) ("The defendant's Instagram account handle, @thesource, and its hashtag, #sourceclassics, are not conveyed 'in connection with' the work. . . . The Source handle and hashtag are associated with the defendant's Instagram account and identify that account and its features. The defendant's Instagram handle appears on every post made on its Instagram account, identifying the defendant as the author of the posts. It does not imply that the defendant is also the author of all or any of the posted material, including the Posted Photo. The same is true of the defendant's hashtag. The hashtag identified a topic of relevance for the Posted Photo, but does not imply that the defendant is the author."). Should the Court include Post's allegations in the instructions to the jury, Course Hero proposes that the following should be added: "Course Hero denies these allegations. Course Hero says that no violation occurred because Post cannot make the required showing that Course Hero knew that the CMI was false at the time it provided or distributed the CMI or that Course Hero provided the CMI with the intent to induce, enable, facilitate, or conceal copyright infringement. Course Hero further says that it has not violated Section 1202(a) of the DMCA because the alleged CMI (1) is not conveyed in connection with a Post copyrighted work and (2) does not constitute false CMI. Finally, Course Hero says that Post was not injured by any of Course Hero's acts."

2. The requirement that the works in suit be "copyrighted works" is supported by case law in the Second Circuit, and, as explained *infra* Instruction No. 8, the requirement that a work must be copyrighted does not require a copyright registration.

3. The language that the false CMI must be provided or distributed "in connection with" a work is recited in Section 1202(c). 17 U.S.C. § 1202(c) ("As used in this section, the term 'copyright management information' means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work . . . ."). Case law

16

supports that this is an element of a Section 1202(a) violation, and Post cites no law to the contrary. *See Shihab v. Source Digital, Inc.*, No. 23CV7266 (DLC), 2024 WL 3461351, at *8 (S.D.N.Y. July 18, 2024) ("To establish a violation of § 1202(a), a plaintiff must prove that (1) the defendant provided, distributed, or imported for distribution CMI *in connection with a copyrighted work*; (ii) the CMI was false; and (iii) the defendant knew the CMI was false; and (iv) acted with the intent to induce, enable, facilitate, or conceal an infringement. The last two elements are the so-called double scienter requirement." (emphasis added)); *Harrington v. Pinterest, Inc.*, No. 5:20-CV-05290-EJD, 2022 WL 4348460, at *4 (N.D. Cal. Sept. 19, 2022) (dismissing complaint because it did "not allege sufficient facts from which to infer Pinterest knew as to any *particular Work* that Harrington's metadata constituted CMI. Without such knowledge, there are insufficient facts from which to reasonably infer Pinterest intentionally removed CMI from his Works or that Pinterest distributed his Works with knowledge that CMI had been removed or altered" (emphasis added)). It is particularly important to instruct the jury on this requirement in this case, where different numbers of works at issue alleged to be implicated in violations of different subsections of Section 1202 (not to mention alleged copyright and trademark infringement). The jury should not get the mistaken impression that a Section 1202(a) violation is committed with respect to particular works that do not meet the requirement of having false CMI provided or distributed in connection with them merely because those works are implicated in other allegations.

4.  Post incorrectly conflates pleading requirements with its burden of proof at trial. Injury is an element of any claim under Section 1202(a). As stated in Section 1203(a), "[a]ny person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation." 17 U.S.C. § 1203(a). This requirement is not done away with simply because Plaintiff avoided summary judgment by demonstrating that a genuine dispute as to whether it had standing to sue exists. Courts routinely include injury as an element of proof in their instructions to the jury. *See, e.g., Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16 C 3401, 2023 WL 6198827, at *1 (N.D. Ill. Sept. 22, 2023), *aff'd*, 135 F.4th 572 (7th Cir. 2025) (affirming jury was properly instructed that one of the elements of the plaintiff's Lanham Act claim was that the plaintiff "has been or is likely to be injured as a result of the false statement"); *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 899 F.2d 951, 956 n.2 (10th Cir. 1990) ("The jury found that [the plaintiff] had suffered no injury as a result of the antitrust violations and concluded that [the plaintiff] had failed to establish all the elements of tortious interference."); *Ingevity Corp. v. BASF Corp.*, No. CV 18-1391-RGA, 2024 WL 579667, at *7 (D. Del. Feb. 13, 2024) ("To establish an antitrust injury, . . . [the plaintiff] needed to show that [the defendant]'s conduct was a material or substantial cause of its injury. The jury instructions . . . are consistent with this requirement. ('[The plaintiff] is entitled to recover damages for an injury to its business or property if it can establish ... that the alleged illegal conduct was a material cause of [the plaintiff]'s injury.')." (citations omitted)).

5.  Course Hero disputes that the instruction clarifying that Course Hero does not violate the DMCA by adding its own name or CMI on a work distinct from the work owned by the copyright holder, even if the work incorporates the copyright holder's work constitutes an improper defense to Post's Section 1202(a) claim. *See Michael Grecco Prods., Inc. v. Time USA, LLC*, No. 20 CIV. 4875 (NRB), 2021 WL 3192543, at *5 (S.D.N.Y. July 27, 2021) ("[A] party that puts its own CMI on work distinct from work owned by a copyright holder is not liable under Section 1202(a), even if the party's work incorporates the copyright holder's work."); *Park v. Skidmore, Owings & Merrill LLP*, No. 17-CV-4473 (RJS), 2019 WL

9228987, at \*11 (S.D.N.Y. Sept. 30, 2019) ("Although incorporating the plaintiff's materials might have constituted copyright infringement, the court concluded that the defendant did not violate the DMCA by printing its name on the distinct products it had generated."); *Crowley v. Jones*, 608 F. Supp. 3d 78, 90 (S.D.N.Y. 2022) ("However, where an allegedly infringing work is derivative to the original, a defendant does not violate the DMCA by printing his own name on the derivative work, even if the derivative work is an act of infringement."). It is Post's burden to demonstrate a violation of Section 1202(a). What constitutes a "violation" under the statute is a proper instruction to the jury in this context. The instruction is also highly relevant to the facts of this case where, for instance, Post has alleged that Course Hero's own website's copyright notice and bannering constitute false CMI in connection with preview webpages on Course Hero in violation of Section 1202(a). Course Hero intends to argue that such webpages constitute distinct works which do not violate the DMCA.

6. Section 1202(a) liability requires actual knowledge that the information was CMI.  *See McGucken v. Shutterstock, Inc.*. No. 23-7652, 2026 WL 364412, at \*3 (2d Cir. Feb. 10, 2026). In *McGucken*, the court held that because there was "no evidence suggesting that Shutterstock affixed its watermark to his images—or, indeed, to any images—***with knowledge that it constituted false CMI***" there was no violation of Section 1202(a).  *Id.* at \*4 (emphasis added). The Second Circuit has chosen specific language here. It is saying that the knowledge must be of something that was not only false, but also, specifically, "***knowledge that it constituted false CMI***." *Id.* The Second Circuit's standard—"knowledge that it constituted false CMI"—is not satisfied simply by knowledge that the statement was false (but not CMI), or knowledge that the statement was CMI (but not false).  One would not say that a witness knew a perpetrator was driving a blue Toyota if the witness only knew that the perpetrator was driving a blue car, or only knew that the perpetrator was driving a Toyota.

7. *McGucken v. Shutterstock, Inc.* does support the requirement that the addition of false CMI must have been "with knowledge that it constituted false CMI and ***for the purpose of concealing copyright infringement***" to constitute a violation under Section 1202(a). No. 23-7652, 2026 WL 364412, at \*4 (2d Cir. Feb. 10, 2026) (emphasis added). The court's language in *McGucken* is also clear that in the absence of affirmative evidence on scienter, a 1202 defendant can negate the scienter requirement "by providing some explanation" of the reasons for the addition of false CMI.  *Id.* at \*3 n.2.  This is directly relevant to the facts of this case where Post has alleged Course Hero has added false CMI with the intent to induce, enable, facilitate, or conceal copyright infringement and Course Hero has provided an alternative explanation—for example, that Course Hero did not understand there to be any connection between the alleged false CMI and any copyright infringement. While Course Hero maintains that the alleged information that forms the bases of Post's claims is not false CMI, Course Hero also intends to present evidence at trial that the alleged addition of false CMI was done either (1) to refer to Course Hero's own valid copyright ownership in its website or (2) to help rightsholders trace study materials downloaded from the Course Hero website back to the website.

**INSTRUCTION NO. 3: MEANING OF "FALSE COPYRIGHT
MANAGEMENT INFORMATION" (§ 1202(a))
[DEFENDANT'S PROPOSED INSTRUCTION]**

To be considered false CMI, the accused CMI must be literally false.[12]

**Post's Objections:**

Post objects to this instruction in its entirety. The cited case law does not support an instruction that CMI must be literally false. In *Hattler v. Ashton*, the court considered whether the CMI would "lead to a reasonable inference by an observer" that the defendant was the author. Similarly, in this Court's order denying Course Hero's Motion to Dismiss, the court agreed that "the overall context" of the CMI should be considered in determining whether it is false. Dkt. 86 at p. 11. This Court considered *Steinmetz v. Shutterstock*, relied on by Course Hero in support of this jury instruction, and noted that the decision "included an evaluation of the website, the terms of use, and the defendant's business model as a whole to determine *what impression the information alleged to be false CMI created*." Dkt. 86 at FN 4 (emphasis added). The Court agreed with *Michael Grecco Prods. Inc. v. Alamy, Inc.*, 372 F.Supp.3d 131 (E.D.N.Y. 2019), in which "while the alleged CMI "*were not literally 'false' statements*, the court considered the *overall context* in which they were made." Dkt. 86 at p. 10 (emphasis added). The Court also relied on *Penske Media Corp. v. Shutterstock, Inc.*, 548 F. Supp. 3d 370, 381 (S.D.N.Y. 2021) in which the court denied "a motion to dismiss a Section 1202(a) claim when the plaintiff's photos appeared on defendant's website with the name 'Shutterstock' watermarked on them and were not accompanied with an explanation that another company owned the copyright." Dkt. 86 at p. 11. The jury should decide whether CMI is false based on the overall impression created, not whether the text is literally false. *See* Dkt. 86 at p. 11.

**Course Hero's Response:**

This proposed instruction is consistent with the statute and the cited case law. 17 U.S.C. § 1202(a) prohibits providing "copyright management information that is false." In analogous contexts involving the dissemination of allegedly incorrect commercial material, the law distinguishes between information that is "false" and information that is "misleading." For example, Section 43(a) of the Lanham Act prohibits the use in commerce of any "false or misleading" description or misrepresentation of fact. 15 U.S.C. § 1125. Courts treat "false or misleading" as setting forth two different prongs of analysis: whether a statement is "literally false" or whether it is instead "misleading," *i.e.*, likely to confuse. *See Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007). Because Congress knew how to proscribe "false or misleading" information and

---

[12] *See Hattler v. Ashton*, No. LA CV16-04099 JAK(KSx), 2017 WL 11634742, at *5 (C.D. Cal. Apr. 20, 2017) ("That an image associated with the title of a song being performed by Bassnectar was superimposed on the Works and projected behind him does not lead to the reasonable inference by an observer that Bassnectar was the author of the Works."); *Steinmetz v. Shutterstock, Inc.*, 629 F. Supp. 3d 74, 85 (S.D.N.Y. 2022), appeal withdrawn, No. 22-2699, 2022 WL 19560566 (2d Cir. Dec. 8, 2022) (finding that making a low-resolution, watermarked copy of an image uploaded by a third party to its website to advertise that the non-watermarked, high-resolution copy was available for purchase from defendant was not false CMI, but instead "identifie[d] Defendant as the source of an image downloaded from its portfolio or platform.").

did so in the Lanham Act, Section 1202's prohibition on "false" CMI should be viewed as limited to actual falsity.

**INSTRUCTION NO. 4: REMOVING OR ALTERING COPYRIGHT**
**MANAGEMENT INFORMATION (§ 1202(b))**
**[COMPETING; PLAINTIFF'S PROPOSED INSTRUCTION]**

Post has alleged that Course Hero also violated the DMCA by removing or altering CMI associated with Post's documents. Specifically, Post alleges that Course Hero intentionally removed or altered CMI each time it converted an uploaded document containing Post CMI – either on the document or in the document's metadata – into preview assets on the Course Hero platform. Post also alleges that Course Hero unlawfully distributed a Post document, with Post CMI knowingly removed or altered, each time a Post document was previewed, unlocked and/or downloaded on or from the Course Hero website with the original Post CMI removed or altered. Post further alleges that Course Hero knew, or had reasonable grounds to know, that the removal or alterations (or distributions thereof) of Post CMI would induce, enable, facilitate, or conceal copyright infringement.

Under the DMCA, this is a distinct violation from providing or distributing false CMI. In order to prevail on a claim for removing or altering CMI, Post must prove by a preponderance of the evidence that Course Hero did one or more of the following two things:

1.  Intentionally removed or altered Post's CMI without Post's permission; or

2.  Distributed or imported for distribution Post's documents knowing at the time of distribution or importation that Post's CMI had been removed or altered without Post's permission.

Post must also prove that Course Hero knew or had reasonable grounds to know that doing so would induce, enable, facilitate or conceal copyright infringement. However, actual knowledge is not required. Course Hero can be liable despite having only had constructive knowledge that its distribution of improperly attributed material will induce, enable, facilitate, or conceal an infringement.

A violation for removing or altering CMI occurred each time Course Hero intentionally removed or altered CMI from an uploaded document that contained Post CMI – either on the document or in the document's metadata – and where Course Hero knew, or had reasonable grounds to know, that such removal or alterations would induce, enable, facilitate, or conceal copyright infringement.

A violation for distributing a Post document with removed or altered CMI occurred each time Course Hero distributed a Post document (in the form of a preview, unlock or download) knowing that Post CMI was removed or altered, and where Course Hero knew, or had reasonable grounds to know, that such a distribution would induce, enable, facilitate, or conceal copyright infringement.

*Sources*: 17 U.S.C. § 1202(b); Order On Summary Judgment (ECF No. 225) at 8, 13, 20; Order on Summary Judgment (ECF No. 225) at 8 (citing *Mango v. BuzzFeed, Inc*., 970 F.3d 167, 172 (2d Cir. 2020) (citing 17 U.S.C. § 1202(b)); Order on Summary Judgment (ECF No. 225) at 13, 20 (citing *Mango v. BuzzFeed, Inc*., 970 F.3d 167, 171 (2d Cir. 2020)); *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *3 (2d Cir. Feb. 10, 2026)..

**Course Hero's Objections:**

1. Course Hero objects to Post's inclusion of allegations in the instructions read to the jury, which risk confusing the jury as to what constitutes a violation of Section 1202(b). *See Panolam Indus. Int'l, Inc. v. F&F Composite Grp., Inc.*, No. 3:07-CV-01721(AWT), 2015 WL 13637139, at \*2 (D. Conn. Jan. 16, 2015) (refusing to give instructions that "were not only unnecessary but contained improper advocacy. In the court's view, the jury instructions taken as a whole complied with the requirement that they adequately inform the jury of the law and that they not mislead the jury as to the proper legal standard."). In particular, Course Hero objects to the statements that "Post alleges that Course Hero intentionally removed or altered CMI each time it converted an uploaded document containing Post CMI – either on the document or in the document's metadata – into preview assets on the Course Hero platform" and "Post also alleges that Course Hero unlawfully distributed a Post document, with Post CMI knowingly removed or altered, each time a Post document was previewed, unlocked and/or downloaded on or from the Course Hero website with the original Post CMI removed or altered" as inconsistent with the law concerning what constitutes a violation of Section 1202, an issue discussed in greater detail under Instruction No. 4 *infra. See Sheldon v. Plot Commerce*, No. 15-CV-5885-CBA-CLP, 2016 WL 5107072, at \*12 (E.D.N.Y. Aug. 26, 2016), report and recommendation adopted, No. 15-CV-5885-CBA-CLP, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016) (holding that a Section 1202 violation requires volitional conduct); *Stockwire Rsch. Grp., Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1266-67 (S.D. Fla. 2008) (holding that the number of violations of Section 1202 is determined by the number of the defendant's violative acts, not the number of users to whom a work-in-suit is distributed); *McClatchey v. Associated Press*, No. 305-CV-145, 2007 WL 1630261, at \*6 (W.D. Pa. June 4, 2007) (similar); *Shihab v. Source Digital, Inc.*, No. 23CV7266 (DLC), 2024 WL 3461351, at \*8-9 (S.D.N.Y. July 18, 2024) ("The defendant's Instagram account handle, @thesource, and its hashtag, #sourceclassics, are not conveyed 'in connection with' the work. . . . The Source handle and hashtag are associated with the defendant's Instagram account and identify that account and its features. The defendant's Instagram handle appears on every post made on its Instagram account, identifying the defendant as the author of the posts. It does not imply that the defendant is also the author of all or any of the posted material, including the Posted Photo. The same is true of the defendant's hashtag. The hashtag identified a topic of relevance for the Posted Photo, but does not imply that the defendant is the author."). Should the Court include Post's allegations in the instructions to the jury, Course Hero proposes the following should be added: "Course Hero denies these allegations. Course Hero says that no violation occurred because Post cannot make the required showing that Course Hero removed or altered any CMI intentionally or that Course Hero knew or had reasonable grounds to know that removing or altering the CMI would induce, enable, facilitate, or conceal copyright infringement. Course Hero further says that Post was not injured by any of Course Hero's acts."

2. Course Hero objects to Post's instruction because it does not include the clarification that public display does not constitute distribution, and therefore does not violate Section 1202(b)(3). *See FurnitureDealer.Net, Inc., v. Amazon.com, Inc.*, No. CV 18-232 (JRT/HB), 2022 WL 891473, at \*23 (D. Minn. Mar. 25, 2022) ("[P]ublic display does not constitute distribution, and thus is not a violation of § 1202(b)(3)."). Post does not offer any legal support to the contrary.

3. Post's instructions are further deficient because they improperly mix Post's allegations into the elements of the claim, risking juror confusion. Post's identification of when violations of Section 1202(b) occur are either needlessly cumulative of the elements stated immediately prior or misleading in that they misstate the law by substituting the elements of Post's claim

with Post's unsupported allegations. *See Panolam Indus. Int'l, Inc. v. F&F Composite Grp., Inc.*, No. 3:07-CV-01721(AWT), 2015 WL 13637139, at *2 (D. Conn. Jan. 16, 2015) (refusing to give instructions that "were not only unnecessary but contained improper advocacy. In the court's view, the jury instructions taken as a whole complied with the requirement that they adequately inform the jury of the law and that they not mislead the jury as to the proper legal standard."). For instance, Post's instruction that previews and unlocks displayed on the Course Hero website constitute "distributions" is contrary to case law holding that public display does not constitute distribution and thus is not a violation of Section 1202(b)(3) under the DMCA. *See FurnitureDealer.Net, Inc., v. Amazon.com, Inc.*, No. CV 18-232 (JRT/HB), 2022 WL 891473, at *23 (D. Minn. Mar. 25, 2022) ("[P]ublic display does not constitute distribution, and thus is not a violation of § 1202(b)(3)."). It is also contrary to the law of what constitutes a "violation" of Section 1202, which requires volitional conduct and is measured by particular violative acts rather than the number of users to whom a work is distributed, as discussed *supra* in objection 2 to this instruction, and in more detail *infra* with respect to Instruction No. 4.

4. Course Hero objects to this instruction because it does not include injury as an element of a claim under Section 1202(b). As stated in Section 1203(a), "[a]ny person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation." 17 U.S.C. § 1203(a). Courts routinely include injury as an element of proof in their instructions to the jury. *See, e.g.*, *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16 C 3401, 2023 WL 6198827, at *1 (N.D. Ill. Sept. 22, 2023), *aff'd*, 135 F.4th 572 (7th Cir. 2025) (affirming jury was properly instructed that one of the elements of the plaintiff's Lanham Act claim was that the plaintiff "has been or is likely to be injured as a result of the false statement"); *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 899 F.2d 951, 956 n.2 (10th Cir. 1990) ("The jury found that [the plaintiff] had suffered no injury as a result of the antitrust violations and concluded that [the plaintiff] had failed to establish all the elements of tortious interference."); *Ingevity Corp. v. BASF Corp.*, No. CV 18-1391-RGA, 2024 WL 579667, at *7 (D. Del. Feb. 13, 2024) ("To establish an antitrust injury, . . . [the plaintiff] needed to show that [the defendant]'s conduct was a material or substantial cause of its injury. The jury instructions . . . are consistent with this requirement. ('[The plaintiff] is entitled to recover damages for an injury to its business or property if it can establish ... that the alleged illegal conduct was a material cause of [the plaintiff]'s injury.')." (citations omitted)).

5. Course Hero objects to the omission of language from this instruction that a defendant does not violate Section 1202(b) by removing CMI not for any reasons related to infringement, but instead removing the CMI for other reasons, as inconsistent with the Second Circuit's opinion in *McGucken v. Shutterstock, Inc.*. No. 23-7652, 2026 WL 364412, at *4 (2d Cir. Feb. 10, 2026) ("While Shutterstock concededly knows that it removes CMI from every image ingested into its system, J. App'x at 241, Shutterstock explained—and McGucken failed to refute—that it removes metadata from all images primarily to avoid computer viruses and the dissemination of personally identifiable information, and **not for any reasons related to infringement**." (emphasis added)); *id.* at *3 n.2 (in the absence of affirmative evidence on scienter, a 1202 defendant can negate the scienter requirement "by providing some explanation" of the reasons for the absence of CMI).

6. Course Hero objects to the addition of the language, "However, actual knowledge is not required. Course Hero can be liable despite having only had constructive knowledge that its distribution of improperly attributed material will induce, enable, facilitate, or conceal an infringement." The instruction does not define or explain "constructive knowledge." To the extent that the Court is inclined to include that language in the instruction, Course Hero

proposes it should replace the phrase "constructive knowledge" with the phrase "reasonable grounds to know," which is the standard set forth by the statute.

7. Course Hero further objects to the omission of the word "copyrighted" from the phrase "improperly attributed material." Post's intentional omission of "copyrighted" from this phrase is misleading and misrepresentative of the court's opinion in *McGucken* and in *Mango*. *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *3 (2d Cir. Feb. 10, 2026) ("[U]nder § 1202(b), a party can be liable despite having only had constructive knowledge that their distribution of improperly attributed ***copyrighted*** material ... will induce, enable, facilitate, or conceal an infringement." (internal quotation marks omitted) (emphasis added)); *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) ("[T]he defendant who distributed improperly attributed ***copyrighted*** material must have actual knowledge that CMI 'has been removed or altered without authority of the copyright owner or the law,' as well as actual or constructive knowledge that such distribution 'will induce, enable, facilitate, or conceal an infringement.'" (emphasis added)).

## Post's Response:

1. Post submits that summarizing Post's allegations is permissible and helpful for the jury's understanding of the case when applying Section 1202(a). "Within this Circuit, the law is settled that a litigant is entitled to have the jury instructed as to his claims and theories of law if supported by the evidence and brought to the attention of the court," provided it does not mislead the jury as to the correct legal standard or does not adequately inform the jury on the law. *Boyce v. Soundview Technology Group, Inc.*, 464 F.3d 376, 389-90 (2nd Cir. 2006). Post further disagrees that its instructions are inconsistent with the law concerning what constitutes a violation of Section 1202. Post refers to and incorporates its objections and responses to Instruction No. 5 regarding this issue. Post objects to Course Hero's proposal to add that "Course Hero further says that Post was not injured by any of Course Hero's acts" as irrelevant given that injury is not an element of Section 1202.

2. Post's proposed instruction accurately tracks Section 1202(b). No further clarification is necessary particularly since Post is not alleging that public displays constitute violations of Section 1202(b).

3. Post submits that summarizing Post's allegations is permissible and helpful for the jury's understanding of the case when applying Section 1202(a). "Within this Circuit, the law is settled that a litigant is entitled to have the jury instructed as to his claims and theories of law if supported by the evidence and brought to the attention of the court," provided it does not mislead the jury as to the correct legal standard or does not adequately inform the jury on the law. *Boyce v. Soundview Technology Group, Inc.*, 464 F.3d 376, 389-90 (2nd Cir. 2006).

4. Section 1202 does not require the jury to find that Post was injured by Course Hero's acts. Course Hero improperly seeks to import language from Section 1203 setting forth the standing requirement for bringing an action under the DMCA. Whether or not Post was injured for purposes of standing is a legal question determined by the court, not a jury. *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 78 (2d Cir. 2002) (citing *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir.1999)) ("Standing is, moreover, a legal question to be determined by the court, not a jury."). The Court already determined that Post does have standing to bring its DMCA claims. *See* ECF No. 225 at 14 ("[a]s Plaintiff has presented evidence of injury sufficient to show standing, the Court denies summary judgment on this ground."). Course Hero's objection is also not supported by authority related to Section 1202 or the DMCA. *Republic Techs.* concerns the requirements for bringing a false advertising

claim under the Lanham Act. *Reazin* and *Ingevity Corp.* concern antitrust claims. Course Hero has not provided any examples of courts including an injury requirement in jury instructions for Section 1202 violations. However, in *Presse v. Morel*, No. 10 CIV. 2730, 2013 WL 10163046, *10 (SDNY Nov. 21, 2013), the jury was instructed that the plaintiff must prove the same three elements recited in Post's proposed instruction for a 1202(b) violation, with no mention of an injury element alleged by Course Hero to be required.

5.  Post objects to the inclusion of language that "a defendant does not violate Section 1202(b) by removing CMI not for any reasons related to infringement, but instead removing the CMI for other reasons" as misleading and inconsistent with the Second Circuit's opinion in *McGucken v. Shutterstock, Inc.*. No. 23-7652, 2026 WL 364412, at *4 (2d Cir. Feb. 10, 2026). *McGucken* did not hold that having a reason to remove CMI other than infringement avoids liability. While it was not refuted in that case that Shutterstock removed CMI for other reasons, the Court concluded that "[b]ecause nothing in the record suggests that Shutterstock had the scienter necessary for liability, we affirm the District Court's grant of summary judgment for Shutterstock on McGucken's § 1202(b) claim." *McGucken,* 2026 WL 364412 *4. Specifically, the Court's reasoning focused on a lack of evidence in that record that Shutterstock 1) "removed McGucken's CMI or distributed his work knowing that the CMI had been removed without his consent" or 2) "removed CMI from McGucken's images 'knowing, or… having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement.'" Further, section 1202(b) does not require that the removal of CMI be for "*reasons* related to infringement."

6.  The additional language is directly supported by the Second Circuit's Opinion in *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *3 (2d Cir. Feb. 10, 2026), and is necessary for the jury to understand the different knowledge standards for 1202(a) and 1202(b). In *McGucken*, the Court explained that 1202(a) requires "actual knowledge" while 1202(b) requires only "constructive knowledge." It would be misleading to the jury, and highly prejudicial to Post, if the instructions only explain the actual knowledge requirement of 1202(a) and leave out the less stringent constructive knowledge requirement of 1202(b).

7.  Post disagrees that this instruction should recite "copyrighted material" as this phrase is not recited in section 1202(b).

**INSTRUCTION NO. 4: REMOVING OR ALTERING COPYRIGHT MANAGEMENT INFORMATION (§ 1202(b))**
**[COMPETING; DEFENDANT'S PROPOSED INSTRUCTION]**

The second way Post has alleged that Course Hero violated the DMCA is by removing or altering CMI from copyrighted works under Section 1202(b)(1). In order to prevail on a claim for removing or altering CMI under Section 1202(b)(1), Post must prove by a preponderance of the evidence:

(1) The existence of CMI in connection with a particular copyrighted work;[13]

(2) That Course Hero removed or altered that CMI;

(3) That the removal or alteration was intentional as to the particular copyrighted work;[14]

(4) That the removal or alteration was without the authority of the copyright owner or the law;[15] and

(5) That Post was injured by the removal or alteration.[16]

---

[13] *Fischer v. Forrest*, 968 F.3d 216, 222 (2d Cir. 2020) ("In broad strokes, § 1202(c) protects the '[i]ntegrity of copyright management information' and prohibits the removal of CMI from *copyrighted works*." (emphasis added) (citing 17 U.S.C. § 1202(a)-(c)); *Harrington v. Pinterest, Inc.*, No. 5:20-CV-05290-EJD, 2022 WL 4348460, at *4 (N.D. Cal. Sept. 19, 2022) (dismissing complaint because it did "not allege sufficient facts from which to infer Pinterest knew as to any *particular Work* that Harrington's metadata constituted CMI. Without such knowledge, there are insufficient facts from which to reasonably infer Pinterest intentionally removed CMI from his Works or that Pinterest distributed his Works with knowledge that CMI had been removed or altered" (emphasis added)).

[14] *Fischer v. Forrest*, 968 F.3d at 223 ("To establish a violation of this subsection, a litigant must show (1) the existence of CMI on the allegedly infringed work, (2) the removal or alteration of that information and (3) that the removal was intentional."); *Sadowski v. Ng*, No. 18 CIV. 10113 (VM), 2022 WL 799636, at *8 (S.D.N.Y. Mar. 15, 2022) ("To establish a claim for removal of CMI, a plaintiff must demonstrate '(1) the existence of CMI on the [work at issue]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally.'"); *Cf. Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 99 (2d Cir. 2016) ("[B]ecause that evidence was not shown to relate to any of the videos at issue in this suit, it is insufficient to justify a finding of red flag knowledge, under the principle of *Viacom*, as to those specific videos."); *id.* at 98 ("[W]e can see no reason to construe [§ 512(c)] as . . . requiring investigation merely because the service provider learns facts raising a *suspicion* of infringement (as opposed to facts making infringement *obvious*). Protecting service providers from the expense of monitoring was an important part of the compromise embodied in the safe harbor.").

[15] 17 U.S.C. § 1202(b)(1) ("No person shall, without the authority of the copyright owner or the law—intentionally remove or alter any copyright management information . . . knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.").

[16] 17 U.S.C. § 1203(a) ("Any person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation.").

26

Post must also prove that at the time Course Hero removed or altered the CMI, Course Hero:[17]

> (6) Knew, or had reasonable grounds to know, that removing or altering the CMI in connection with that particular work would induce, enable, facilitate, or conceal copyright infringement.[18] This means that Post must prove by a greater weight of the evidence that Course Hero knew or had reasonable grounds to know that future infringement was likely, albeit not certain, to occur as a result of the absence of CMI.[19]

The third way Post has alleged that Course Hero violated the DMCA is by distributing or importing copyrighted works knowing that CMI has been removed or altered under Section 1202(b)(3). In order for Post to prevail on its claim that Course Hero violated the DMCA by distributing works under Section 1202(b)(3), Post must prove by a preponderance of the evidence:

> (1) The existence of CMI in connection with a particular copyrighted work;

> (2) That Course Hero distributed copies of the copyrighted work;

> (3) That Course Hero distributed those copies of the copyrighted work without authority of the copyright owner or the law;

---

[17] *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) ("A plaintiff must thus prove the following: (1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant 'distribute[d] ... works [or] copies of works'; (3) *while* 'knowing that [CMI] has been removed or altered without authority of the copyright owner or the law'; and (4) *while* 'knowing, or ... having reasonable grounds to know' that such distribution 'will induce, enable, facilitate, or conceal an infringement.'") (emphasis added).

[18] 17 U.S.C. § 1202(b)(1) ("No person shall, without the authority of the copyright owner or the law—intentionally remove or alter any copyright management information . . . knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title."); *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018) ("[W]e hold that a plaintiff bringing a Section 1202(b) claim must make an affirmative showing, such as by demonstrating a past 'pattern of conduct' or 'modus operandi', that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions."); *Cf. Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 99 (2d Cir. 2016) ("[B]ecause that evidence was not shown to relate to any of the videos at issue in this suit, it is insufficient to justify a finding of red flag knowledge, under the principle of *Viacom*, as to those specific videos."); *id.* at 98 ("[W]e can see no reason to construe [§ 512(c)] as . . . requiring investigation merely because the service provider learns facts raising a *suspicion* of infringement (as opposed to facts making infringement *obvious*). Protecting service providers from the expense of monitoring was an important part of the compromise embodied in the safe harbor.").

[19] *Stevens v. Corelogic*, *Inc.*, 899 F.3d at 666, 675 (9th Cir. 2018) ("[T]he plaintiff must provide evidence from which one can infer that future infringement is likely, albeit not certain, to occur as a result of the removal or alteration of CMI."); *The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 30 (S.D.N.Y. 2025) (citing the same language from *Corelogic* approvingly); *McGucken v. Shutterstock, Inc.*, No. 22 CIV. 00905 (JHR), 2023 WL 6390530, at *11 (S.D.N.Y. Oct. 2, 2023) (same).

(4) While knowing that CMI had been removed or altered from that particular work without the authority of the copyright owner or the law;[20]

(5) That Post was injured by Course Hero's acts.[21]

Post must also prove that at the time Course Hero distributed copies of the copyrighted work with CMI removed or altered, Course Hero:[22]

(6) Knew, or had reasonable grounds to know, that distributing that particular work with CMI removed or altered would induce, enable, facilitate, or conceal copyright infringement.[23]

---

[20] *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) ("A plaintiff must thus prove the following: (1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant 'distribute[d] . . . works [or] copies of works'; (3) while 'knowing that [CMI] has been removed or altered without authority of the copyright owner or the law'; and (4) while 'knowing, or . . . having reasonable grounds to know' that such distribution 'will induce, enable, facilitate, or conceal an infringement.'" (quoting 17 U.S.C § 1202(b)(3)) (alterations in original)); *Post Univ. Inc. v. Learneo, Inc.*, No. 3:21-CV-1242 (VDO), 2025 WL 2702043, at *8 (D. Conn. Sept. 23, 2025) (ECF No. 225) (same); 17 U.S.C. § 1202(b)(3) ("No person shall, without the authority of the copyright owner or the law—. . . distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, . . . knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title."); *McGucken v. Shutterstock, Inc.*. No. 23-7652, 2026 WL 364412, at *3 (2d Cir. Feb. 10, 2026); *cf. Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 99 (2d Cir. 2016) ("[B]ecause that evidence was not shown to relate to any of the videos at issue in this suit, it is insufficient to justify a finding of red flag knowledge, under the principle of *Viacom*, as to those specific videos."); *id.* at 98 ("[W]e can see no reason to construe [§ 512(c)] as . . . requiring investigation merely because the service provider learns facts raising a *suspicion* of infringement (as opposed to facts making infringement *obvious*). Protecting service providers from the expense of monitoring was an important part of the compromise embodied in the safe harbor.").

[21] 17 U.S.C. § 1203(a) ("Any person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation.").

[22] *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) ("A plaintiff must thus prove the following: (1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant 'distribute[d] . . . works [or] copies of works'; (3) *while* 'knowing that [CMI] has been removed or altered without authority of the copyright owner or the law'; and (4) *while* 'knowing, or . . . having reasonable grounds to know' that such distribution 'will induce, enable, facilitate, or conceal an infringement.'") (emphasis added).

[23] 17 U.S.C. § 1202(b); *Stevens v. Corelogic, Inc.,* 899 F.3d 666, 674 (9th Cir. 2018) ("[W]e hold that a plaintiff bringing a Section 1202(b) claim must make an affirmative showing, such as by demonstrating a past 'pattern of conduct' or 'modus operandi', that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions."); *Cf. Cap. Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 99 (2d Cir. 2016) ("[B]ecause that evidence was not shown to relate to any of the videos at issue in this suit, it is insufficient to justify a finding of red flag knowledge, under the principle of *Viacom*, as to those specific videos."); *id.* at 98 ("[W]e can see no reason to construe

This means that Post must prove by a greater weight of the evidence that Course Hero knew or had reasonable grounds to know that future infringement was likely, albeit not certain, to occur as a result of the absence of CMI. [24]

Public display does not constitute distribution and thus is not a violation of Section 1202(b)(3) under the DMCA.[25]

A defendant does not violate Section 1202(b) by removing CMI not for any reasons related to infringement, but instead removing the CMI for other reasons.[26]

**Post's Objections:**
1. Post objects to Course Hero's alternate Instruction No. 4 in its entirety as being inconsistent with the language of Section 1202. Course Hero seeks to add elements not recited in Section 1202, particularly elements 1 and 5 and language reciting "specific" and "particular" "copyrighted works." The latter language may also mislead the jury into believing that each work must have a copyright registration to bring a claim under the DMCA. Post submits that its proposed Instruction No. 4 accurately reflects the requirement of Section 1202(b) and should be adopted.
2. Post objects to including an instruction regarding public display. Post's proposed instruction accurately tracks Section 1202(b). No further clarification is necessary particularly since Post is not alleging that public displays constitute violations of Section 1202(b).
3. Post further objects to requiring the jury the find that Post was injured by Course Hero's removal, alteration, or other acts. Injury is not an element of Section 1202 and Course Hero has not provided any examples of courts including an injury requirement in jury instructions for Section 1202. Course Hero improperly seeks to import language from Section 1203 setting forth the standing requirement for bringing an action under the DMCA. Whether or not Post was injured for purposes of standing is a legal question determined by the court, not a jury.

---

[§ 512(c)] as . . . requiring investigation merely because the service provider learns facts raising a *suspicion* of infringement (as opposed to facts making infringement *obvious*). Protecting service providers from the expense of monitoring was an important part of the compromise embodied in the safe harbor.").

[24] *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 675 (9th Cir. 2018) ("[T]he plaintiff must provide evidence from which one can infer that future infringement is likely, albeit not certain, to occur as a result of the removal or alteration of CMI."); *The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 30 (S.D.N.Y. 2025) (citing the same language from *Corelogic* approvingly); *McGucken v. Shutterstock, Inc.*, No. 22 CIV. 00905 (JHR), 2023 WL 6390530, at *11 (S.D.N.Y. Oct. 2, 2023) (same).

[25] *FurnitureDealer.Net, Inc., v. Amazon.com, Inc.*, No. CV 18-232 (JRT/HB), 2022 WL 891473, at *23 (D. Minn. Mar. 25, 2022) ("[P]ublic display does not constitute distribution, and thus is not a violation of § 1202(b)(3).").

[26] *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *4 (2d Cir. Feb. 10, 2026) ("While Shutterstock concededly knows that it removes CMI from every image ingested into its system, J. App'x at 241, Shutterstock explained—and McGucken failed to refute—that it removes metadata from all images primarily to avoid computer viruses and the dissemination of personally identifiable information, and **not for any reasons related to infringement**." (emphasis added)); *id.* at *3 n.2 (in the absence of affirmative evidence on scienter, a 1202 defendant can negate the scienter requirement "by providing some explanation" of the reasons for the absence of CMI).

*United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 78 (2d Cir. 2002) (citing *United States v. Cambio Exacto, S.A.,* 166 F.3d 522, 526 (2d Cir.1999)) ("Standing is, moreover, a legal question to be determined by the court, not a jury."). The Court already determined that Post does have standing to bring its DMCA claims. *See* ECF No. 225 at 14 ("[a]s Plaintiff has presented evidence of injury sufficient to show standing, the Court denies summary judgment on this ground."). Course Hero's objection is also not supported by authority related to Section 1202 or the DMCA. *Republic Techs.* concerns the requirements for bringing a false advertising claim under the Lanham Act. *Reazin* and *Ingevity Corp.* concern antitrust claims. Course Hero has not provided any examples of courts including an injury requirement in jury instructions for Section 1202 violations. However, in *Presse v. Morel*, No. 10 CIV. 2730, 2013 WL 10163046, *10 (SDNY Nov. 21, 2013), the jury was instructed that the plaintiff must prove the same three elements recited in Post's proposed instruction for a 1202(b) violation, with no mention of an injury element alleged by Course Hero to be required.

4. Post objects to the inclusion of language that "a defendant does not violate Section 1202(b) by removing CMI not for any reasons related to infringement, but instead removing the CMI for other reasons" as misleading and inconsistent with the Second Circuit's opinion in *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *4 (2d Cir. Feb. 10, 2026). *McGucken* did not hold that having a reason to remove CMI other than infringement avoids liability. While it was not refuted in that case that Shutterstock removed CMI for other reasons, the Court concluded that "[b]ecause nothing in the record suggests that Shutterstock had the scienter necessary for liability, we affirm the District Court's grant of summary judgment for Shutterstock on McGucken's § 1202(b) claim." *McGucken,* 2026 WL 364412 *4. Specifically, the Court's reasoning focused on a lack of evidence in the record that Shutterstock 1) "removed McGucken's CMI or distributed his work knowing that the CMI had been removed without his consent" or 2) "removed CMI from McGucken's images 'knowing, or… having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement.'" *Id.* Further, section 1202(b) does not require that the removal of CMI be for "*reasons* related to infringement."

**Course Hero's Response:**

1. The requirement that the works in suit be "copyrighted works" is supported by case law in the Second Circuit, and, as explained *infra* Instruction No. 8, the requirement that a work must be copyrighted does not require a copyright registration. Case law from courts in this Circuit also supports that the alleged CMI must be "in connection with a particular copyrighted work," and Post cites no law to the contrary. *See Shihab v. Source Digital, Inc.*, No. 23CV7266 (DLC), 2024 WL 3461351, at *8 (S.D.N.Y. July 18, 2024) ("To establish a violation of § 1202(a), a plaintiff must prove that (1) the defendant provided, distributed, or imported for distribution CMI *in connection with a copyrighted work*; (ii) the CMI was false; and (iii) the defendant knew the CMI was false; and (iv) acted with the intent to induce, enable, facilitate, or conceal an infringement. The last two elements are the so-called double scienter requirement." (emphasis added)); *Harrington v. Pinterest, Inc.*, No. 5:20-CV-05290-EJD, 2022 WL 4348460, at *4 (N.D. Cal. Sept. 19, 2022) (dismissing complaint because it did "not allege sufficient facts from which to infer Pinterest knew as to any *particular Work* that Harrington's metadata constituted CMI. Without such knowledge, there are insufficient facts from which to reasonably infer Pinterest intentionally removed CMI from his Works or that Pinterest distributed his Works with knowledge that CMI had been removed or altered" (emphasis added)). As discussed with respect to Instruction No. 2 *supra*, this is important to clarify where

a large number of works are alleged to be implicated in different violations of not only different subsections of Section 1202, but other statutes as well.

2. Course Hero intends to demonstrate at trial that documents viewed on the Course Hero website (either at the preview or unlock stage) are "displayed" rather than "distributed" for the purposes of determining whether a violation of Section 1202(b)(3) has occurred. Post labels these views as "distributions" without support. Permitting others to view a work is not a distribution because the end user does not retain a copy of the work, as they would if the work was downloaded instead. *See Pryimachenko v. Home Box Off., Inc.*, No. 23-CV-10034 (LAK) (RWL), 2025 WL 567988, at *5 (S.D.N.Y. Jan. 14, 2025), report and recommendation adopted, No. 23-CV-10034 (LAK), 2025 WL 673473 (S.D.N.Y. Mar. 3, 2025) ("While '[i]t may seem odd that allowing the whole world to view or hear a work does not constitute publication of a work[,] . . . [a] mere display or performance is not a distribution, because the end user does not retain a "copy" . . . of the work, as defined under the Copyright Act.'" (quoting U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 1008.3(B) (3d ed. 2021))).

3. Post incorrectly conflates pleading requirements with its burden of proof at trial. Injury is an element of any claim under Section 1202(b). As stated in Section 1203(a), "[a]ny person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation." 17 U.S.C. § 1203(a). This requirement is not done away with simply because Plaintiff avoided summary judgment by demonstrating that a genuine dispute as to whether it had standing to sue exists. Courts routinely include injury as an element of proof in their instructions to the jury. *See, e.g., Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16 C 3401, 2023 WL 6198827, at *1 (N.D. Ill. Sept. 22, 2023), *aff'd*, 135 F.4th 572 (7th Cir. 2025) (affirming jury was properly instructed that one of the elements of the plaintiff's Lanham Act claim was that the plaintiff "has been or is likely to be injured as a result of the false statement"); *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 899 F.2d 951, 956 n.2 (10th Cir. 1990) ("The jury found that [the plaintiff] had suffered no injury as a result of the antitrust violations and concluded that [the plaintiff] had failed to establish all the elements of tortious interference."); *Ingevity Corp. v. BASF Corp.*, No. CV 18-1391-RGA, 2024 WL 579667, at *7 (D. Del. Feb. 13, 2024) ("To establish an antitrust injury, . . . [the plaintiff] needed to show that [the defendant]'s conduct was a material or substantial cause of its injury. The jury instructions . . . are consistent with this requirement. ('[The plaintiff] is entitled to recover damages for an injury to its business or property if it can establish . . . that the alleged illegal conduct was a material cause of [the plaintiff]'s injury.')." (citations omitted)).

4. Course Hero's added language is supported by Second Circuit law and is not misleading. *McGucken* expressly identifies the fact that Shutterstock "removes metadata from all images primarily to avoid computer viruses and the dissemination of personally identifiable information, and not for any reasons related to infringement" as the reason plaintiff's Section 1202(b) claim fails. *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *4 (2d Cir. Feb. 10, 2026). Per the Second Circuit's own language, in the absence of affirmative evidence on scienter, a 1202 defendant can negate the scienter requirement "'by providing some explanation' for the allegedly infringing activity." *Id.* at *3 n.2. The other language Post cites to from *McGucken* does not contradict this.

**INSTRUCTION NO. 5: VIOLATIONS UNDER THE DMCA (§ 1203(c))**
**[COMPETING; PLAINTIFF'S PROPOSED INSTRUCTION]**

If you find that Course Hero violated Section 1202 of the DMCA, you must then determine how many violations Course Hero committed. To determine the number of violations you are to consider the number of individual acts committed by Course Hero, including each instance that Course Hero provided CMI that is false, distributed or imported for distribution CMI that is false, removed or altered CMI, distributed CMI that had been altered or removed, and/or distributed works with altered or removed CMI, in a manner that you find violated this law.

Each time Course Hero provided or distributed false CMI as stated in [Proposed] Instruction No. 2 constitutes a separate violation of Section § 1202(a) of the DMCA.

Each time Course Hero removed or altered CMI or distributed a Post document with removed or altered CMI, as stated in [Proposed] Instruction No. 4 constitutes a separate violation of § 1202(b) of the DMCA.

*Sources*: 17 U.S.C. § 1203(c)(3)(B) ("a complaining party may elect to recover an award of statutory damages <u>for each violation</u> of section 1202…") (emphasis added); *Preston Wood & Assocs., LLC v. RZ Enters. USA, Inc.*, Civ. No. H-16-1427 (S.D. Tex. Nov 8, 2018) ("Courts have interpreted 'each violation' for purposes of section 1203 to mean 'each violative act performed by Defendant").

<u>**Course Hero's Objections:**</u>

1. Post's instruction suggests to the jury that it could properly find Course Hero liable for a Section 1202 violation each time the Course Hero website takes an automated action that causes a work alleged to have false, altered, or removed CMI to be displayed, transmitted, or otherwise processed by the system. Post intends to argue to the jury that one or more Section 1202 violations is committed each time ***each work-in-suit*** undergoes ***each*** of the following automated, user-initiated steps: (1) upload to the Course Hero website and attendant format conversion; (2) display to a user in blurred format; (3) display to a user in an "unlocked," unblurred format; or (4) download by a user. This multiplicity of supposed CMI "violations" per document, each adding another $2,500–$25,000 in statutory damages to the pile, is what permits Post to suggest that Course Hero should be liable for upwards of ***$17 billion*** in damages in this case.

This is wrong in two separate ways. ***First***, it is wrong because courts in this circuit have held that the "volitional conduct" requirement applicable to copyright infringement claims applies to Section 1202 claims as well. *See Sheldon v. Plot Commerce*, No. 15-CV-5885-CBA-CLP, 2016 WL 5107072, at *12 (E.D.N.Y. Aug. 26, 2016), report and recommendation adopted, No. 15-CV-5885-CBA-CLP, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016) (observing, in the context of a Section 1202 claim, that "[t]he statute requires 'volitional conduct' that 'causes' the reproduction or distribution to be made." (citation omitted)); *Michael Grecco Prods., Inc. v. Function(X) Inc.*, No. 18 CIV. 386 (NRB), 2019 WL 1368731, at *3 (S.D.N.Y. Mar. 11, 2019) (holding, in the context of a Section 1202 claim, that there was "no basis for the further inference that the publication of the photograph with a photo credit to Pinterest was volitionally dishonest and designed to conceal infringement. Accordingly, [plaintiff] is not entitled to the $10,000 in damages that he seeks, as the complaint does not make out a claim under 17 U.S.C. § 1202."). And the law is clear that when an online service provider's software obeys a user's

command with respect to a user-selected copyrighted work—*e.g.*, automatically displaying a copyrighted work uploaded by a user—that automated or programmed action does not constitute volitional conduct and does not lead to liability. *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008) ("[A] significant difference exists between making a request to a human employee, who then volitionally operates the copying system to make the copy, and issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct."); *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 50-51 (2d Cir. 2019) (Walker, J., concurring) ("An ISP acts volitionally when it creates a program designed to infringe copyrighted material and selects the copyrighted material that it copies. . . In contrast, the volitional conduct requirement is not satisfied when an ISP simply displays user-uploaded images and plays no role in selecting the images."); *see also* BRUCE A. LEHMAN, INTELLECTUAL PROPERTY AND THE NATIONAL INFORMATION INFRASTRUCTURE: THE REPORT OF THE WORKING GROUP ON INTELLECTUAL PROPERTY RIGHTS, 236 n.575 (Sept. 1995) ("While a transmitting entity may not remove the copyright management information, if such information is not included in the normal course of the transmission (such as when a work in digital form is broadcast through analog transmission), no violation would occur."), *at* https://files.eric.ed.gov/fulltext/ED387135.pdf; *Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*, 524 F. Supp. 2d 1184, 1196-97 (C.D. Cal. 2007) (identifying that document, known as the "White Paper," as the source of the rationale for Section 1202); *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *4 (2d Cir. Feb. 10, 2026) (contrasting a case in which a defendant "utilized an automated process" with respect to CMI, and was not liable, to a case in which a defendant acted with respect to "one specific image," and was liable).

**Second**, Post's instruction is wrong because courts have consistently rejected the notion that when a defendant removes or alters the CMI of a work-in-suit—or appends false CMI to that work—a separate Section 1202 violation is committed for every user who then views that work or to whom it is distributed. Instead, consistent with the "volitional conduct" requirement, courts have focused on discrete "violative acts" committed by the defendant. *McClatchey v. Associated Press*, No. 3:05-cv-145, 2007 WL 1630261, at *6 (W.D. Pa. June 4, 2007) ("the term 'each violation' is best understood to mean 'each violative act performed by Defendant'"). So in *McClatchey*, the AP's stripping of CMI from a copyrighted photograph and distribution of that photograph to its 1,147 news organization Photostream subscribers constituted one "violative act." *Id.* The court concluded that "Congress would not have intended to make the statutory damages windfall totally independent of the defendant's conduct. Where one act by Defendant results in mass infringement, it is more likely that actual damages will yield the more favorable recovery." *Id.* Likewise, in *Stockwire Rsch. Grp., Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1266-67 (S.D. Fla. 2008), the defendants took plaintiff's copyrighted video, stripped it of its copy protections, removed its accompanying copyright notices, and posted it online. The court rejected the notion that a Section 1202 violation was committed for each user who accessed the unauthorized work, writing that Section 1202 "focuses solely on the Defendants' conduct, or in other words, the number of times the Unauthorized Product was posted on the internet for distribution, regardless of the number of end-recipients. . . . Accordingly, for purposes of §§ 1202 and 1203(c)(3)(B), Defendants posted the Unauthorized Product on to the internet on three separate occasions, and therefore committed three violative acts." *Id. See also DynaStudy, Inc. v. Houston Indep. Sch. Dist.*, No. CV H-16-1442, 2018 WL 11358474, at *4 (S.D. Tex. Oct. 10, 2018) ("'[E]ach violation'

means 'each violative act performed by Defendant.'"); *Design Basics, LLC v. Drexel Bldg. Supply, Inc.*, No. 13-C-560, 2016 WL 5794746, at *3 (E.D. Wis. Oct. 4, 2016) ("[T]he DMCA applies for each act violating the DMCA without respect to how many individuals are recipients of the affected work. The DMCA focuses on violating acts, not recipients.").

Notably, in considering the question of how to parse what constitutes a "violation" for purposes of statutory damages under the DMCA, courts have expressly considered whether the plaintiff's proposal could lead to an absurdly exorbitant damages award. In *Craigslist, Inc. v. Doe 1*, No. C09-4739 SI BZ, 2011 WL 1897423, at *5 (N.D. Cal. Apr. 25, 2011), for example, the court assessed a claim under Section 1201 of the DMCA, which bars technological circumvention of copyright protection. The defendant sold software accompanied by credits that enabled the use of the software to circumvent plaintiff Craigslist's restrictions on automatic (rather than manual) posting of classified ads. Craigslist asked for statutory damages for each credit sold. The court concluded that counting the sale of the software bundle rather than each individual credit as the discrete Section 1201 violation was more appropriate, in significant part because Craigslist's proposal would lead to "a statutory damages award range of about $575 million to $7.2 billion," which would be "an absurd result that was not intended by Congress." *Id.* The *Stockwire* court likewise wrote that it "does not believe Congress, in enacting the DMCA legislation, authorized, nor intended, the requested windfall of between *$29,465,000.00 to $294,650,000.00* in statutory damages, on the basis of three internet uploads." *Stockwire Rsch. Grp., Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1267 n.8 (S.D. Fla. 2008) (emphasis in original).

Accordingly, as suggested in Course Hero's proposal, the Court's instructions concerning what constitutes a violation under the DMCA should include the following: "The DMCA requires volitional conduct that causes the reproduction or distribution to be made. As a result, to determine the number of violations, you are to consider the number of violative acts that are the result of volitional conduct by Course Hero." And the jury should not be instructed as to Post's legally incorrect approach to tallying supposed "violations" to improperly inflate its requested damages amount.

2. Course Hero objects to Post's inclusion of allegations in the instructions read to the jury, which risk confusing the jury as to what constitutes a violation of Section 1202. *See Panolam Indus. Int'l, Inc. v. F&F Composite Grp., Inc.*, No. 3:07-CV-01721(AWT), 2015 WL 13637139, at *2 (D. Conn. Jan. 16, 2015) (refusing to give instructions that "were not only unnecessary but contained improper advocacy. In the court's view, the jury instructions taken as a whole complied with the requirement that they adequately inform the jury of the law and that they not mislead the jury as to the proper legal standard."). As discussed further in objection no. 2 *supra*, Post's statement of its allegations misstates the law concerning what constitutes a "separate violation" of Section 1202. Post's allegations also misstate the elements it is required to prove to establish violations of Section 1202. Most alarmingly, the allegations in this instruction completely omit the scienter Post is obligated to establish. However, should the Court include Post's allegations in the instructions to the jury, Course Hero proposes the following should be added: "Course Hero denies these allegations. Course Hero says that the number of violations is equal to the number of violative acts that are the result of volitional conduct by Course Hero."

34

3. Post's suggestion that a Section 1202 violation is committed each time a work with false, altered, or removed CMI is displayed to a user on the Course Hero website is also contrary to law holding that public display does not constitute distribution (and so cannot violate Section 1202(b)(3)'s prohibition on distribution of works knowing that CMI had been removed or altered). *See FurnitureDealer.Net, Inc., v. Amazon.com, Inc.*, No. CV 18-232 (JRT/HB), 2022 WL 891473, at *23 (D. Minn. Mar. 25, 2022) ("[P]ublic display does not constitute distribution, and thus is not a violation of § 1202(b)(3)."); *see also Pryimachenko v. Home Box Off., Inc.*, No. 23-CV-10034 (LAK) (RWL), 2025 WL 567988, at *5 (S.D.N.Y. Jan. 14, 2025), report and recommendation adopted, No. 23-CV-10034 (LAK), 2025 WL 673473 (S.D.N.Y. Mar. 3, 2025) ("While '[i]t may seem odd that allowing the whole world to view or hear a work does not constitute publication of a work[,] . . . [a] mere display or performance is not a distribution, because the end user does not retain a 'copy' . . . of the work, as defined under the Copyright Act.'" (quoting U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 1008.3(B) (3d ed. 2021))).

## Post's Responses:

1. Course Hero is liable for "each violation of section 1202." Damages are not limited by the number of works in suit or by how many violations were committed manual versus automated with software, provided the elements of Section 1202 are satisfied.

   a. "Volitional conduct" is not a requirement of Section 1202 and including this would incorrectly impose an additional element beyond the intent and knowledge elements of the statute. Course Hero claims that "courts in this circuit have held that the 'volitional conduct' requirement applicable to copyright infringement claims applies to § 1202 claims as well." This is false. Course Hero's entire argument rests on *Sheldon*, which is an unreported, non-precedential recommendation from a magistrate judge on a motion for default judgment. In *Sheldon*, the court incorrectly cited two copyright infringement cases in its discussion of the legal standard for Section 1202. Even so, the court did not apply an additional element of "volitional conduct" in its analysis of the 1202 claims and used only the requisite knowledge and intent elements. *Sheldon v. Plot Commerce*, No. 15-CV-5885-CBA-CLP, 2016 WL 5107072, at *13 (E.D.N.Y. Aug. 26, 2016). It is evident that the court in *Sheldon* was at most characterizing the intent and knowledge requirements as being analogous to volitional conduct and not intending to add a third requirement. In *Grecco*, the court discussed whether the defendant actions were "volitionally dishonest and designed to conceal infringement" in evaluating the knowledge and intent requirements of section 1202(a) and did not purport to impose an additional requirement of "volitional conduct."

   b. Course Hero's reliance on *Cartoon Network* and *BWP* to support its defense that an automated or programed action is not "volitional conduct" and does not lead to liability is equally misplaced. *Cartoon Network* and *BWP* concern copyright infringement, not Section 1202, and both are instructive as to why the "volitional conduct" requirement does <u>not</u> apply to Section 1202. The volitional conduct requirement was adopted to prevent unfair outcomes under copyright law because "the Copyright Act is a strict liability regime." *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 47 (2d Cir. 2019). Because a party could be liable for copyright infringement regardless of fault or intent, it was reasoned that there should be some element of volition or causation. *Cartoon Network Lp, Lllp v. Csc Holdings, Inc.*, 536 F.3d 121, 130 (2nd Cir. 2008). However, Section 1202 is not a strict liability statute and requires knowledge and intent, thus the rationale for

imposing a volitional conduct requirement is not applicable. Doing so would add yet another element that the jury must find and lead to confusion on how to separately determine intent, knowledge, and volition.

c. *Cartoon Network* and *BWP* also do not support the broad conclusion, even under copyright law, that an automated or programmed action does not lead to liability. In *Cartoon Network*, the court declined to find Cablevision liable for copyright infringement when it provided access to remote storage digital video recorders (RS-DVRs) which some customers used to make copies of the plaintiff's programming. The court analogized it to "a store proprietor who charges customers to use a photocopier on his premises, and it seems incorrect to say, without more, that such a proprietor 'makes' any copies when his machines are actually operated by his customers." *Cartoon Network Lp, Lllp v. Csc Holdings, Inc.*, 536 F.3d 121, 131 (2nd Cir. 2008). In *BWP*, there was no direct copyright infringement by an internet service provider that ran a website which allowed users to clip images from other websites and collect them on defendant's site. *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 45 (2d Cir. 2019). However, when a party has a role in the process beyond being a mere passive provider of space where infringement occurs, this transforms them into an active participant in the process of copyright infringement and liable for direct infringement, whether it is automated or not. *Capitol Records, LLC v. ReDigi Inc.*, 934 F.Supp.2d 640, 657 (S.D. N.Y. 2013). In this case, Course Hero is an active participant by encouraging users to upload works, processing the works to prepare previews, and controlling how the works are distributed with different amounts of blurring, depending on the specific user and how many times they have visited the website. *See Arista Records LLC v. Usenet.Com, Inc.*, 633 F.Supp.2d 124, 148 (S.D. N.Y. 2009), *citing Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.*, 982 F.Supp. 503 (N.D.Ohio 1997). Course Hero is not a passive provider but instead designed and operates a system to infringe. See *BWP Media*, 922 F.3d at 49, *citing EMI Christian Music Group, Inc. v. MP3tunes*, 840 F.3d 69, 96 (2d Cir. 2016). Even so, volitional conduct is not a requirement for Section 1202. The jury should decide whether the elements of Section 1202 are met by Course Hero without being misled or confused by an erroneous instruction that is not applicable to the law or facts of this case.

d. Course Hero's reliance on *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412 *4 (2d Cir. Feb. 10, 2026) is also misplaced. The Second Circuit in *McGucken* did not impose a volitional conduct requirement for section 1202 as claimed by Course Hero. The Court only referenced a case in which a party applied an automated process to modify CMI in evaluating whether "Shutterstock had the scienter necessary for liability." *McGucken* supports the fact that courts in the Second Circuit do not require "volitional conduct" for section 1202 claims.

e. Courts have not "consistently rejected the notion that when a defendant removes or alters the CMI of a work-in-suit—or appends false CMI to that work—a separate § 1202 violation is committed for every user who then views that work or to whom it is distributed" as argued by Course Hero. In *Preston Woods & Assocs., LLC v. RZ Enters. USA, Inc.*, the defendant was found liable for 11,516 violations for distributing the same work to 11,516 recipients in a blast email. Civ. No. H-16-1427 (S.D. Tex. Nov 8, 2018). Further, Course Hero's characterization of *McClatchey* that "the AP's stripping of CMI from a copyrighted photograph and distribution of that photograph to its 1,147 news organization Photostream subscribers constituted one 'violative act'" is incorrect. In *McClatchey*, the court acknowledged that the removal of CMI is a separate violation from the distribution.

*McClatchey v. Associated Press*, No. 3:05-cv-145, 2007 WL 1630261, at *5 n.2 (W.D. Pa. June 4, 2007); *see also Reilly v. Commerce*, No. 15-cv-05118, 2016 WL 6837895, *10 (SDNY Oct. 31, 2016)(noting that some "cases overlook the actual result in *McClatchey*— which permitted the plaintiff to seek one award for the removal of its CMI in violation of subsection 1202(b)(1) and another for the distribution of the altered photograph in violation of subsection 1202(b)(2) or (b)(3)"). Post is not seeking damages based on the number of users who viewed a work posted to a *static* webpage shown to any and all visitors. Post is properly seeking damages for "each violation of section 1202" in accordance with 17 U.S.C. 1203(c)(3)(B). This includes each time Course Hero provided copyright management information that is false, distributed or imported for distribution copyright management information that is false, intentionally removed or altered any copyright management information, or distributed works knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, is a violation. In this case, Course Hero operates a *dynamic* website that generates bespoke previews for visitors. A preview is not distributed to every user at the same time or even in the same format. In other words, two visitors may attempt to access the same preview, and Course Hero will distribute a different version to each of them based on the user's status visiting the Course Hero website. It is separate distribution to each user when they visit the Course Hero website, customized by Course Hero, with different amounts of blurring, depending on the specific user and how many times they have visited the website. Thus, they are separate violations.

    f.    Whether the violation count may lead to a high damages amount does not provide a basis to misapply the statute. *Craigslist* is not a Section 1202 case and is therefore inapplicable. *Stockwire Research Group, Inc. v. Lebed* concerned only three uploads of an unauthorized work to a website allowing multiple viewers unlawful access. 577 F.Supp.2d 1262, 1267 (S.D. Fla. 2008). Unlike the facts in *Stockwire*, Course Hero removed CMI from and added false CMI to thousands of Post's works, and separately distributed previews of such works to users, hundreds of thousands of times, with different amounts of blurring depending on the specific user and how many times they have visited the website. The present case is more analogous to *Preston Woods & Assocs., LLC v. RZ Enters. USA, Inc.* in which the Court awarded statutory damages of $29 million for a blast email distributed to 11,516 recipients. Civ. No. H-16-1427 (S.D. Tex. Nov 8, 2018).

2. Post submits that summarizing Post's allegations is permissible and helpful for the jury's understanding of the case when applying Section 1202(a). "Within this Circuit, the law is settled that a litigant is entitled to have the jury instructed as to his claims and theories of law if supported by the evidence and brought to the attention of the court," provided it does not mislead the jury as to the correct legal standard or does not adequately inform the jury on the law. *Boyce v. Soundview Technology Group, Inc.*, 464 F.3d 376, 389-90 (2nd Cir. 2006).

3. Course Hero objects to "Post's suggestion that a § 1202 violation is committed each time a work with false, altered, or removed CMI is ***displayed*** to a user." However, Post's instruction does not use the term "display." Post's proposed instruction accurately tracks the language of Section 1202 and no further clarification is necessary, particularly since Post is not alleging that public displays constitute violations of Section 1202.

**INSTRUCTION NO. 5: VIOLATIONS UNDER THE DMCA (§ 1203(c))**
**[COMPETING; DEFENDANT'S PROPOSED INSTRUCTION]**

If you find that Course Hero violated Section 1202 of the DMCA, you must then determine how many violations Course Hero committed. The DMCA requires volitional conduct by the person or entity accused of violating Section 1202 with respect to a particular work.[27] As a result, to determine the number of violations, you are to consider the number of violative acts that are the result of volitional conduct by Course Hero.[28]

---

[27] Section 1202 bars distribution of false CMI and distribution of works with CMI removed only by the "person" with the requisite intent or knowledge. It also permits only direct liability, not liability for inducing or contributing to CMI violations by others. Accordingly, courts have required that a violation of Section 1202 must entail "volitional conduct" by the defendant. *See Sheldon v. Plot Commerce*, No. 15-CV-5885-CBA-CLP, 2016 WL 5107072, at *12 (E.D.N.Y. Aug. 26, 2016), report and recommendation adopted, No. 15-CV-5885-CBA-CLP, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016) (observing, in the context of a Section 1202 claim, that "[t]he statute requires 'volitional conduct' that 'causes' the reproduction or distribution to be made." (citation omitted)); *Michael Grecco Prods., Inc. v. Function(X) Inc.*, No. 18 CIV. 386 (NRB), 2019 WL 1368731, at *3 (S.D.N.Y. Mar. 11, 2019) (holding, in the context of a Section 1202 claim, that "[N]o basis for the further inference that the publication of the photograph with a photo credit to Pinterest was volitionally dishonest and designed to conceal infringement. Accordingly, [plaintiff] is not entitled to the $10,000 in damages that he seeks, as the complaint does not make out a claim under 17 U.S.C. § 1202."); *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *4 (2d Cir. Feb. 10, 2026) (contrasting a case in which a defendant "utilized an automated process" with respect to CMI, and was not liable, to a case in which a defendant acted with respect to "one specific image," and was liable).

[28] *Id.*; *McClatchey v. Associated Press*, No. 3:05-cv-145, 2007 WL 1630261, at *6 (W.D. Pa. June 4, 2007) ("the term 'each violation' is best understood to mean 'each violative act performed by Defendant.'"); *DynaStudy, Inc. v. Houston Indep. Sch. Dist.*, No. CV H-16-1442, 2018 WL 11358474, at *4 (S.D. Tex. Oct. 10, 2018) ("'[E]ach violation' means 'each violative act performed by Defendant.'"); *Design Basics, LLC v. Drexel Bldg. Supply, Inc.*, No. 13-C-560, 2016 WL 5794746, at *3 (E.D. Wis. Oct. 4, 2016) ("[T]he DMCA applies for each act violating the DMCA without respect to how many individuals are recipients of the affected work. The DMCA focuses on violating acts, not recipients."); *Notte v. New Sushi, LLC*, No. 22-CV-6394 (EP) (JBC), 2024 WL 706783, at *3 (D.N.J. Feb. 20, 2024) ("Courts have interpreted the DMCA's 'for each violation' directive to mean that a plaintiff may recover for 'each violative act' under the DMCA. For example, the intentional removal/alteration of copyright management information is considered one discrete violative act, while the wrongful distribution of that same work is its own discrete violative act." (internal citations omitted)); *Stockwire Rsch. Grp., Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1266-67 (S.D. Fla. 2008) ("[T]he number of unlawful recipients is immaterial for purposes of statutory damages under § 1203(c)(3)(B); rather, this Section focuses solely on the Defendants' conduct, or in other words, the number of times the Unauthorized Product was posted on the internet for distribution, regardless of the number of end-recipients.").

A party does not engage in volitional conduct when its systems automatically respond to third-party user inputs.[29] For example, the volitional conduct requirement is not satisfied when an internet service provider simply displays user-uploaded material and plays no role in selecting the material to be displayed.[30]

**Post's Objections:**

1. Post objects to Course Hero's proposed Instruction No. 5 seeking to impose a requirement that the jury find "volitional conduct."

   a. "Volitional conduct" is not a requirement of Section 1202 and including this would incorrectly impose an additional element beyond the intent and knowledge elements of the statute. Course Hero claims that "courts in this circuit have held that the 'volitional conduct' requirement applicable to copyright infringement claims applies to § 1202 claims as well." This is false. Course Hero's entire argument rests on *Sheldon*, which is an unreported, non-precedential recommendation from a magistrate judge on a motion for default judgment. In *Sheldon*, the court incorrectly cited two copyright infringement cases in its discussion of the legal standard for Section 1202. Even so, the court did not apply an additional element of "volitional conduct" in its analysis of the 1202 claims and used only the requisite knowledge and intent elements. *Sheldon v. Plot Commerce*, No. 15-CV-5885-CBA-CLP, 2016 WL 5107072, at *13 (E.D.N.Y. Aug. 26, 2016). It is evident that the court in *Sheldon* was at most characterizing the intent and knowledge requirements as being analogous to volitional conduct and not intending to add a third requirement. In *Grecco*, the court discussed whether the defendant actions were "volitionally dishonest and designed to conceal infringement" in evaluating the knowledge and intent requirements of section 1202(a) and did not purport to impose an additional requirement of "volitional conduct."

   b. Course Hero's reliance on *Cartoon Network* and *BWP* to support its defense that an automated or programed action is not "volitional conduct" and does not lead to liability is equally misplaced. *Cartoon Network* and *BWP* concern copyright infringement, not Section 1202, and both are instructive as to why the "volitional conduct" requirement does not apply to Section 1202. The volitional conduct requirement was adopted to prevent unfair outcomes under copyright law because "the Copyright Act is a strict liability regime." *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 47 (2d Cir. 2019). Because

---

[29] *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 50 (2d Cir. 2019) ("[A]n ISP does not act volitionally when it automatically makes a single copy of content selected by the user in response to a user's request.") (Walker, J., concurring); S. Rep. No. 105-190, at 34 (1998) ("Furthermore, this section imposes liability for specified acts. It does not address the question of liability for persons who manufacture devices or provide services.").

[30] *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 50 (2d Cir. 2019) ("[A]n ISP does not act volitionally when it automatically makes a single copy of content selected by the user in response to a user's request.") (Walker, J., concurring); *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008) ("[A] significant difference exists between making a request to a human employee, who then volitionally operates the copying system to make the copy, and issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct."); *Sheldon v. Plot Commerce*, No. 15-CV-5885-CBA-CPL, 2016 WL 5107072, at *12 (E.D.N.Y. Aug. 26, 2016) (applying *Cartoon Network* and its volitional conduct requirement in the context of a Section 1202 claim).

a party could be liable for copyright infringement regardless of fault or intent, it was reasoned that there should be some element of volition or causation. *Cartoon Network Lp, Lllp v. Csc Holdings, Inc.*, 536 F.3d 121,130 (2nd Cir. 2008). However, Section 1202 is not a strict liability statute and requires knowledge and intent, thus the rationale for imposing a volitional conduct requirement is not applicable. Doing so would add yet another element that the jury must find and lead to confusion on how to separately determine intent, knowledge, and volition.

   c.   Course Hero's reliance on *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412 *4 (2d Cir. Feb. 10, 2026) is also misplaced. The Second Circuit in *McGucken* did not impose a volitional conduct requirement for section 1202 as claimed by Course Hero. The Court only referenced a case in which a party applied an automated process to modify CMI in evaluating whether "Shutterstock had the scienter necessary for liability." *McGucken* supports the fact that courts in the Second Circuit do not require "volitional conduct" for section 1202 claims.

2.   Post objects to Course Hero's proposed instruction that "A party does not engage in volitional conduct when its systems automatically respond to third-party user inputs. For example, the volitional conduct requirement is not satisfied when an internet service provider simply displays user-uploaded material and plays no role in selecting the material to be displayed." The proposed instruction is irrelevant since *Cartoon Network* and *BWP* concern copyright infringement, not violations of section 1202. Moreover, the cited cases do not support the broad conclusion, even under copyright law, that a party does not engage in volitional conduct when its systems automatically respond to third-party user inputs. In *Cartoon Network*, the court declined to find Cablevision liable for copyright infringement when it provided access to remote storage digital video recorders (RS-DVRs) which some customers used to make copies of the plaintiff's programming. The court analogized it to "a store proprietor who charges customers to use a photocopier on his premises, and it seems incorrect to say, without more, that such a proprietor 'makes' any copies that his machines are actually operated by his customers." *Cartoon Network Lp, Lllp v. Csc Holdings, Inc.*, 536 F.3d 121, 131 (2nd Cir. 2008). In *BWP*, there was no direct copyright infringement by an internet service provider that ran a website which allowed users to clip images from other websites and collect them on defendant's site. *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 45 (2d Cir. 2019). However, when a party has a role in the process beyond being a mere passive provider of space where infringement occurs, this transforms them into an active participant in the process of copyright infringement and liable for direct infringement, whether it is automated or not. *Capitol Records, LLC v. ReDigi Inc.*, 934 F.Supp.2d 640, 657 (S.D. N.Y. 2013). In this case, Course Hero is an active participant by encouraging users to upload works, processing the works to prepare previews, and controlling how the works are distributed with different amounts of blurring, depending on the specific user and how many times they have visited the website. *See Arista Records LLC v. Usenet.Com, Inc.*, 633 F.Supp.2d 124, 148 (S.D. N.Y. 2009), *citing Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.*, 982 F.Supp. 503 (N.D.Ohio 1997). Course Hero is not a passive provider but instead designed and operates a system to infringe. See *BWP Media*, 922 F.3d at 49, *citing EMI Christian Music Group, Inc. v. MP3tunes*, 840 F.3d 69, 96 (2d Cir. 2016). Even so, volitional conduct is not a requirement for Section 1202. The jury should decide whether the elements of Section 1202 are met by Course Hero without being misled or confused by an erroneous instruction that is not applicable to the law or facts of this case.

3. Courts have not "consistently rejected the notion that when a defendant removes or alters the CMI of a work-in-suit—or appends false CMI to that work—a separate § 1202 violation is committed for every user who then views that work or to whom it is distributed" as argued by Course Hero in its objection to Post's instruction no. 5 above. In *Preston Woods & Assocs., LLC v. RZ Enters. USA, Inc.*, the defendant was found liable for 11,516 violations for distributing the same work to 11,516 recipients in a blast email. Civ. No. H-16-1427 (S.D. Tex. Nov 8, 2018). Further, Course Hero's characterization of *McClatchey*, in its objection to Post's instruction no. 5 above, that "the AP's stripping of CMI from a copyrighted photograph and distribution of that photograph to its 1,147 news organization Photostream subscribers constituted one 'violative act'" is incorrect. In *McClatchey*, the court acknowledged that the removal of CMI is a separate violation from the distribution. *McClatchey v. Associated Press*, No. 3:05-cv-145, 2007 WL 1630261, at *5 n.2 (W.D. Pa. June 4, 2007); *see also Reilly v. Commerce*, No. 15-cv-05118, 2016 WL 6837895, *10 (SDNY Oct. 31, 2016)(noting that some "cases overlook the actual result in *McClatchey*—which permitted the plaintiff to seek one award for the removal of its CMI in violation of subsection 1202(b)(1) and another for the distribution of the altered photograph in violation of subsection 1202(b)(2) or (b)(3)"). Post is not seeking damages based on the number of users who viewed a work posted to a *static* webpage shown to any and all visitors. Post is properly seeking damages for "each violation of section 1202" in accordance with 17 U.S.C. 1203(c)(3)(B). This includes each time Course Hero provided copyright management information that is false, distributed or imported for distribution copyright management information that is false, intentionally removed or altered any copyright management information, or distributed works knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, is a violation. In this case, Course Hero operates a *dynamic* website that generates bespoke previews for visitors. A preview is not distributed to every user at the same time or even in the same format. In other words, two visitors may attempt to access the same preview, and Course Hero will distribute a different version to each of them based on the user's status visiting the Course Hero website. It is separate distribution to each user when they visit the Course Hero website, customized by Course Hero, with different amounts of blurring, depending on the specific user and how many times they have visited the website. Thus, they are separate violations.

4. Post objects to the instruction that "[a] party does not engage in volitional conduct when its systems automatically respond to third-party user inputs" as an incorrect statement of law and as not applicable to violations of the DMCA. Course Hero's quotation from *BWP Media* concerns direct copyright infringement, not violations of the DMCA.

5. Post objects to this instruction that, "a significant difference exists between making a request to a human employee, who then volitionally operates the copying system to make the copy, and issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct" as incorrect and not applicable to violations of the DMCA. *Cartoon Network* (a case relied on by Course Hero) concerns copyright infringement, not section 1202 violations. In *Sheldon*, the court incorrectly relied on copyright infringement cases in defining the requirements for section 1202 violations.

**Course Hero's Response:**

1. As discussed in more detail in Course Hero's objection to Post's competing Instruction No. 4, *supra*, courts in the Second Circuit have held that volitional conduct is a requirement for a Section 1202 violation. This "volitional conduct" requirement does not impose any additional

elements. Rather, it embodies the *actus reus* of a Section 1202 violation. Post does not dispute that violations of the DMCA require the acts of adding (1202(a)), removing or altering (1202(b)(1)), or distributing (1202(b)(3)) CMI. *See* 17 U.S.C. § 1202. The "volitional conduct" requirement ensures that the party held liable for a violation of Section 1202 is the party that committed those acts—and not some other party. *Cartoon Network* and *BWP* embody precisely this principle, holding that the operation of an automated system is not volitional conduct and is distinct from the acts of users who interact with that system, who perform the *actus reus* of the copyright violation. *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 50-51 (2d Cir. 2019) ("[A]n ISP does not act volitionally when it automatically makes a single copy of content selected by the user in response to a user's request.") (Walker, J., concurring); *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008) ("[A] significant difference exists between making a request to a human employee, who then volitionally operates the copying system to make the copy, and issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct."). That reasoning applies equally here to foreclose Post's assertion that Course Hero violates the DMCA each time its system operates automatically in response to user inputs. *See Sheldon v. Plot Commerce*, No. 15-CV-5885-CBA-CPL, 2016 WL 5107072, at \*12 (E.D.N.Y. Aug. 26, 2016) (applying *Cartoon Network* and its volitional conduct requirement in the context of a Section 1202 claim); *see also* S. Rep. No. 105-190, at 34 (1998) ("Furthermore, this section imposes **liability for specified acts**. It does not address the question of liability for persons who manufacture devices or provide services.") (emphasis added).

2. *Capitol Records, LLC v. ReDigi Inc.* only provides further support for instructing the jury on the volitional conduct requirement. 934 F.Supp.2d 640 (S.D.N.Y. 2013). *ReDigi* cited *Cartoon Network* and expressly applied the volitional conduct requirement, finding it satisfied because the defendant played a "fundamental and deliberate role" in infringement by building "a service where only copyrighted work could be sold" and "affirmatively broker[ing] sales by connecting users who are seeking unavailable songs with potential sellers." *Id.* at 657 (emphasis added). The *ReDigi* court wrote: "The fact that ReDigi's founders programmed their software to choose copyrighted content satisfies the volitional conduct requirement and renders ReDigi's case indistinguishable from those where human review of content gave rise to direct liability." *Id.* Post is free to argue that conduct by Course Hero's software programmers satisfies the volitional conduct requirement. But Post cannot prevent the jury from receiving the correct instruction that a computer system which automatically obeys commands engages in no volitional conduct. *See Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008).

3. Post's assertion is confusing. *McClatchey* did not address the question of whether distributing false CMI under Section 1202(a) is a separate violation from removing CMI under Section 1202(b), as the issue was not disputed. *McClatchey v. Associated Press*, No. 305-CV-145, 2007 WL 1630261, at \*5 n.2 (W.D. Pa. June 4, 2007). But it directly supports Course Hero's position that "'each violation' is best understood to mean 'each violative act performed by Defendant,'" concluding that the defendant "committed only one alleged violative act by distributing the [subject] photograph to its PhotoStream subscribers, even though there were 1,147 recipients." *McClatchey v. Associated Press*, No. 3:05-cv-145, 2007 WL 1630261, at \*6 (W.D. Pa. June 4, 2007). Post attempts an unclear distinction between a "static" webpage and a "dynamic" website. It is free to argue that to the jury, but it is not free to misstate the law. (Post is also wrong that preview webpages are "distributions" under Section 1202, as addressed in more detail under Plaintiff's version of this instruction.)

4. Post does not contest that the *BWP Media* and *Cartoon Network* cases accurately state Second Circuit precedent that a party does not engage in "volitional conduct" when its automatic systems respond to third-party inputs or identify any case law to the contrary. *See BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 50 (2d Cir. 2019) ("[A]n ISP does not act volitionally when it automatically makes a single copy of content selected by the user in response to a user's request.") (Walker, J., concurring); *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008) ("[A] significant difference exists between making a request to a human employee, who then volitionally operates the copying system to make the copy, and issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct."). As discussed above in Course Hero's response to Post's first objection, the volitional conduct requirement applies with equal force to alleged Section 1202 violations as it does to allegations of copyright infringement. *See Sheldon v. Plot Commerce*, No. 15-CV-5885-CBA-CPL, 2016 WL 5107072, at *12 (E.D.N.Y. Aug. 26, 2016) (applying *Cartoon Network* and its volitional conduct requirement in the context of a Section 1202 claim).

5. See response to objection 4, *supra*.

**INSTRUCTION NO. 6: MEANING OF CMI "CONVEYED IN CONNECTION WITH" A WORK IN THE DMCA (17 U.S.C. §1202)**
**[DEFENDANT'S PROPOSED INSTRUCTION]**

A generic copyright notice at the bottom of a web page is not "conveyed in connection with" material on that web page unless it is associated with or linked with that particular material.[31]

**Post's Objections:**

Post objects to this Instruction (no. 6) as is not supported by controlling case law and is contrary to this Court's findings in the Order denying Course Hero's Motion to Dismiss. In denying Course Hero's Motion to Dismiss, this Court found that "neither *SellPoolSupplies.com*—which spends only two paragraphs discussing the false CMI claim at issue—nor any of the other cases Defendant relies on explain how requiring information in a copyright notice to 'suggest that it was associated with or linked to' the work in question... can be reconciled with the DMCA's legislative history, in which legislators expressed their intent that the phrase 'conveyed' be understood in the 'broadest sense' possible." Dkt. 86 at p. 8. "The term 'conveyed' in section 1202(c) 'is used in its broadest sense and is not meant to require any type of transfer, physical or otherwise, of the information. It merely requires that the information be accessible in conjunction with, or appear with, the work being accessed.'" *Pierson v. Infinity Music & E'tm't, Inc.*, 300 F.Supp.3d 390, 394 (D. Conn. 2018). Course Hero continues to rely on non-precedential decisions from the other districts for its narrow interpretation. In *FurnitureDealer.Net*, the court acknowledged the lack of a universal conclusion on the interpretation of "conveyed in connection with" and recognized the broader interpretations used by courts in the Second Circuit. As discussed in *FurnitureDealer.Net*, "Other courts have held that 'the term 'conveyed' is used in its broadest sense and is not meant to require any type of transfer, physical or otherwise, of the information. It merely requires that the information be accessible in conjunction with, or appear with, the work being accessed." *FurnitureDealer.Net*, 2022 WL 891473, at *19, *citing to Janik v. SMG Media, Inc.*, 2018 WL 345111, at *12 (S.D.N.Y. Jan. 10, 2018) (quoting S. Rep. No. 105–190 at 35 (1998)). *FurnitureDealer.Net* also noted this court's decision in *Pierson v. Infinity Music & E'tm't, Inc.*, "holding the terms of use linked at the bottom of the webpage was conveyed in connection with the works." *FurnitureDealer.Net*, 2022 WL 891473, at *19, *citing Pierson*, 300 F.Supp.3d 390, 395-96 (D. Conn. 2018). As in *Janik*, *Pierson* held that "The term 'conveyed' in section 1202(c) 'is used in its broadest sense" and "merely requires that the information be accessible in conjunction with, or appear with, the work being accessed.'" *Pierson*, 300 F.Supp.3d at 394.

---

[31] *See, e.g., SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona, Inc.*, 344 F. Supp. 3d 1075, 1079-1083 (D. Ariz. 2018) ("*SellPoolSuppliesOnline.com I*") (holding that a copyright notice stating "Copyright 2015 We Fix Ugly Pools. All Rights Reserved" at the bottom of a website was not false CMI); *FurnitureDealer.Net, Inc. v. Amazon.com, Inc.*, No. CV 18-232 (JRT/HB), 2022 WL 891473, at *20 (D. Minn. Mar. 25, 2022) (holding that a website copyright notice at the bottom of the webpage was not false CMI); *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1062 (N.D. Cal. 2022) (dismissing false CMI claim under Section 1202(a) where "Meta's allegedly false CMI is '[a] [generic] copyright tag on the bottom of each Facebook user page,' separated from the rest of the content on the webpage, and is not located on or next to Logan's photos"); *Smith v. Oceanic Pres. Soc'y*, No. 2:24-CV-04784-AB-RAO, 2025 WL 3256017, at *3 (C.D. Cal. Apr. 2, 2025) (holding defendant, Netflix, Inc., "would not be liable for displaying false CMI where they have included a generic copyright notice, such as the 'N' logo" superimposed on a documentary).

**Course Hero's Response:**

Plaintiff is alleging that the generic Course Hero copyright notice, "Copyright © 2021, Course Hero, Inc." is false CMI conveyed in connection with study resources displayed on the Course Hero website. But courts have routinely held that generic copyright notices at the bottom of a webpage are not "conveyed in connection with" material on the webpage unless it is associated with or linked with that particular material. *See, e.g.*, *SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona, Inc.*, 344 F. Supp. 3d 1075, 1079-1083 (D. Ariz. 2018) ("*SellPoolSuppliesOnline.com I*") (holding that a copyright notice stating "Copyright 2015 We Fix Ugly Pools. All Rights Reserved" at the bottom of a website was not false CMI); *FurnitureDealer.Net, Inc. v. Amazon.com, Inc.*, No. CV 18-232 (JRT/HB), 2022 WL 891473, at *20 (D. Minn. Mar. 25, 2022) (holding that a website copyright notice at the bottom of the webpage was not false CMI); *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1062 (N.D. Cal. 2022) (dismissing false CMI claim under Section 1202(a) where "Meta's allegedly false CMI is '[a] [generic] copyright tag on the bottom of each Facebook user page,' separated from the rest of the content on the webpage, and is not located on or next to Logan's photos"); *Smith v. Oceanic Pres. Soc'y*, No. 2:24-CV-04784-AB-RAO, 2025 WL 3256017, at *3 (C.D. Cal. Apr. 2, 2025) (holding defendant, Netflix, Inc., "would not be liable for displaying false CMI where they have included a generic copyright notice, such as the 'N' logo" superimposed on a documentary); *Alan Ross Mach. Corp. v. Machinio Corp.*, No. 17-CV-3569, 2019 WL 1317664, at *3 (N.D. Ill. Mar. 22, 2019) ("[A] general copyright notice on the bottom of a webpage is not CMI 'conveyed in connection with' photographs and listings contained on those webpages.").

**INSTRUCTION NO. 7: NO DMCA VIOLATION EXISTS WHERE THE**
**WORKS ARE NOT IDENTICAL**
**[DEFENDANT'S PROPOSED INSTRUCTION]**

No DMCA violation exists where Course Hero's output is not identical to Post's work.[32] In other words, a Section 1202(b) violation does not occur unless CMI is removed from a work that is otherwise copied in its entirety. [33]

**Post's Objections:**

1.  Post objects to this instruction as legally incorrect to the extent Course Hero contends that an output that "is not identical" is a derivative work. "In order for a work to qualify as a derivative work it must be independently copyrightable." *Woods v. Bourne Co.*, 60 F.3d 978, 991 (2nd Cir. 1995). "[T]here must be at least some substantial variation from the underlying work, not merely a trivial variation." *Id., citing L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976) (*en banc*). Even if Course Hero is now withdrawing its contention that it makes derivative works, the proposed instruction is disputed as legally incorrect because the case law does not support a broad conclusion that any difference in the work beyond the absence of CMI negates liability under the DMCA, or that no DMCA violation exists where the material that lacks CMI does not reproduce substantially the entirety of Post's work.

2.  Post objects to this instruction as not supported by the cited law and irrelevant to the facts of this case. None of the cases cited by Course Hero support this instruction or its applicability to this case. All of the cases cited by Course Hero concern new and distinct works that were created in violation of a copyright without adding CMI -- not works from which CMI was removed, blurred, or obscured. In *Kirk*, specifically, the Court found that "Defendant did not make identical copies of Plaintiff's works and then remove the engraved CMI." Instead, in that case, the Defendant manufactured a substantially similar work without adding CMI to give proper credit to the plaintiff. In *Doe*, the defendants distributed computer code, which was "a modified format, variation, or functional equivalent of the licensed code," without attribution to the plaintiff. The defendants in that case did not remove or blur CMI. In *Anderson*, the court dismissed a DMCA claim "because failing to affix CMI to a different work is not removal under Section 1202." These cases do not hold or otherwise support an instruction that no DMCA violation exists where the material that lacks CMI does not reproduce substantially the entirety of work.

3.  Post objects to this instruction because Course Hero did not raise this defense that it does not reproduce substantially the entirety of Post's work and repeatedly disputed that it creates derivative works. In its responses and objections to Plaintiff's First Set of Requests for Admissions (no. 1-70), served on March 23, 2023, Course Hero stated eight separate times that

---

[32] *Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. 20-cv-1931-DMG (EX), 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) ("even where the underlying works are similar, courts have found that no DMCA violation exists where the works are not identical"); *Doe 1 v. GitHub, Inc.*, No. 22-CV-06823-JST, 2024 WL 1643691, at *2 (N.D. Cal. Apr. 15, 2024) (rejecting motion for reconsideration because there was no allegation that any output was identical to any plaintiff's work in its entirety, so there could be no "removal" of CMI for purposes of DMCA); *Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956, 971 (N.D. Cal. 2024) ("Because there are no allegations that any output from Stable Diffusion was identical to a plaintiff's work, the DMCA section 1202(b) claim fails.").

[33] *Id.*

46

"Course Hero denies that it makes derivative works." Course Hero may not, nearly three years later, attempt to create a record contradicting its Rule 36 admissions. *See Connecticut v. Sandoz, Inc.*, No. 3:20-CV-00802-MPS, 2025 WL 2028539, at *8 (D. Conn. July 21, 2025), *citing O'Bryant v. Allstate Ins. Co.*, 107 F.R.D. 45, 48 (D. Conn. 1985).

**Course Hero's Response:**

1. Post's reliance on case law related to the creation of a derivative work is inapplicable here. The relevant case law is clear that a Section 1202(b) violation does not occur unless CMI is removed from a work that is otherwise "copied 'in its entirety.'" *Doe 1 v. GitHub, Inc.*, No. 22-CV-06823-JST, 2024 WL 1643691, at *2 (N.D. Cal. Apr. 15, 2024) ("GC2 is inapposite as it concerned the removal of CMI from artwork that was copied 'in its entirety.' . . . Plaintiffs only alleged that snippets of code were reproduced, which is distinguishable."). In other words, aside from the absence of CMI, the work in suit must be substantially "identical" to the copyrighted work to support a claim under Section 1202(b). *Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. 20-cv-1931-DMG (EX), 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) ("even where the underlying works are similar, courts have found that no DMCA violation exists where the works are not identical"); *Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956, 971 (N.D. Cal. 2024) ("Because there are no allegations that any output from Stable Diffusion was identical to a plaintiff's work, the DMCA section 1202(b) claim fails."). Here, Post alleges that the "blurring" of a Course Hero preview webpage constitutes a "violation" under the DMCA. Course Hero intends to argue that its webpages constitute distinct, non-identical works, which do not violate the DMCA. As such, this instruction is relevant and should be given to the jury.

2. The instruction is legally correct and relevant. As explained above, the case law cited by Course Hero demonstrates that no DMCA violation exists where the alleged materials do not reproduce substantially the entirety of plaintiff's work. *See* Course Hero's response to Objection 1, *supra*. The distinctions Post draws for each of those cases are immaterial. *Andersen* and *GitHub* admittedly involved completely different outputs, code and computer-generated images. But the same principle remains in both: there is no Section 1202(b) violation unless the works are identical. Because the evidence will show Course Hero did not reproduce "identical copies of Plaintiff's works and then remove the engraved CMI," this instruction is proper. *See Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. 20-cv-1931-DMG (EX), 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) (italics omitted).

3. Course Hero disputes that the instruction clarifying that Course Hero does not violate the DMCA unless the material that lacks CMI reproduces substantially the entirety of Post's work constitutes an improper defense to Post's Section 1202(b) claim. *See* cases cited in Course Hero's response to Objection 1, *supra*. It is Post's burden to demonstrate a violation of Section 1202(b). What constitutes a "violation" under the statute is a proper instruction to the jury in this context.

## INSTRUCTION NO. 8: PRELIMINARY INSTRUCTION – COPYRIGHT
### [JOINT PROPOSAL]

Post also claims that Course Hero has committed copyright infringement as to five works. Course Hero denies infringing the copyright, contends that the copyright is invalid, and asserts affirmative defenses. To help you understand the evidence in this aspect of the case, I will explain some of the legal terms you will hear during this trial.

### DEFINITION OF COPYRIGHT

The owner of a copyright has the right to exclude any other person from reproducing, distributing, performing, displaying, or preparing derivative works from the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, or computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

### HOW COPYRIGHT IS OBTAINED

Copyright automatically attaches to a work the moment the work is fixed in any tangible medium of expression. The owner of the copyright may also apply to register the copyright by completing a registration form and depositing a copy of the copyrighted work with the Copyright Office. After determining that the material deposited constitutes copyrightable subject matter and that certain legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner. Registration is not required in order to obtain copyright protection.

### PLAINTIFF'S BURDEN OF PROOF

In this case, Post contends that Course Hero has infringed Post's copyrights. Post has the burden of proving by a preponderance of the evidence that Post is the owner of the copyright, that Course Hero copied original expression from the copyrighted work, and that Course Hero caused the infringement.[34] Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.[35]

---

[34] Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 17.1 (2025).
[35] *Id.*

## PROOF OF COPYING

To prove that Course Hero copied Post's work, Post may use direct or indirect evidence.[36] Direct evidence includes an admission that Course Hero copied Post's work.[37] Indirect evidence is evidence that raises the inference of copying, either through evidence that Course Hero had access to Post's copyrighted work and that there are substantial similarities between Course Hero's work and Post's copyrighted work; or evidence that there are striking similarities between Course Hero's work and Post's copyrighted work.[38]

Post must also prove that Course Hero's copying of the copyrighted work was substantial.[39] In determining whether Course Hero's copying of the copyrighted work was substantial, you may consider how important the copied portion was to the copyrighted work as a whole.[40]

## LIABILITY FOR INFRINGEMENT

One who causes a copyrighted work to be reproduced, publicly distributed, or publicly displayed without authority from the copyright owner during the term of the copyright infringes the copyright.

A person may be liable for another person's infringement by vicariously infringing or contributorily infringing.[41]

## VICARIOUS INFRINGEMENT

A person is liable for copyright infringement by another if the person has profited directly from the infringing activity and had the right and ability to supervise or control the infringing activity, whether or not the person knew of the infringement.[42]

## CONTRIBUTORY INFRINGEMENT

A person is liable for copyright infringement by another if the person knows or should have known of the infringing activity and induces or materially contributes to the activity.[43]

## DEFENSES TO INFRINGEMENT

Course Hero contends that there is no copyright infringement. There is no copyright infringement if Course Hero made fair use of the copyrighted work by reproducing copies for purposes such as criticism, comment, news reporting, teaching, scholarship, or research.[44]

---

[36] Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, § 17.1.
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*

Course Hero also contends that it is not liable for copyright infringement under Section 512(c) of the DMCA.[45]

Section 512(c) is a separate section from Section 1202 and provides online service providers with a "safe harbor" from copyright infringement.[46]

I will now explain these claims and defenses in more detail.

*Source*: Model Civ. Jury Instr. 9th Cir. 17.1 (2025).

---

[45] 17 U.S.C. § 512(c).

[46] *Id.*

**INSTRUCTION NO. 9: COPYRIGHT – DEFINED**
**[JOINT PROPOSAL]**

Copyright is the exclusive right to copy.[47] This right to copy includes the exclusive rights to, and to authorize others to:

      (1) reproduce the copyrighted work in copies;

      (2) prepare derivative works based upon the copyrighted work;

      (3) distribute copies of the copyrighted work; and

      (4) publicly display the copyrighted work.[48]

It is the owner of a copyright who may exercise these exclusive rights.[49] The term "owner" includes the author or assignee of the copyrighted work.[50]

In general, copyright law protects against reproduction, adaptation, and public distribution of identical or substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce these rights to exclude others in an action for copyright infringement.[51]

---

[47] Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, § 17.2 (Copyright – Defined) (17 U.S.C. § 106) (last updated March 2025).
[48] *Id.*
[49] Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, § 17.2.
[50] *Id.*
[51] *Id.*

**INSTRUCTION NO. 10: COPYRIGHT INFRINGEMENT ELEMENTS – OWNERSHIP AND COPYING**
**[COMPETING; PLAINTIFF'S PROPOSED INSTRUCTION]**

Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On Post's copyright infringement claim, Post has the burden of proving by a preponderance of the evidence that:

1.  Post is the owner of a valid copyright; and

2.  Course Hero copied original expression from the copyrighted work.

If you find that Post has proved both of these elements of ownership and copying, your verdict should be for Post. If, on the other hand, you find that Post has failed to prove either of these elements, your verdict should be for Course Hero.

*Source*: Model Civ. Jury Instr. 9th Cir. 17.5 (2025).

**Course Hero's Objection:**
Course Hero objects to this instruction's omission of the language explaining the requirement to find volitional conduct that caused the copying, and proposes an alternative instruction. The second element should include the following based on Second Circuit case law: "To find that Course Hero copied a copyrighted work, you must find that Course Hero engaged in volitional conduct that caused the copying. As explained earlier, a computer system which automatically obeys commands engages in no volitional conduct." *See Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008) ("When there is a dispute as to the author of an allegedly infringing instance of reproduction, *Netcom* and its progeny direct our attention to the volitional conduct that causes the copy to be made. . . . volitional conduct is an important element of direct liability."); *id.* ("[A] significant difference exists between making a request to a human employee, who then volitionally operates the copying system to make the copy, and issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct.").

*Capitol Records., LLC v. ReDigi Inc.,* 934 F.Supp.2d 640 (S.D.N.Y. 2013) offers an example of this principle in action. There, the court found on summary judgment that "[t]he fact that ***ReDigi's founders programmed their software to choose copyrighted content satisfies the volitional conduct requirement*** and renders ReDigi's case indistinguishable from those where human review of content gave rise to direct liability." *Id.* at 657 (emphasis added). Post is free to argue that conduct by Course Hero's software programmers satisfies the volitional conduct requirement. But Post cannot prevent the jury from receiving the correct instruction that a computer system which automatically obeys commands engages in no volitional conduct. *See Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008).

**Post's Response:**
The proposed instruction tracks the 9th Circuit model instruction which does not discuss volitional conduct. *Cartoon Network* does not support the broad instruction that "a computer system which

automatically obeys commands engages in no volitional conduct." In *Cartoon Network*, the court declined to find Cablevision liable for copyright infringement when it provided access to remote storage digital video recorders (RS-DVRs) which some customers used to make copies of the plaintiff's programming. The court analogized it to "a store proprietor who charges customers to use a photocopier on his premises, and it seems incorrect to say, without more, that such a proprietor 'makes' any copies when his machines are actually operated by his customers." *Cartoon Network Lp, Lllp v. Csc Holdings, Inc.*, 536 F.3d 121, 131 (2nd Cir. 2008). However, when a party has a role in the process beyond being a mere passive provider of space where infringement occurs, this transforms them into an active participant in the process of copyright infringement, whether it is automated or not. *Capitol Records, LLC v. ReDigi Inc.*, 934 F.Supp.2d 640, 657 (S.D. N.Y. 2013). In this case, Course Hero is an active participant by encouraging users to upload works, processing the works to prepare previews, and controlling how the works are distributed with different amounts of blurring, depending on the specific user and how many times they have visited the website. *See Arista Records LLC v. Usenet.Com, Inc.*, 633 F.Supp.2d 124, 148 (S.D. N.Y. 2009), *citing Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.*, 982 F.Supp. 503 (N.D.Ohio 1997). Course Hero is not a passive provider but instead designed and operates a system to infringe. See *BWP Media*, 922 F.3d at 49, *citing EMI Christian Music Group, Inc. v. MP3tunes*, 840 F.3d 69, 96 (2d Cir. 2016).

**INSTRUCTION NO. 10: COPYRIGHT INFRINGEMENT ELEMENTS – OWNERSHIP AND COPYING**
**[COMPETING; DEFENDANT'S PROPOSED INSTRUCTION]**

Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On Post's copyright infringement claim, Post has the burden of proving by a preponderance of the evidence that:

1.  Post is the owner of a valid copyright; and

2.  Course Hero copied original expression from the copyrighted work. To find that Course Hero copied a copyrighted work, you must find that Course Hero engaged in volitional conduct that caused the copying.[52] As explained earlier, a computer system that automatically obeys commands engages in no volitional conduct.[53]

If you find that Post has proved both of these elements of ownership and copying, your verdict should be for Post. If, on the other hand, you find that Post has failed to prove either of these elements, your verdict should be for Course Hero.

*Source*: Model Civ. Jury Instr. 9th Cir. 17.5 (2025).

**Post's Objection:**

Post objects to Course Hero's additional language which is inconsistent with the case law, the model instructions, and includes a legal argument. *Cartoon Network* does not support the broad instruction that "a computer system which automatically obeys commands engages in no volitional conduct." In *Cartoon Network*, the court declined to find Cablevision liable for copyright infringement when it provided access to remote storage digital video recorders (RS-DVRs) which some customers used to make copies of the plaintiff's programming. The court analogized it to "a store proprietor who charges customers to use a photocopier on his premises, and it seems incorrect to say, without more, that such a proprietor 'makes' any copies when his machines are actually operated by his customers." *Cartoon Network Lp, Lllp v. Csc Holdings, Inc.*, 536 F.3d 121, 131 (2nd Cir. 2008). However, when a party has a role in the process beyond being a mere passive provider of space where infringement occurs, this transforms them into an active participant in the process of copyright infringement, whether it is automated or not. *Capitol Records, LLC v. ReDigi Inc.*, 934 F.Supp.2d 640, 657 (S.D. N.Y. 2013). In this case, Course Hero is an active participant by encouraging users to upload works, processing the works to prepare previews, and controlling how the works are distributed with different amounts of blurring, depending on the specific user and how many times they have visited the website. *See Arista*

---

[52] *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008) ("When there is a dispute as to the author of an allegedly infringing instance of reproduction, *Netcom* and its progeny direct our attention to the volitional conduct that causes the copy to be made. . . . volitional conduct is an important element of direct liability.").

[53] *Id.* ("[A] significant difference exists between making a request to a human employee, who then volitionally operates the copying system to make the copy, and issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct.").

*Records LLC v. Usenet.Com, Inc.*, 633 F.Supp.2d 124, 148 (S.D. N.Y. 2009), *citing Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.*, 982 F.Supp. 503 (N.D.Ohio 1997). Course Hero is not a passive provider but instead designed and operates a system to infringe. See *BWP Media*, 922 F.3d at 49, *citing EMI Christian Music Group, Inc. v. MP3tunes*, 840 F.3d 69, 96 (2d Cir. 2016).

**Course Hero's Response:**

The proposed instruction regarding the volitional conduct requirement is supported by controlling case law in the Second Circuit. *See Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008).

*Capitol Records, LLC v. ReDigi Inc.* does not support Post's contention that "when a party has a role in the process beyond being a mere passive provider of space where infringement occurs, this transforms them into an active participant in the process of copyright infringement, whether it is automated or not." That proposition appears nowhere in *ReDigi*. Instead, the court in *ReDigi* found that playing a "***fundamental and deliberate role***" in infringement—by building "a service where *only* copyrighted work could be sold" and "affirmatively broker[ing] sales by connecting users who are seeking unavailable songs with potential sellers"—transformed a company into an "active participant" in the infringement. 934 F.Supp.2d 640, 657 (S.D.N.Y. 2013) (emphasis added).

In fact, *ReDigi* provides further support for the legal standard that copyright infringement requires volitional conduct, and a computer system that automatically obeys commands engages in no volitional conduct. There, the court found that "[t]he fact that ***ReDigi's founders programmed their software to choose copyrighted content satisfies the volitional conduct requirement*** and renders ReDigi's case indistinguishable from those where human review of content gave rise to direct liability." *Id.* (emphasis added). Post is free to argue that conduct by Course Hero's software programmers satisfies the volitional conduct requirement. But Post cannot prevent the jury from receiving the correct instruction that a computer system that automatically obeys commands engages in no volitional conduct. *See Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008).

## INSTRUCTION NO. 11: OWNERSHIP OF VALID COPYRIGHT
## [JOINT PROPOSAL]

Post is the owner of a valid copyright if Post proves by a preponderance of the evidence that:

1. the work is original, meaning that it was independently created[54] by the author by use of at least some minimal creativity; and

2. Post is the author or creator of the work, or Post received a transfer of the copyright from the author.[55]

*Sources*: Model Civ. Jury Instr. 9th Cir. 17.6, 17.14 (2025); 3B Fed. Jury Prac. & Instr. § 160:22 (6th ed.); 17 U.S.C.A. § 201(a).

---

[54] Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, § 17.14 (2025).
[55] Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, § 17.6 (2025).

**INSTRUCTION NO. 12: COPYRIGHT INFRINGEMENT – COPYRIGHT
REGISTRATION CERTIFICATE
[JOINT PROPOSAL]**

A copyright owner may obtain a certificate of registration from the Copyright Office. The evidence in this case includes Exhibits ___, that include five (5) certificates of copyright registration from the Copyright Office.

If you find that the certificates of copyright registration were made within five (5) years after first publication of Post's work, you must presume that there is a valid copyright in that work and presume to be true the facts stated in the certificate. Course Hero has the burden of disproving these facts.

If you find that the evidence presented by Course Hero disproves either the validity of the copyright or any of the facts stated in the registration certificate, you may find that Post has failed to show ownership of a copyrightable work.[56]

---

[56] Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, § 17.7 (17 U.S.C. § 410(c)).

**INSTRUCTION NO. 13: COPYRIGHT INTERESTS – AUTHORSHIP**
**[JOINT PROPOSAL]**

The creator of an original work is called the author of that work.[57] An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being.[58]

Others may help or may make valuable or creative contributions to a work.[59] However, such contributors cannot be the authors of the work unless they caused the work to come into being.[60] One must translate an idea into a fixed, tangible expression in order to be the author of the work.[61] Merely giving an idea to another does not make the giver an author of a work embodying that idea.[62]

---

[57] Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, § 17.8 (17 U.S.C. § 201(a)); *see also* Jury Instructions, *Censor v. ASC Techs. of Connecticut, LLC*, No. 3:11-cv-005972 (VLB), ECF No. 109 at 11 (D. Conn. Nov. 26, 2012) (same).

[58] Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, § 17.8 (17 U.S.C. § 201(a)).

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.*

## INSTRUCTION NO. 14: COPYRIGHT INTERESTS – JOINT AUTHORS
## [JOINT PROPOSAL]

A copyright owner is entitled to exclude others from copying a joint work. A joint work is a work prepared by two or more authors.[63] At the time of the joint work's creation, a joint work must have two or more authors, and:

1.   each author must have made a substantial and valuable contribution to the work;

2.   each author must have intended that his or her contribution be merged into inseparable or interdependent parts of a unitary whole;

3.   each author must have contributed material to the joint work which could have been independently copyrighted; and

4.   each author must be a person to whom the work owes its origins and who superintended the whole work.[64]

In the absence of an agreement between themselves to the contrary, each author of a joint work shares an undivided interest in the entire joint work.[65] A copyright owner in a joint work may enforce the right to exclude others in an action for copyright infringement.[66]

In deciding whether parties intended their contributions to be merged in element 2, above, you may consider whether the parties signed a written agreement stating that the copyright in the work is to be jointly owned.[67] If there is no such agreement, you may consider whether:

a.   both parties exercised control over the work;

b.   both parties' actions showed that they shared the intent to be co-authors when they were creating the work, for instance, by publicly stating that the work was their shared project; and

c.   the audience-appeal of the work depends on the contribution of each party so that the share of each party's contribution to the work's success cannot be appraised. [68]

In making a substantial and valuable contribution to a work, each author's contribution to the joint work need not be equal.[69]

---

[63] Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, § 17.9 (17 U.S.C. §§ 101, 201(a)).
[64] Id.
[65] Id.
[66] Id.
[67] Id.
[68] Id.
[69] Id.

A written agreement stating the copyright in the work is to be jointly owned may show that each author of a joint work intended that his or her contribution be merged into inseparable or interdependent parts of a unitary whole.[70]

---

[70] *Id.*

## INSTRUCTION NO. 15: COPYRIGHT INTERESTS – WORK MADE FOR HIRE BY EMPLOYEE
## [JOINT PROPOSAL]

A work made for hire is one that is prepared by an employee within the scope of employment.[71]

A work is made for hire within the scope of employment if:

      1.      it is the kind of work the employee is employed to create;

      2.      it occurs substantially within the authorized time and space limits; and

      3.      it is made, at least in part, for the purpose of serving the employer.[72]

The employer is considered to be the author of the work made for hire. The employer owns the copyright unless the employer and employee have agreed in writing that the employee is the owner.[73]

A work for hire is also a work specially ordered or commissioned for use as a contribution to a collective work, as a supplementary work, as a compilation, as an instructional text, as a test, or as answer material for a test, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

A copyright owner of a work made for hire may enforce the right to exclude others in an action for copyright infringement.[74]

---

[71] *Estate of Kauffmann v. Rochester Inst. of Tech.*, 932 F.3d 74, 77 (2d Cir. 2019) ("A work made for hire is either: (1) a work prepared by an employee within the scope of his or her employment; or (2) a work specially ordered or commissioned for use as a contribution to a collective work . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.").

[72] *Restatement (Second) of Agency* 228 (1958); *see also Cmty. for Non–Creative Violence v. Reid*, 490 U.S. 730, 739-40 (1989) (citing Section 228 of Restatement (Second) of Agency in support of its conclusion that Congress intended to incorporate agency law definitions in 17 U.S.C. § 101(1)); *Shaul v. Cherry Valley–Springfield Cent. Sch. Dist.*, 363 F.3d 177, 186 (2d Cir. 2004).

[73] 17 U.S.C. § 201(b) ("In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.").

[74] *Id.*

**INSTRUCTION NO. 16: COPYING**
**[JOINT PROPOSAL]**

Post has the burden of proving that Course Hero copied original elements from Post's copyrighted work.

Post can prove that Course Hero copied from the work by proving by a preponderance of the evidence that Course Hero had access to Post's copyrighted work and by proving by a preponderance of the evidence that there is a striking similarity between Course Hero's work and Post's copyrighted work.[75] If Post fails to prove that Course Hero copied Post's work, your verdict should be for Course Hero.[76]

*Sources*: Model Civ. Jury Instr. 9th Cir. 17.17 (2025).

---

[75] Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, § 17.17 (2025).
[76] *Id.*

**INSTRUCTION NO. 17: VICARIOUS COPYRIGHT INFRINGEMENT**
**[JOINT PROPOSAL]**

A defendant may also be vicariously liable for the copyright infringement of another. If you find that a third party infringed Post's copyright, you must determine whether Course Hero vicariously infringed that copyright. Post has the burden of proving each of the following elements by a preponderance of the evidence:

1. Course Hero directly benefited financially from the infringing activity of a third party;

2. Course Hero had the right and ability to supervise and control the infringing activity of the third party; and

3. Course Hero failed to exercise that right and ability.

If you find that Post has proved each of these elements, your verdict should be for Post if you also find that a third party infringed Post's copyright. If, on the other hand, Post has failed to prove any of these elements, your verdict should be for Course Hero.

*Source:* Model Civ. Jury Instr. 9th Cir. 17.20 (2025).

## INSTRUCTION NO. 18: CONTRIBUTORY COPYRIGHT INFRINGEMENT
## [JOINT PROPOSAL]

Course Hero may be liable for copyright infringement engaged in by another if it knew or had reason to know of the infringing activity and intentionally induced or materially contributed to that infringing activity.

If you find that a third party infringed Post's copyright, you must determine whether Course Hero contributorily infringed that copyright. Post has the burden of proving both of the following elements by a preponderance of the evidence:

First, Course Hero knew or had reason to know of the infringing activity of a third party; and

Second, Course Hero intentionally induced or materially contributed to the third party's infringing activity.

Course Hero's intent to induce the infringing activity must be shown by clear expression of that intent or other affirmative steps taken by Course Hero to encourage the infringing activity.[77]

If you find that a third party infringed Post's copyright and you also find that Post has proved both of these elements, your verdict should be for Post. If, on the other hand, Post has failed to prove either or both of these elements, your verdict should be for Course Hero.

*Source:* Model Civ. Jury Instr. 9th Cir. 17.21 (2025).

**<u>Course Hero's Objection:</u>**
Course Hero objects to this instruction to the extent that it does not account for the Supreme Court's forthcoming decision in *Cox Communications, Inc. v. Sony Music Entertainment*, No. 24-171 (U.S. filed June 30, 2025).

---

[77] *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919 (2005) ("We hold that one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties.").

**INSTRUCTION NO. 19: COPYRIGHT – AFFIRMATIVE DEFENSE – FAIR USE**
**[JOINT PROPOSAL]**

One who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner. Such use of a copyrighted work is called a fair use.[78] The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.

Course Hero contends that it made fair use of the copyrighted work for the purpose of teaching or scholarship. Course Hero has the burden of proving this defense by a preponderance of the evidence.

In determining whether the use made of the work was fair, you should consider the following factors:

    (1) the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes;

    (2) the nature of the copyrighted work;

    (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

    (4) the effect of the use upon the potential market for or value of the copyrighted work.

If you find that Course Hero has proved by a preponderance of the evidence that Course Hero made a fair use of Post's work, your verdict should be for Course Hero.

---

[78] Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, § 17.22; 17 U.S.C. § 107.

**INSTRUCTION NO. 20: AFFIRMATIVE DEFENSE – DMCA SAFE
HARBOR (17 U.S.C. § 512(c))
[COMPETING; PLAINTIFF'S PROPOSED INSTRUCTION]**

Course Hero contends that it is a service provider and therefore is not liable for copyright infringement because the infringement was caused by information residing on Course Hero's systems at the direction of users.

Course Hero is eligible to use this defense if Course Hero:

1. is a service provider of network communication services, online services, or network access;
2. adopted, reasonably implemented, and informed users of a policy to terminate users who are repeat copyright infringers;
3. designated an agent to receive notifications of claimed infringement, and made the agent's name, phone number, and email address available on its website and to the Copyright Office; and
4. is facing liability for copyright infringement based on information residing on Course Hero's systems or networks at the direction of users. This defense does not apply if the service provider plays a sufficiently active role in the process by which material appears on its platform such that, as a result, its storage and display of infringing material is no longer meaningfully at the user's direction.

Course Hero must prove the above elements by a preponderance of the evidence to prevail on this affirmative defense.

Post can show that Course Hero has lost entitlement to the safe harbor if Post proves one of the following by a preponderance of the evidence:

1. Course Hero (a) had actual knowledge that the material or activity on the system or network was infringing, or (b) was aware of facts or circumstances from which specific infringing activity was apparent, or (c) upon obtaining knowledge or awareness, failed to act expeditiously to remove or disable access to the material; or
2. Course Hero received a financial benefit directly attributable to the infringing activity and had the right and ability to control the infringing activity; or
3. Course Hero, upon receiving a valid notification of claimed infringement, did not respond expeditiously to remove, or disable access to, the material that was claimed to be infringing or to be the subject of infringing activity.

The difference between actual and red flag knowledge is a subjective and an objective standard. In other words, the actual knowledge provision turns on whether the provider actually or 'subjectively' knew of specific infringement, while the red flag provision turns on whether the provider was subjectively aware of facts that would have made the specific infringement 'objectively' obvious to a reasonable person.

I will now explain the meaning of some of these terms in greater detail below.

66

*Source:* Model Civ. Jury Instr. 9th Cir. 17.32 (2025); 17 U.S.C. § 512(c); *Capitol Records, LLC v. Vimeo, Inc.*, 125 F.4th 409, 419 (2d Cir. 2025); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 31 (2d Cir. 2012); *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *8 (2d Cir. Feb. 10, 2026).

**Course Hero's Objections:**

1. Course Hero objects to the omission of the Second Circuit requirement that actual or red flag knowledge must be of specific infringing material from the instruction. The instruction should clarify that the actual knowledge or red flag knowledge must be of the "specific" infringing material. *See Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 31 (2d Cir. 2012) ("the actual knowledge provision turns on whether the provider actually or 'subjectively' knew of specific infringement, while the red flag provision turns on whether the provider was subjectively aware of facts that would have made the specific infringement 'objectively' obvious to a reasonable person."); *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 99 (2d Cir. 2016) ("In *Viacom*, we made clear that actual and red flag knowledge under the DMCA ordinarily must relate to 'specific infringing material.'").

2. Course Hero further objects to Post's proposed instruction that "[t]his defense does not apply if the service provider plays a sufficiently active role in the process by which material appears on its platform such that, as a result, its storage and display of infringing material is no longer meaningfully at the user's direction." This language does not help the jury understand how to decide what constitutes a "sufficiently active role." Including this ambiguous instruction would unfairly prejudice Course Hero. To the extent any revisions are required in view of the Second Circuit's decision in *McGucken*, the instruction should include the following:

   > Service providers can review and screen user content before they store it on their platform without becoming ineligible for safe harbor, particularly where the ability to exert control over the content that appears on the platform is necessarily limited by the sheer volume of uploaded user content.[79] On the other hand, this defense does not apply where the service provider imposes its own aesthetic, editorial, or marketing judgment on a case-by-case basis through extensive, manual, and substantive front-end screening to determine which user uploads it accepts.[80]

---

[79] *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *8 (2d Cir. Feb. 10, 2026) ("Our caselaw also makes clear that under § 512(c), **service providers can review and screen user content before they store it on their platform without becoming ineligible for safe harbor, particularly where the ability to exert control over the content that appears on the platform is necessarily limited by the sheer volume of uploaded user content**." (emphasis added)).

[80] *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *9 (2d Cir. Feb. 10, 2026) ("On the other hand, a service provider is likely to run afoul of § 512(c)(1) if it is applying its aesthetic, editorial, or marketing judgment **to determine which user uploads it accepts**." . . . "Taking all this together, we adopt the following general rule: if a service provider engages in manual, substantive, and discretionary review of user content—if, **on a case-by-case basis, it imposes its own aesthetic, editorial, or marketing judgment** on the content that appears on its platform—then its storage of infringing material is no longer 'at the direction of a user.' In

**Post's Responses:**

1. Post objects to changing the elements recited in the statute to include "specific material." The proposed instruction, as amended, incorporates the language of 17 U.S.C. 512(c). A separate paragraph with language from *Capital Records* is added below the elements of the statute.

2. Post's proposed language will be helpful for the jury when deciding whether the alleged infringement occurred "at the direction of users." The additional language proposed by Course Hero is misleading because it is narrowly focused on what a service provider can permissibly do with respect to screening content upon upload. However, it leaves out "what a service provider may permissibly do with a user's content once it has been uploaded to the provider's platform." *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *8 (2d Cir. Feb. 10, 2026). As noted in *McGucken*, the "safe harbor extends to software functions performed 'for the purpose of facilitating access to user-stored material.'" *Id. citing Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 39 (2d Cir. 2012). On the other hand, making additional copies of or altering user-uploaded content when it is not "solely to facility access by users" may disqualify a service provider from the safe harbor. *See BWP Media U.S. Inc. v. Polyvore, Inc.*, 922 F.3d 42, 58-59 (2nd Cir. 2019).

---

other words, **'extensive, manual, and substantive' front-end screening** of user content is not 'accessibility-enhancing' and is not protected by the § 512(c) safe harbor." (emphasis added)).

**INSTRUCTION NO. 20: AFFIRMATIVE DEFENSE - DMCA SAFE
HARBOR (17 U.S.C. § 512(c))
[COMPETING; DEFENDANT'S PROPOSED INSTRUCTION]**

Course Hero contends that it is a service provider and therefore is not liable for copyright infringement because the infringement was caused by information residing on Course Hero's systems at the direction of users.

Course Hero is eligible to use this defense if Course Hero:

1.  is a service provider of network communication services, online services, or network access;

2.  adopted, reasonably implemented, and informed users of a policy to terminate users who are repeat copyright infringers;

3.  designated an agent to receive notifications of claimed infringement, and made the agent's name, phone number, and email address available on its website and to the Copyright Office; and

4.  is facing liability for copyright infringement based on information residing on Course Hero's systems or networks at the direction of users. Service providers can review and screen user content before they store it on their platform without becoming ineligible for safe harbor, particularly where the ability to exert control over the content that appears on the platform is necessarily limited by the sheer volume of uploaded user content.[81]   On the other hand, this defense does not apply where the service provider imposes its own aesthetic, editorial, or marketing judgment on a case-by-case basis through extensive, manual, and substantive front-end screening to determine which user uploads it accepts.[82]

Course Hero must prove the above elements by a preponderance of the evidence to prevail on this affirmative defense.

---

[81] *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *8 (2d Cir. Feb. 10, 2026) ("Our caselaw also makes clear that under § 512(c), **service providers can review and screen user content before they store it on their platform without becoming ineligible for safe harbor, particularly where the ability to exert control over the content that appears on the platform is necessarily limited by the sheer volume of uploaded user content.**" (emphasis added)).

[82] *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *9 (2d Cir. Feb. 10, 2026) ("On the other hand, a service provider is likely to run afoul of § 512(c)(1) if it is applying its aesthetic, editorial, or marketing judgment **to determine which user uploads it accepts.**" . . . "Taking all this together, we adopt the following general rule: if a service provider engages in manual, substantive, and discretionary review of user content—if, **on a case-by-case basis, it imposes its own aesthetic, editorial, or marketing judgment** on the content that appears on its platform—then its storage of infringing material is no longer 'at the direction of a user.'  In other words, **'extensive, manual, and substantive' front-end screening** of user content is not 'accessibility-enhancing' and is not protected by the § 512(c) safe harbor." (emphasis added)).

Post can show that Course Hero has lost entitlement to the safe harbor if Post proves one of the following by a preponderance of the evidence:

1. Course Hero (a) had actual knowledge that the specific[83] material or activity on the system or network was infringing, or (b) was aware of facts or circumstances from which the specific[84] infringing activity was apparent, or (c) upon obtaining knowledge or awareness, failed to act expeditiously to remove or disable access to the material; or

2. Course Hero received a financial benefit directly attributable to the infringing activity and had the right and ability to control the infringing activity; or

3. Course Hero, upon receiving a valid notification of claimed infringement, did not respond expeditiously to remove, or disable access to, the material that was claimed to be infringing or to be the subject of infringing activity.

The difference between actual and red flag knowledge is a subjective and an objective standard. In other words, the actual knowledge provision turns on whether the provider actually or "subjectively" knew of specific infringement, while the red flag provision turns on whether the provider was subjectively aware of facts that would have made the specific infringement "objectively" obvious to a reasonable person.

I will now explain the meaning of some of these terms in greater detail below.

*Source:* Model Civ. Jury Instr. 9th Cir. 17.32 (2025); 17 U.S.C. § 512(c); *Capitol Records, LLC v. Vimeo, Inc.*, 125 F.4th 409, 419 (2d Cir. 2025); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 31 (2d Cir. 2012).

**Post's Objection:**
1. Post objects to changing the elements recited in the statute to include "specific infringing material" which is potentially misleading.
2. Post objects to limiting the instruction to what a service provide can permissibly do when screening content upon *upload*, only, as misleading and overly narrow. In *McGucken*, the Court held that the "task for courts applying § 512(c)(1) is to decide whether a given service provider plays a sufficiently active role in the process by which material appears on its platform such that, as a result, its storage and display of infringing material is no longer meaningfully at the user's direction." *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *8 (2d Cir. Feb. 10, 2026). The Court discussed what is permissible with respect to screening content,

---

[83] *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 31 (2d Cir. 2012) ("the actual knowledge provision turns on whether the provider actually or 'subjectively' knew of ***specific infringement***, while the red flag provision turns on whether the provider was subjectively aware of facts that would have made the ***specific infringement*** 'objectively' obvious to a reasonable person.") (emphasis added); *id.* at 30 ("the basic operation of § 512(c) requires knowledge or awareness of ***specific infringing activity***") (emphasis added); *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 99 (2d Cir. 2016) ("In *Viacom*, we made clear that actual and red flag knowledge under the DMCA ordinarily must relate to ***'specific infringing material.'***") (emphasis added).

[84] *Id.*

but also referenced its prior cases focused on "what a service provider may permissibly do with a user's content once it has been uploaded to the provider's platform." *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *8 (2d Cir. Feb. 10, 2026). As noted in *McGucken*, the "safe harbor extends to software functions performed 'for the purpose of facilitating access to user-stored material.'" *Id. citing Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 39 (2d Cir. 2012). On the other hand, making additional copies of or altering user-uploaded content when it is not "solely to facility access by users" may disqualify a service provider from the safe harbor. *See BWP Media U.S. Inc. v. Polyvore, Inc.*, 922 F.3d 42, 58-59 (2nd Cir. 2019).

## Course Hero's Responses:

1. The Second Circuit requires that actual or red flag knowledge must be of "specific infringing material." The instruction should also clarify that the actual knowledge or red flag knowledge must be of the "specific" infringing material. *See Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 31 (2d Cir. 2012) ("the actual knowledge provision turns on whether the provider actually or 'subjectively' knew of specific infringement, while the red flag provision turns on whether the provider was subjectively aware of facts that would have made the specific infringement 'objectively' obvious to a reasonable person."); *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 99 (2d Cir. 2016) ("In *Viacom*, we made clear that actual and red flag knowledge under the DMCA ordinarily must relate to 'specific infringing material.'").

2. Post takes an overexpansive reading of *McGucken* that is not supported by the court's language. *McGucken* specifically addresses whether a service provider loses safe harbor eligibility by engaging in "'extensive, manual, and substantive' **front-end** screening of user content" *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *9 (2d Cir. Feb. 10, 2026) (emphasis added). Further, Post's reliance on *BWP* is misplaced. There, the concurrence does not state that "making additional copies of or altering user-uploaded content when it is not 'solely to facility access by users' may disqualify a service provider from the safe harbor," as Post suggests. Rather, the court spoke in the affirmative, that "[m]aking copies of user-uploaded materials solely to facilitate user access does not disqualify an ISP from availing itself of the § 512(c) safe harbor." That holding does not make the inverse true.

**INSTRUCTION NO. 21: DMCA SAFE HARBOR DEFENSE
(17 U.S.C. § 512(c)(3)) – VALID NOTIFICATION DEFINED
[PLAINTIFF'S PROPOSED INSTRUCTION]**

A valid notification of claimed infringement is a written communication provided to the defendant's designated agent that includes substantially the following:

1. First, a physical or electronic signature of a person authorized to act on behalf of the copyright;

2. Second, identification of the infringed copyrighted work or a representative list of infringed copyrighted works if there are multiple infringed works at a single online site;

3. Third, identification of the infringing material or activity, and information reasonably sufficient to permit the defendant to locate the material;

4. Fourth, information reasonably sufficient to permit the defendant to contact the complaining party;

5. Fifth, a statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law; and

6. Sixth, a statement that the information in the notification is accurate and, under penalty of perjury, that the complaining party is authorized to act on behalf of the copyright owner.[85]

**Course Hero's Objections:**
1. Course Hero objects to Post's proposed Instruction No. 21 because it does not match the 9th Circuit Model Instructions, which Post has proposed as the starting point for other jury instructions. Post's proposed instruction deviates from the 9th Circuit Model Instructions in two significant ways. *First*, Post's proposed Instruction No. 21 states that a valid notification is a notification that "includes substantially the following . . ." while the 9th Circuit Model Instructions state that "[a] valid notification of claimed infringement is a written communication provided to the defendant's designated agent ***and must include*** . . .." Model Civ. Jury Instr. 9th Cir. 17.31 (2025) (comment) (emphasis added). Post's proposed instruction may confuse the jury into believing that notification that does not substantially comply with *all* the requirements can still be valid. ***Second***, Post's proposed instruction omits the following language from the 9th Circuit Model Instructions:

> If the notification does not meet ***all the above requirements***, then it is invalid and cannot be used as evidence of the defendant's knowledge of specific infringing activity. The defendant does not have a duty to expeditiously remove or disable access to infringing material or activity if the notice of claimed infringement is invalid.

Model Civ. Jury Instr. 9th Cir. 17.31 (2025) (comment) (emphasis added).

---

[85] Model Civ. Jury Instr. 9th Cir. (2025) 17.31 (comment), 17.32 (cross-referencing instruction on the requirements for a valid notice of claimed infringement).

2.  Course Hero also objects to Post's Instruction No. 21 because it fails to explain that a single notification that does not meet all the above requirements is invalid and cannot be used as evidence of the defendant's knowledge of specific infringing activity. This omission is not supported by the model jury instructions or the case law. *See* Model Civ. Jury Instr. 9th Cir. (2025) 17.31 (comment) ("If the notification does not meet all the above requirements, ***then it is invalid and cannot be used as evidence of the defendant's knowledge*** of specific infringing activity. The defendant does not have a duty to expeditiously remove or disable access to infringing material or activity if the notice of claimed infringement is invalid.") (emphasis added), 17.32 (comment) (cross-referencing instruction on the requirements for a valid notice of claimed infringement); *Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 414 (2d Cir.), *amended on reh'g in part*, 151 F.4th 13 (2d Cir. 2025) ("Upon ***receipt of a valid notification***, Section 512(c)(1)(C) requires that the service provider 'expeditiously' remove or disable access to the infringing material. *See id.* § 512(c)(1)(C).") (emphasis added); *see also* Model Civ. Jury Instr. 9th Cir. 17.32 (2025) ("upon ***receiving a valid notification*** of claimed infringement") (emphasis added). The proposed instruction should state:

> A valid notification is a single written communication that substantially complies with *all* of the above requirements, not just some of them.[86] Notices that do not identify the specific location of the alleged infringement are not sufficient to confer knowledge of the infringing activity on the service provider.[87] The defendant does not have a duty to expeditiously remove or disable access to infringing material or activity if the notice of claimed infringement is invalid.[88] The burden of identifying and documenting

---

[86] A valid notification is a single written communication that substantially complies "with *all* of § 512(c)(3)'s clauses, not just some of them." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1112-13 (9th Cir. 2007) (citations omitted) (finding that three separate notices, each of which was deficient in some way, cannot be combined to form one valid notice); *Luvdarts, LLC v. AT&T Mobility*, 710 F.3d 1068, 1072-73 (9th Cir. 2013) (holding that a mere list of plaintiff's copyrighted works without any further information is not valid notification).

[87] Model Civ. Jury Instr. 9th Cir. (2025) 17.31 (comment) ("If the notification does not meet all the above requirements, then it is invalid and cannot be used as evidence of the defendant's knowledge of specific infringing activity. The defendant does not have a duty to expeditiously remove or disable access to infringing material or activity if the notice of claimed infringement is invalid."); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 747 (S.D.N.Y. 2012) ("Notices that do not identify the specific location of the alleged infringement are not sufficient to confer 'actual knowledge' on the service provider."), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51, 52 (2d Cir. 2014) (affirming the district court's decision granting summary judgment "substantially for the reasons stated by the district court in its published opinion"); *see also Steinmetz v. Shutterstock, Inc.*, 629 F. Supp. 3d 74, 84 (S.D.N.Y. 2022) (finding that "[b]ecause [Plaintiff's] 'notice' did not comply with the DMCA, Defendant had no obligation to act").

[88] *Id.*

infringing material rests with the copyright holder, not the defendant.[89]

**Post's Responses:**
1. Post's proposed instruction substantially matches the 9th Circuit Model Instructions with corrections to be consistent with 17 U.S.C. 512(c).
2. Post disagrees that additional instructions are necessary. Post's proposed instruction recites that the notice must include "substantially the following" as recited in 17 U.S.C. 512(c). Repeating that the notification must substantially comply "with *all* of the above requirements, not just some of them" is duplicative. Post also objects to the additional instructions regarding a requirement for "a single written communication" as potentially misleading to the jury in view of the multiple, compliant notices sent by Post.

---

[89] Model Civ. Jury Instr. 9th Cir. (2025) 17.31 (comment) ("The burden of identifying and documenting infringing material rests with the copyright holder, not the defendant."); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007) ("The DMCA notification procedures place the burden of policing copyright infringement—identifying the potentially infringing material and adequately documenting infringement—squarely on the owners of the copyright. We decline to shift a substantial burden from the copyright owner to the provider; Perfect 10's separate communications are inadequate.").

**INSTRUCTION NO. 21: DMCA SAFE HARBOR DEFENSE
(17 U.S.C. § 512(c)(3)) – VALID NOTIFICATION DEFINED
[DEFENDANT'S PROPOSED INSTRUCTION]**

A valid notification of claimed infringement is a written communication provided to the defendant's designated agent and must include:

1. First, a physical or electronic signature of a person authorized to act on behalf of the copyright owner;

2. Second, identification of the infringed copyrighted work or a representative list of infringed copyrighted works if there are multiple infringed works at a single online site;

3. Third, identification of the infringing material or activity, and information reasonably sufficient to permit the defendant to locate the material;

4. Fourth, information reasonably sufficient to permit the defendant to contact the complaining party;

5. Fifth, a statement that the complaining party has a good-faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law;

6. Sixth, a statement that the information in the notification is accurate and, under penalty of perjury, that the complaining party is authorized to act on behalf of the copyright owner.[90]

A valid notification is a single written communication that substantially complies with *all* of the above requirements, not just some of them.[91] Notices that do not identify the specific location of the alleged infringement are not sufficient to confer knowledge of the infringing activity on the service provider.[92]

---

[90] Model Civ. Jury Instr. 9th Cir. (2025) 17.31 (comment) ("A ***valid notification*** of claimed infringement is a written communication provided to the defendant's designated agent and must include . . .") (emphasis added), 17.32 (comment) (cross-referencing instruction on the requirements for a valid notice of claimed infringement).

[91] A valid notification is a single written communication that substantially complies "with *all* of § 512(c)(3)'s clauses, not just some of them." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1112-13 (9th Cir. 2007) (citations omitted) (finding that three separate notices, each of which was deficient in some way, cannot be combined to form one valid notice); *Luvdarts, LLC v. AT&T Mobility*, 710 F.3d 1068, 1072-73 (9th Cir. 2013) (holding that a mere list of plaintiff's copyrighted works without any further information is not valid notification).

[92] Model Civ. Jury Instr. 9th Cir. (2025) 17.31 (comment) ("If the notification does not meet all the above requirements, then it is invalid and cannot be used as evidence of the defendant's knowledge of specific infringing activity. The defendant does not have a duty to expeditiously remove or disable access to infringing material or activity if the notice of claimed infringement is invalid."); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 747 (S.D.N.Y. 2012) ("Notices that do not identify the specific location of the alleged infringement are not sufficient to confer 'actual knowledge' on the service provider."), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51, 52 (2d Cir. 2014)

The defendant does not have a duty to expeditiously remove or disable access to infringing material or activity if the notice of claimed infringement is invalid.[93] The burden of identifying and documenting infringing material rests with the copyright holder, not the defendant.[94]

**Post's Objections:**

1. Post objects to the additional instructions regarding a requirement for "a single written communication" as potentially misleading to the jury in view of the multiple, compliant notices sent by Post. Post also objects to reciting that notification must substantially comply "with *all* of the above requirements, not just some of them." This language is not in the 9th Circuit Model Instruction or 17 U.S.C. 512(c).

**Course Hero's Responses:**

1. The instruction regarding a single written communication is not confusing to a jury. Rather, the instruction accurately states that a given communication must substantially comply with *all* of the above requirements to be a valid notification.[95]

   The requirement that a valid notification "compl[y] with all of the above requirements, not just some of them," is consistent with both the 9th Circuit model instructions and law from this Circuit. The 9th Circuit Model Instructions state that to be valid, a notification must comply with ***all*** the requirements:

   > If the notification does not meet ***all the above requirements***, then it is invalid and cannot be used as evidence of the defendant's knowledge of specific infringing activity. The defendant does not have a duty to expeditiously remove or disable access to infringing material or activity if the notice of claimed infringement is invalid.

   Model Civ. Jury Instr. 9th Cir. 17.31 (2025) (comment) (emphasis added). Post omits this portion of the instruction entirely.

---

(affirming the district court's decision granting summary judgment "substantially for the reasons stated by the district court in its published opinion"); *see also Steinmetz v. Shutterstock, Inc.*, 629 F. Supp. 3d 74, 84 (S.D.N.Y. 2022) (finding that "[b]ecause [Plaintiff's] 'notice' did not comply with the DMCA, Defendant had no obligation to act").

[93] *Id.*

[94] Model Civ. Jury Instr. 9th Cir. (2025) 17.31 (comment); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 ("The DMCA notification procedures place the burden of policing copyright infringement—identifying the potentially infringing material and adequately documenting infringement—squarely on the owners of the copyright. We decline to shift a substantial burden from the copyright owner to the provider; Perfect 10's separate communications are inadequate.").

[95] A valid notification is a single written communication that substantially complies "with *all* of § 512(c)(3)'s clauses, not just some of them." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1112-13 (9th Cir. 2007) (citations omitted) (emphasis in original) (finding that three separate notices, each of which was deficient in some way, cannot be combined to form one valid notice); *Luvdarts, LLC v. AT&T Mobility*, 710 F.3d 1068, 1072-73 (9th Cir. 2013) (holding that a mere list of plaintiff's copyrighted works without any further information is not valid notification).

The Second Circuit has affirmed a similar approach finding notifications invalid when they do not meet one of the six requirements recited in the 9th Circuit model instruction. *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 747 (S.D.N.Y. 2012) ("Notices that do not identify the specific location of the alleged infringement are not sufficient to confer 'actual knowledge' on the service provider."), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51, 52 (2d Cir. 2014) (concluding "substantially for the reasons stated by the district court in its published opinion . . . that summary judgment was properly awarded.").

**INSTRUCTION NO. 22: DMCA SAFE HARBOR DEFENSE**
**(17 U.S.C. § 512(c)) – ACTUAL OR RED FLAG KNOWLEDGE DEFINED**
**[COMPETING; PLAINTIFF'S PROPOSED INSTRUCTION]**

Red flag knowledge is awareness of facts and circumstances—or "red flags"—that would have made it apparent or obvious to a reasonable person that any specific activity on its service was infringing.[96] In order to carry their burden of demonstrating that Course Hero had red flag knowledge of the specific instances of infringement, Post needs to show that Course Hero was "subjectively aware of facts that would have made the specific infringement 'objectively' obvious *to a reasonable person.*"[97]

As explained further, willful blindness may be applied to demonstrate awareness of specific instances of infringement under the safe harbor provision of the DMCA.

**Course Hero's Objection:**
Course Hero objects to the instruction because it fails to sufficiently explain the red flag knowledge doctrine and its relevance to the instant case. The jury should be instructed on the meaning of red flag knowledge, including the following:

    a.  General awareness of infringement is not sufficient to establish actual or red flag knowledge.[98]

    b.  If further investigation of facts and circumstances is required to identify the material as infringing, then those facts and circumstances are not red flags.[99]

Providing this additional explanation helps the jury by clarifying the well-established principle that service providers do not lose the protections of safe harbor based on "generalized awareness" of infringement, and that the DMCA imposes no affirmative duty to monitor or to investigate based on a

---

[96] *Capitol Records, Inc. v. MP3tunes*, No. 1:07-cv-09931 Transcript of Trial Proceedings, ECF No. 596 at 140:3-8 (S.D.N.Y. Apr. 1, 2014).

[97] *Capitol Records, LLC v. Vimeo, Inc.*, 125 F.4th 409, 419 (2d Cir. 2025).

[98] *Capitol Records, Inc. v. MP3tunes*, No. 1:07-cv-09931 Transcript of Trial Proceedings, ECF No. 596 at 140:18-19 (S.D.N.Y. Apr. 1, 2014) ("General awareness of infringement is not sufficient to establish red flag knowledge."); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 30-31 (2d Cir. 2012). ("[T]o require expeditious removal in the absence of specific knowledge or awareness would be to mandate an amorphous obligation to 'take commercially reasonable steps' in response to a generalized awareness of infringement. Such a view cannot be reconciled with the language of the statute. . . .") (cleaned up).

[99] *Capitol Records, Inc. v. MP3tunes, Inc.*, No. :07-cv-09931, Transcript of Trial Proceedings, ECF No. 596 at 140:19-22 (S.D.N.Y. Apr. 1, 2014) ("Put another way, if further investigation of facts and circumstances is required to identify the material as infringing, then those facts and circumstances are not red flags."); *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 98 (2d Cir. 2016) ("[W]e can see ***no reason to construe [§ 512(c)] as . . . requiring investigation merely because the service provider learns facts raising a suspicion of infringement (as opposed to facts making infringement obvious)***. Protecting service providers from the expense of monitoring was an important part of the compromise embodied in the safe harbor.") (emphasis added).

mere suspicion of infringement. *See Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 98 (2d Cir. 2016) ("[W]e can see ***no reason to construe [§ 512(c)] as . . . requiring investigation merely because the service provider learns facts raising a suspicion of infringement (as opposed to facts making infringement obvious)***. Protecting service providers from the expense of monitoring was an important part of the compromise embodied in the safe harbor.") (emphasis added).

**Post's Response:**

Post submits that the proposed instruction accurately recites the holding of *Capital Records*. No further explanation of red flag knowledge is necessary, particularly since it is already discussed in instruction no. 20. Post submits that instruction no. 22 is already duplicative and unnecessary.

**INSTRUCTION NO. 22: DMCA SAFE HARBOR DEFENSE
(17 U.S.C. § 512(c)) – ACTUAL OR RED FLAG KNOWLEDGE DEFINED
[COMPETING; DEFENDANT'S PROPOSED INSTRUCTION]**

Red flag knowledge is awareness of facts and circumstances—or "red flags"—that would have made it apparent or obvious to a reasonable person that any specific activity on its service was infringing.[100] In order to carry their burden of demonstrating that Course Hero had red flag knowledge of the specific instances of infringement, Post needs to show that Course Hero was "subjectively aware of facts that would have made the specific infringement 'objectively' obvious *to a reasonable person*."[101] General awareness of infringement is not sufficient to establish red flag knowledge.[102] Put another way, if further investigation of facts and circumstances is required to identify the material as infringing, then those facts and circumstances are not red flags.[103]

As explained further, willful blindness may be applied to demonstrate awareness of specific instances of infringement under the safe harbor provision of the DMCA.

**Post's Objection:**

Post objects to the proposed instruction as inconsistent with the case law, and duplicative of and unnecessary in view of instruction no. 20. Further, instructing the jury that "if further investigation of

---

[100] *Capitol Records, Inc. v. MP3tunes*, No. 1:07-cv-09931 Transcript of Trial Proceedings, ECF No. 596 at 140:3-8 (S.D.N.Y. Apr. 1, 2014).

[101] *Capitol Records, LLC v. Vimeo, Inc.*, 125 F.4th 409, 419 (2d Cir. 2025) ("The difference between actual and red flag knowledge is . . . not between specific and generalized knowledge, but instead between a subjective and an objective standard. In other words, the actual knowledge provision turns on whether the provider actually or 'subjectively' knew of ***specific infringement***, while the red flag provision turns on whether the provider was ***subjectively aware of facts that would have made the specific infringement 'objectively' obvious to a reasonable person***.") (quoting *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 31 (2d Cir. 2012)) (emphasis added).

[102] *Capitol Records, Inc. v. MP3tunes*, No. 1:07-cv-09931 Transcript of Trial Proceedings, ECF No. 596 at 140:18-19 (S.D.N.Y. Apr. 1, 2014) ("General awareness of infringement is not sufficient to establish red flag knowledge."); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 30-31 (2d Cir. 2012). ("[T]o require expeditious removal in the absence of specific knowledge or awareness would be to mandate an amorphous obligation to 'take commercially reasonable steps' in response to a generalized awareness of infringement. Such a view cannot be reconciled with the language of the statute. . . .") (cleaned up)

[103] *Capitol Records, Inc. v. MP3tunes, Inc.,* No. 1:07-cv-09931, Transcript of Trial Proceedings, ECF No. 596 at 140:19-22 ("Put another way, if further investigation of facts and circumstances is required to identify the material as infringing, then those facts and circumstances are not red flags."); *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 98 (2d Cir. 2016) ("[W]e can see ***no reason to construe [§ 512(c)] as . . . requiring investigation merely because the service provider learns facts raising a suspicion of infringement (as opposed to facts making infringement obvious)***. Protecting service providers from the expense of monitoring was an important part of the compromise embodied in the safe harbor.") (emphasis added).

facts and circumstances is required to identify the material as infringing, then those facts and circumstances are not red flags" is misleading without further context, and without an accompanying instruction on willful blindness. In *Capital Records*, prior to stating that "if further investigation of facts and circumstances is required to identify the material as infringing, then those facts and circumstances are not red flags," the court explained that a service provider cannot "consciously or deliberately avoid" suspicions of specific instances of infringement or "shield[] itself from learning of the particular infringing transactions by looking the other way."

**Course Hero's Response:**

Second Circuit case law makes clear that general awareness of infringement is not sufficient to establish red flag knowledge under 17 U.S.C. § 512(c). *See Viacom Int'l, Inc. v. YouTube, Inc*., 676 F.3d 19, 31 (2d Cir. 2012) ("the actual knowledge provision turns on whether the provider actually or 'subjectively' knew of ***specific infringement***, while the red flag provision turns on whether the provider was subjectively aware of facts that would have made the ***specific infringement*** 'objectively' obvious to a reasonable person.") (emphasis added); *id.* at 30 ("the basic operation of § 512(c) requires knowledge or awareness of ***specific infringing activity***") (emphasis added); *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 99 (2d Cir. 2016) ("In Viacom, we made clear that actual and red flag knowledge under the DMCA ordinarily must relate to ***'specific infringing material.'***") (emphasis added).

This instruction helps the jury by clarifying the well-established principle that service providers do not lose the protections of safe harbor based on "generalized awareness" of infringement, and that the DMCA imposes no affirmative duty to monitor or to investigate based on a mere suspicion of infringement. *See Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 98 (2d Cir. 2016) ("[W]e can see ***no reason to construe [§ 512(c)] as . . . requiring investigation merely because the service provider learns facts raising a suspicion of infringement (as opposed to facts making infringement obvious)***. Protecting service providers from the expense of monitoring was an important part of the compromise embodied in the safe harbor.") (emphasis added).

**INSTRUCTION NO. 23:  DMCA SAFE HARBOR DEFENSE**
**(17 U.S.C. § 512(c)) – WILLFUL BLINDNESS DEFINED**
**[PLAINTIFF'S PROPOSED INSTRUCTION]**

Willful blindness may be applied to demonstrate knowledge or awareness of specific instances of infringement under the safe harbor provision of the DMCA.[104] A party is "willfully blind" or engages in "conscious avoidance" amounting to knowledge where the party was aware of a high probability of the fact in dispute and consciously avoided confirming that fact.[105]

Your willful blindness determination must relate to specific infringements.[106] Thus, even if you find Course Hero was aware of a high probability of general infringement by its users, that is not enough to establish willful blindness.

In determining whether Course Hero was willfully blind to specific acts of infringement, I instruct you that nothing in the DMCA requires Course Hero to affirmatively seek facts indicating infringing activity.[107]  However, when a party has reason to suspect that users of its service are infringing a protected work, it may not shield itself from learning of the particular infringing transactions by looking the other way.[108]

**Course Hero's Objections**

1. Course Hero objects to Post's proposed instruction because it omits the express language of 17 U.S.C. § 512(m) stating that a service provider has no duty to "***monitor[ ] its service or a***ffirmatively seek[ ] facts indicating infringing activity" 17 U.S.C. § 512(m) ("Nothing in this section shall be construed to [require] a service provider [to] ***monitor[ ] its service or*** affirmatively seek[ ] facts indicating infringing activity ....") (emphasis added); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012) "***Section 512(m) is explicit: DMCA safe harbor protection cannot be conditioned on affirmative monitoring by a service provider***. For that reason, § 512(m) is incompatible with a broad common law duty to monitor or otherwise seek out infringing activity based on general awareness that infringement may be occurring.") (emphasis added).  Instructing the jury that the willful blindness doctrine imposes

---

[104] *Viacom Intern., Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012) ("we hold that the willful blindness doctrine may be applied, in appropriate circumstances, to demonstrate knowledge or awareness of specific instances of infringement under the DMCA.").

[105] *Viacom Intern., Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012) ("A person is 'willfully blind' or engages in 'conscious avoidance' amounting to knowledge where the person 'was aware of a high probability of the fact in dispute and consciously avoided confirming that fact.'").

[106] *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 99 (2d Cir. 2016) ("because willful blindness is a proxy for knowledge, *id.* at 34–35, it too must relate to specific infringements").

[107] 17 U.S.C. § 512(m) ("Nothing in this section shall be construed to [require] a service provider [to] monitor[ ] its service or affirmatively seek[ ] facts indicating infringing activity ....").

[108] *Viacom Intern., Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012); *Capitol Records, Inc. v. MP3tunes, Inc.*, No. :07-cv-09931, Transcript of Trial Proceedings, ECF No. 596 at 138 (S.D.N.Y. Apr. 1, 2014).

no duty to "affirmatively seek facts" without also explaining that this doctrine imposes no duty to monitor risks confusing the jury into applying an incorrect legal standard—one that is explicitly rejected by the statute.

2. Course Hero further objects to Post's proposed instruction because it fails to clarify that, for the willful blindness doctrine to apply, the service provider must have reason to suspect that users of its service are infringing a *specific* protected work. *See Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 99 (2d Cir. 2016) ("because willful blindness is a proxy for knowledge . . . it too must relate to specific infringements").

INSTRUCTION NO. 23:  DMCA SAFE HARBOR DEFENSE
(17 U.S.C. § 512(c)) – WILLFUL BLINDNESS DEFINED
[DEFENDANT'S PROPOSED INSTRUCTION]

Willful blindness may be applied to demonstrate knowledge or awareness of specific instances of infringement under the safe harbor provision of the DMCA.[109] A party is "willfully blind" or engages in "conscious avoidance" amounting to knowledge where the party was aware of a high probability of the fact in dispute and consciously avoided confirming that fact.[110]

Your willful blindness determination must relate to specific infringements.[111] Thus, even if you find Course Hero was aware of a high probability of general infringement by its users, that is not enough to establish willful blindness.

In determining whether Course Hero was willfully blind to specific acts of infringement, I instruct you that nothing in the DMCA requires Course Hero to monitor its service or otherwise seek out infringing activity based on general awareness that infringement may be occurring.[112]  However, when a party has reason to suspect that users of its service are infringing a specific[113] protected work, it may not shield itself from learning of the particular infringing transactions by looking the other way.[114]

---

[109] *Viacom Intern., Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012)("we hold that the willful blindness doctrine may be applied, in appropriate circumstances, to demonstrate knowledge or awareness of specific instances of infringement under the DMCA.").

[110] *Viacom Intern., Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012) ("A person is 'willfully blind' or engages in 'conscious avoidance' amounting to knowledge where the person 'was aware of a high probability of the fact in dispute and consciously avoided confirming that fact.'" (citations omitted)).

[111] *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 99 (2d Cir. 2016) ("because willful blindness is a proxy for knowledge . . . it too must relate to specific infringements").

[112] 17 U.S.C. § 512(m) ("Nothing in this section shall be construed to [require] a service provider [to] monitor[ ] its service or affirmatively seek[ ] facts indicating infringing activity . . . ."); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012) "Section 512(m) is explicit: DMCA safe harbor protection cannot be conditioned on affirmative monitoring by a service provider. For that reason, § 512(m) is incompatible with a broad common law duty to monitor or otherwise seek out infringing activity based on general awareness that infringement may be occurring.").

[113] *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 99 (2d Cir. 2016) ("because willful blindness is a proxy for knowledge . . . it too must relate to specific infringements").

[114] *Viacom Intern., Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012); Transcript of Trial Proceedings, *Capitol Records, Inc. v. MP3tunes, Inc.*, No. 1:07-cv-09931 (S.D.N.Y. Apr. 1, 2014), ECF No. 596 at 138.

## INSTRUCTION NO. 24: DMCA SAFE HARBOR DEFENSE
## (17 U.S.C. § 512(c)) – FINANCIAL BENEFIT DIRECTLY
## ATTRIBUTABLE TO THE INFRINGING ACTIVITY WHILE HAVING
## THE RIGHT AND ABILITY TO CONTROL SUCH ACTIVITY
## [DEFENDANT'S PROPOSED INSTRUCTION]

To show that Course Hero received a financial benefit directly attributable to the infringing activity while having the right and ability to control such activity, it is not enough for Post to show that the more content hosted on the service provider's website, the more users it would attract, and more views would lead to more revenue.[115] Instead, Post must demonstrate that some revenue is distinctly attributable to the infringing material.[116]

Further, the "right and ability to control" element must require something more than the ability to remove or block access to materials posted on a service provider's website.[117] Otherwise, the ability to remove or block access, which is a prerequisite to safe harbor protection under the DMCA would at the same time be a disqualifier.[118] To have the "right and ability to control" the infringing activity, a service provider must be able to exert "substantial influence" on its users' activities.[119]

---

[115] *Downs v. Oath Inc.*, 385 F. Supp. 3d 298, 307 (S.D.N.Y. 2019) ("Although the court recognized that the more content hosted on defendant's website, 'the more users it would attract, and more views would lead to more advertising revenue,' the court explained that '[t]he words "the" and "directly" in [§ 512(c)(1)(B)] . . . must mean that some revenue has to be distinctly attributable to the infringing material.'") (quoting *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 613 (9th Cir. 2018).
[116] *Id.*
[117] *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 38 (2nd Cir. 2012); *Downs v. Oath Inc.*, 385 F. Supp. 3d 298, 308 (S.D.N.Y. 2019) ("the right and ability to control must require something more than the ability to remove or block access to materials posted on a service provider's website") (internal citations and quotations omitted).
[118] *Downs v. Oath Inc.*, 385 F. Supp. 3d 298, 308 (S.D.N.Y. 2019) ("Otherwise, the ability to remove or block access, which is a 'prerequisite to safe harbor protection under § 512(c)(1)(A)(iii) & (C) would at the same time be a disqualifier under § 512(c)(1)(B).'") (citing *Viacom*, 676 F.3d at 37).
[119] *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 613 (9th Cir. 2018) ("To have the right and ability to control, a service provider must be able to exert 'substantial influence' on its users' activities."); *Viacom*, 676 F.3d at 38 (explaining that possession of the "right and ability to control" contemplates circumstances in which "a service provider exert[s] substantial influence on the activities of users."); *Downs v. Oath Inc.*, 385 F. Supp. 3d at 298, 308 (S.D.N.Y. 2019) (same) (quoting *Viacom*, 676 F.3d at 38); *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1030 (9th Cir. 2013) ("We agree with the Second Circuit and hold that, *in order to have the 'right and ability to control,' the service provider must 'exert [ ] substantial influence on the activities of users*.'") (citing *Viacom*, 676 F.3d at 38) (emphasis added); *Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 426 (2d Cir.), *amended on reh'g in part*, 151 F.4th 13 (2d Cir. 2025) ("Congress therefore gave rightsholders some limited recourse against service providers that have the 'right and ability to control' infringements by users, *which our court has interpreted to apply in circumstances when the service provider has exercised 'substantial influence' over user activities*") (emphasis added).

**Post's Objections:**

1. Post objects to this instruction as redundant and unnecessary in view of instruction no. 20. Further, Post objects to this instruction for failing to specify or include that evidence suggesting an intrusion into user autonomy over user's posts is an important factor in determining whether substantial influence has been exercised, as inconsistent with the Second Circuit's opinion in *McGucken v. Shutterstock, Inc.*, No. 23-7652, 2026 WL 364412, at *11 (2d Cir. Feb. 10, 2026).

2. Course Hero's citation to *Downs* is also misleading and inapplicable to the facts of this case. In *Downs*, the court held that "it was not enough for Downs to show that HuffPost ran commercial advertisements on its website." The quotation provided by Course Hero is from the court's discussion of *Ventura*, which is another case where the alleged financial benefit was general advertising revenue. *See Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 614 (9th Cir. 2018). Incorporating this language into the proposed instruction, while leaving out "advertising," is highly misleading and not supported by the citation.

**Course Hero's Responses**:

1. First, Post is incorrect that this instruction is redundant and unnecessary in view of Instruction No. 20. Instruction No. 20 introduces the terms "financial benefit directly attributable to the infringing activity" and "right and ability to control" without providing any explanation as to what those terms mean. The proposed Instruction No. 23 provides helpful context to the jury. Critically, Instruction No. 23 explains that the service provider must exert "substantial influence" on the activities of users in order to have the "right and ability to control" the infringing activity. That distinction is important because it means that the "right and ability to control" is only present under limited circumstances. Without a clarifying instruction, the jury might believe that Course Hero's ability to remove or block access to infringing material is sufficient to disqualify Course Hero from safe harbor. That is not the law. *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 38 (2nd Cir. 2012); *Downs v. Oath Inc.*, 385 F. Supp. 3d 298, 308 (S.D.N.Y. 2019) ("the right and ability to control must require something more than the ability to remove or block access to materials posted on a service provider's website" (internal citations and quotations omitted)); *Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 426 (2d Cir.), *amended on reh'g in part*, 151 F.4th 13 (2d Cir. 2025) ("Congress therefore gave rightsholders some limited recourse against service providers that have the 'right and ability to control' infringements by users, ***which our court has interpreted to apply in circumstances when the service provider has exercised 'substantial influence' over user activities***" (emphasis added)); *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1030 (9th Cir. 2013) ("We agree with the Second Circuit and hold that, ***in order to have the 'right and ability to control,' the service provider must 'exert [ ] substantial influence on the activities of users*.**'" (emphasis added) (citing *Viacom*, 676 F.3d at 38)).

2. Post is also incorrect that *Downs* and *Ventura* should be limited to the advertising context, rather than standing for the more general proposition that some revenue must be "distinctly attributable to the infringing material." This clarifying instruction is important because Post's expert Mr. Mooney intends to "estimate" revenue earned for each of the five works based on the "total revenue associated with self-identified Post University / American Sentinel University subscribers and the [total] number of Post University / American Sentinel University documents." Mooney Report, ¶ 55. Course Hero disputes that this revenue is distinctly attributable to the infringing activity, as required by Instruction No. 24.

**INSTRUCTION NO. 25: STATUTORY DAMAGES UNDER SECTION 1202**
**OF THE DMCA**
**[JOINT PROPOSAL]**

If you find that Course Hero has violated Section 1202 of the DMCA, Post has elected to recover statutory damages for those violations. Post is entitled to statutory damages for each violation of Section 1202 of the DMCA.

For each violation, you must award Post an amount of not less than $2,500 and not more than $25,000. Within these limits, the statute gives you broad discretion to determine the amount of statutory damages that you find to be just in light of the evidence presented. There are many factors and considerations that may impact your determination of the amount of statutory damages to award. You are the ultimate judge of the facts and of the appropriate award. In determining the appropriate amount to award per violation, you may consider the following factors:

1. The expenses saved and the profits earned by Course Hero because of the violation;

2. The revenues that Post lost because of the violation;

3. The difficulty of proving Post's actual damages;

4. The circumstances of the violation;

5. The conduct and attitude of the parties;[120]

6. Course Hero's cooperation in providing evidence concerning the value of the infringing material;[121] and[122]

7. The deterrent effect on Course Hero and third parties.[123]

*Source*: 17 U.S.C. § 1203(c)(1)(B); 17 U.S.C. § 1203(c)(3)(B); 17 U.S.C. § 1203(c)(5); *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 378 (S.D.N.Y. 2019), *aff'd*, 970 F.3d 167 (2d Cir. 2020)

---

[120] *Andy Ryan Photographer, LLC v. City Vista, Inc.*, No. 24-CV-3369, 2025 WL 2778372, at *13 (E.D.N.Y. Sept. 30, 2025) ("In determining the amount of statutory damages, courts in this Circuit consider the following factors: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.").

[121] *Id.*

[122] Because liability under both 17 U.S.C. § 1202(a) and (b) requires intentional conduct, intentionality cannot be a reason to raise the statutory damages award. *See* 17 U.S.C. § 1202(a) ("No person shall knowingly and *with the intent to induce, enable, facilitate, or conceal infringement* . . ." (emphasis added)); 17 U.S.C. § 1202(b)(1) ("No person shall, without the authority of the copyright owner or the law—*intentionally* remove or alter any copyright management information . . .").

[123] *Id.*

("[m]uch like in the determination of statutory damages for copyright infringement, courts typically assess the 'circumstances of the violation' and willfulness of the violation."); *Wright v. Miah*, No. 22-CV-4132-CBA-JRC, 2023 WL 6219435, at *12 (E.D.N.Y. Sept. 7, 2023) (emphasis added), *report and recommendation adopted*, No. 22CV4132, 2023 WL 6216541 (E.D.N.Y. Sept. 25, 2023) (collecting cases) (In "determining where within the range of $2,500 and $25,000 to award statutory damages, courts 'consider [several] factors, namely, the difficulty of proving actual damages, the circumstances of the violation, whether Defendants violated the DMCA intentionally or innocently, and deterrence.'"); *see, e.g.*, *Bus. Casual Holdings, LLC v. TV-Novosti*, No. 21-CV-2007, 2023 WL 1809707, at *11 (S.D.N.Y. Feb. 8, 2023) (awarding maximum statutory damages where defendant was a repeat infringer, willfully added/removed CMI, knew that its conduct was infringing, and where defendant had an ulterior motive for the infringement— *i.e.*, it was doing it to further its own end); *Phillips v. TraxNYC Corp.*, No. 21-CV-528, 2023 WL 1987206, at *9-10 (E.D.N.Y. Feb. 14, 2023) (awarding maximum statutory damages where, *inter alia*, defendant's website "crops the image to show only [defendants] and conspicuously omits the [plaintiff's] CMI"; website highlighted features in the photograph to "sell custom jewelry" while depriving plaintiff "of his right to attribution"; defendant continued to display the photograph for 8 months despite notices from plaintiff's counsel); *c.f.*, *Southall v. ASG Partners LLC*, No. 20-CV-9103, 2021 WL 1199472, at *1-*2 (S.D.N.Y. March 30, 2021) (awarding $5,000 in statutory damages for a single violation of DMCA); *Myeress v. Elite Travel Group USA*, No. 18-CV-340, 2018 WL 5961424, at *3-*4 (S.D.N.Y. Nov. 14, 2018) (awarding $5,000 in statutory damages for a single violation of DMCA where plaintiff provided no pre-suit notice to defendant); *Dermansky v. Telegraph Media, LLC*, No. 19-CV-1149, 2020 WL 1233943, at *6 (E.D.N.Y. March 13, 2020) (awarding $5,000 in DMCA statutory damages when there was only one act of infringement, no evidence of harm, and plaintiff took no action to cure the violation).

**INSTRUCTION NO. 26: COPYRIGHT DAMAGES (17 U.S.C. § 504)**
**[JOINT PROPOSAL]**

If you find for Post on the copyright infringement claims, you must determine Post's damages. Actual damages mean the amount of money adequate to compensate the copyright owner for the reduction of the fair market value of the copyrighted work caused by the infringement.[124] In addition, Post is entitled to recover any profits of Course Hero attributable to the infringement.[125] Post must prove damages by a preponderance of the evidence.

Post contends that Course Hero earned profits equal to $114.85 attributable to the alleged copyright infringement. For purposes of this trial, Course Hero does not dispute that amount.[126] If you find for Post on the copyright infringement claim, you may therefore find that Post is entitled to recover $114.85.

*Source*: Model Civ. Jury Instr. 9th Cir. 17.32, 17.34 (2025).

---

[124] Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, § 17.33; 17 U.S.C. § 504(b).
[125] *Id.*
[126] Expert Report of Drew D. Mooney (Jan. 12, 2024), ¶ 56.

## INSTRUCTION NO. 27: RECOVERIES FOR THE SAME INJURY
### [DEFENDANT'S PROPOSED INSTRUCTION]

The law does not allow a plaintiff to recover twice for the same injury.[127] Post seeks to recover against Course Hero based on multiple legal claims—under Section 1202 of the DMCA and the Copyright Act. If you find that Post is entitled to a verdict on more than one of its DMCA and Copyright Act claims, you may not compensate Post twice for any harm it might have suffered.[128]

In order to award Post damages for any DMCA violations that you find, you must first conclude that those violations harmed Post in a different way than Course Hero's copyright infringements, if any, did. In other words, if you find any DMCA violations, you must find that Course Hero's violations of the DMCA caused Post extra harm that it would not have suffered if Course Hero had only copied and distributed Post's DMCA works without its consent.[129] And in determining the amount of damages to

---

[127] *Agence France Presse v. Morel*, No. 10-CV-2730 AJN, 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014) ("[T]he law ordinarily forbids a plaintiff from recovering twice for the same injury."); *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir.1995) ("A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to only one recovery."); *Seelie v. Original Media Grp. LLC*, No. 19-CV-5643 (BMC), 2020 WL 136659, at *5 (E.D.N.Y. Jan. 13, 2020) ("It has long been the law in intellectual property cases that a plaintiff cannot recover under different intellectual property statutes or theories for the same injury."); *Lyons P'ship, L.P. v. AAA Entm't Inc.*, No. 98-CV-9475 (DAB), 1999 WL 1095608, at *10 (S.D.N.Y. Dec. 3, 1999) ("[T]he Second Circuit has repeatedly held that even if a plaintiff prevails on separate legal claims, each of which may be said to protect different if related interests, he may not obtain full compensation twice for the same economic injury").

[128] *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-CV-726 CBA, 2012 WL 3306600, at *6 (E.D.N.Y. June 13, 2012), report and recommendation adopted, No. 11 CV 726 CBA RLM, 2012 WL 3306575 (E.D.N.Y. Aug. 13, 2012) ("[I]t is appropriate to limit DMCA damages by disallowing profits attributable to infringement, as it avoids duplicating actual damages that are recoverable under the Copyright Act. . . . Furthermore, plaintiffs' construction of the term 'violation' would give rise to the anomalous situation wherein a person injured by the circumvention of security measures could recover infringement-related damages without first fulfilling the statutory prerequisites for filing suit under the Copyright Act. ***Tellingly, plaintiffs have not asserted a claim for copyright infringement, and therefore should not be permitted to recover damages related to the use of the protected material.***") (emphasis added) (citations omitted); *Tu v. TAD Sys. Tech. Inc.*, No. 08-CV-3822, 2009 WL 2905780, at *5 (E.D.N.Y. Sept. 10, 2009) ("Plaintiffs are not entitled to duplicative statutory damages under the Copyright Act, DMCA, and the Lanham Act."); *Morel v. Agence France Presse*, No. 10-CIV-2730 (AJN), 2013 WL 10162607 (S.D.N.Y. Nov. 22, 2013) (Final Jury Instructions) ("However, if you find that Mr. Morel is entitled to a verdict on both his copyright infringement and his DMCA claims, you may not compensate him twice for any harm he might have suffered.").

[129] *Ghahremani v. Craft for Kids Imports, Inc.*, No. 24-CV-04356 (FB) (LKE), 2025 WL 905631, at *7 (E.D.N.Y. Feb. 5, 2025), report and recommendation adopted, No. 24-CV-04356-FB-LKE, 2025 WL 758636 (E.D.N.Y. Mar. 11, 2025) ("Typically, the law 'forbids a plaintiff from recovering twice for the same injury', however, 'in an appropriate case, separate DMCA and copyright awards might

award Post for any DMCA violations that you find, you should compensate it only for that extra harm, and not for whatever harm you have already compensated it for through your award for copyright infringement.[130]

**Post's Objection:**

Post objects to this instruction as inconsistent with the law and not applicable to the facts of this case. As the courts in *Ghahremani* and *Presse* both acknowledged, damages may be recovered for both copyright infringement and DMCA claims because "the Copyright Act and the DMCA protect different interests." Thus, despite Course Hero's mischaracterization, Post denies that the injuries overlap. For example, the use of a copyrighted work without permission deprives the owner of the ability to control when and where it may be displayed, as well as the licensing fee they would ordinarily charge for such display, whereas the removal of CMI deprived them of professional recognition for the display. *Ghahremani*, 2025 WL 905631, at \*7. In this case, Post is harmed separately as a result of the use of its copyrighted work at least by the removal of CMI preventing Post from identifying and policing the use of documents. Further, in *Press*, the plaintiff sought both copyright damages and DMCA damages for the same eight documents. In this case, Post is not merely alleging DMCA violations on the five works at issue in its copyright claims. The vast majority of the 1202 violations pertain to documents for which Post is not seeking any copyright damages. Course Hero's proposed instruction stating that "if you find *any* DMCA violations, you must find that Course Hero's violations of the DMCA caused Post extra harm that it would not have suffered if Course Hero had only copied and distributed Post's DMCA works without its consent" does not apply to the substantial majority of the works in suit for which Post is not claiming damages for copyright infringement.

**Course Hero's Response:**

Post's objection is unsupported. Post's objection acknowledges that there is crossover between its copyright infringement claim and its Section 1202 claims—precisely the point of this instruction. Post is not entitled to recover twice for the same injury. *See Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir.1995) ("A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to only one recovery."); *Seelie v. Original Media Grp. LLC*, No. 19-CV-5643 (BMC), 2020 WL 136659, at \*5 (E.D.N.Y. Jan. 13, 2020) ("It has long been the law in

_____

be permissible . . . because the Copyright Act and DMCA protect different interests.' Thus, duplicative damages are avoided so long as the Court 'properly distinguishes among these injuries.'" (internal citations omitted)); *Morel v. Agence France Presse*, No. 10-CIV-2730 (AJN), 2013 WL 10162607 (S.D.N.Y. Nov. 22, 2913) (Final Jury Instructions) ("But in order to award Mr. Morel damages for any DMCA violations that you find, you must first conclude that those violations harmed Mr. Morel in a different way than the Defendants' copyright infringements did. In other words, if you find any DMCA violations, you must find that the Defendants' actions in falsifying, removing, and/or altering CMI caused Mr. Morel extra harm that he would not have suffered if the Defendants had only copied and distributed his photographs without his consent.").

[130] *Morel v. Agence France Presse*, No. 10-CIV-2730 (AJN), 2013 WL 10162607 (S.D.N.Y. Nov. 22, 2013) (Final Jury Instructions) ("And in determining the amount of damages to award Mr. Morel for any DMCA violations that you find, you should compensate him only for that extra harm, and not for whatever harm you have already compensated him for through your award for copyright infringement.").

intellectual property cases that a plaintiff cannot recover under different intellectual property statutes or theories for the same injury."); *Lyons P'ship, L.P. v. AAA Entm't Inc.*, No. 98-CV-9475 (DAB), 1999 WL 1095608, at *10 (S.D.N.Y. Dec. 3, 1999) ("[T]he Second Circuit has repeatedly held that even if a plaintiff prevails on separate legal claims, each of which may be said to protect different if related interests, he may not obtain full compensation twice for the same economic injury"). While "separate DMCA and copyright awards *might be permissible*," a plaintiff is still forbidden from recovering twice for the same injury. *Ghahremani v. Craft for Kids Imports, Inc.*, No. 24-CV-04356 (FB) (LKE), 2025 WL 905631, at *7 (E.D.N.Y. Feb. 5, 2025), report and recommendation adopted, No. 24-CV-04356-FB-LKE, 2025 WL 758636 (E.D.N.Y. Mar. 11, 2025) (emphasis added); *see also Tu v. TAD Sys. Tech. Inc.*, No. 08-CV-3822 (SLTRM), 2009 WL 2905780, at *5 (E.D.N.Y. Sept. 10, 2009) ("Plaintiffs are not entitled to duplicative statutory damages under the Copyright Act, DMCA, and the Lanham Act."); *Adobe Sys. Inc. v. Feather*, 895 F. Supp. 2d 297, 303 (D. Conn. 2012) ("Plaintiffs do not seek separate damages for their DMCA claim, nor could they." (citing *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir.1995))). Indeed, for this very reason, the court in *Presse* instructed the jury that "in determining the amount of damages to award Mr. Morel for any DMCA violations that you find, you should compensate him *only for that extra harm, and not for whatever harm you have already compensated him for through your award for copyright infringement.*" *Morel v. Agence France Presse*, No. 10-CIV-2730 (AJN), 2013 WL 10162607 (S.D.N.Y. Nov. 22, 2013) (Final Jury Instructions) (emphasis added). Post does not deny that overlap can exist between DMCA injury and Copyright Act injury or that, if there was, duplicative recovery for the same injury would be barred. Instead, Post submits that the facts will demonstrate that its injuries under the DMCA and Copyright Act are distinct. That is a determination for the jury to make, and Course Hero intends to rebut that argument with its own facts. The jury should not be deprived of this instruction relying on Post's allegations alone. Finally, Post is incorrect in its assertion that the language, "if you find *any* DMCA violations, you must find that Course Hero's violations of the DMCA caused Post extra harm that it would not have suffered if Course Hero had only copied and distributed Post's DMCA works without its consent" does not apply to works that Post is not seeking copyright damages for. Finding otherwise would, as the court in *Point 4 Data* warns, "give rise to the anomalous situation wherein a person injured by the circumvention of security measures could recover infringement-related damages without first fulfilling the statutory prerequisites for filing suit under the Copyright Act." *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-CV-726 CBA, 2012 WL 3306600, at *6 (E.D.N.Y. June 13, 2012), report and recommendation adopted, No. 11 CV 726 CBA RLM, 2012 WL 3306575 (E.D.N.Y. Aug. 13, 2012). Instead, when met with similar circumstances, the court in *Point 4 Data* found that "plaintiffs have not asserted a claim for copyright infringement, and therefore should not be permitted to recover damages related to the use of the protected material." *Id.*

## INSTRUCTION NO. 28: DAMAGES - MITIGATION
## [DEFENDANT'S PROPOSED INSTRUCTION]

The plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.[131]

Course Hero has the burden of proving by a preponderance of the evidence:

> First, that Post failed to use reasonable efforts to mitigate damages; and

> Second, the amount by which damages would have been mitigated.

**Post's Objection:**
Post objects to this in its entirety as not relevant to any issues in the case. Post is not seeking damages after the filing of the Complaint, and Post was not offered Pinpoint or any other tools before such date.

**Course Hero's Response:**
This proposed instruction is relevant to the calculation of damages for copyright infringement. This proposed instruction is also relevant to the calculation of statutory damages, including to factors such as "[t]he circumstances of the violation" and "[t]he conduct and attitude of the parties" that are considered when calculating statutory damages under the DMCA.

---

[131] Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, § 5.3.