UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
:
POST UNIVERSITY, INC.,                                             :
:
                *Plaintiff,*                      :    **OMNIBUS RULING ON**
:    **MOTIONS *IN LIMINE*,**
    -against-                                                 :    **OBJECTION*S*, AND**
:    **MOTION TO STRIKE**
LEARNEO, INC.,                                                     :    **UNTIMELY EXPERT**
:    **DISCLOSURE**
                *Defendant.*                     :
:    3:21-cv-1242 (VDO)
------------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

        This action involves allegedly unlawful conduct on Course Hero, an online platform where users upload materials, such as study resources, and access materials shared by others. Before the Court are the parties' motions *in limine*, objections to exhibits, and a motion to strike a technical expert's untimely disclosure. After hearing argument at the pretrial conference, the Court rules as follows:

- Plaintiff's motion to bifurcate trial is **denied**.

- Plaintiff's motion *in limine* to exclude post-suit evidence relating to Pinpoint is **granted**.

- Plaintiff's objections to post-suit evidence relating to Pinpoint, including DTX367, DTX368, DTX374, DTX375, and DTX376, are **sustained in part**, as this evidence's probative value is substantially outweighed by a danger of unfair prejudice, misleading the jury, and confusing the issues.

- Defendant's motion to strike Plaintiff's technical expert's untimely disclosure is **granted**.

- Defendant's objections to evidence of news media coverage of Course Hero, including PTX057 and PTX264, are **sustained in part**, as this evidence constitutes hearsay.

- Defendant's objections to charts describing the Works in Suit, including PTX4144, PTX633, and PTX109, are **overruled**.

## I.    BACKGROUND

Familiarity with the facts and prior proceedings of this action is assumed, but the Court will reference its Summary Judgment Opinion to describe facts relevant to this omnibus ruling. *Post Univ., Inc. v. Learneo, Inc.*, No. 3:21-CV-1242 (VDO), 2025 WL 2702043 (D. Conn. Sept. 23, 2025).

### A.    Pre-Suit Events

Defendant Learneo, Inc. operate the Course Hero website, an online platform for students and educators to upload and share course-related materials.[1] Plaintiff Post University, Inc. is a for-profit university based in Waterbury, Connecticut.[2]

Prior to filing suit, Plaintiff sent Defendant letters notifying Defendant of ongoing infringement of Plaintiff's intellectual property on Course Hero. On January 6, 2021, Plaintiff sent Defendant a letter identifying sixty-four web pages it believed were copyrighted materials that were owned by Post University and notifying Defendant that additional unauthorized use of infringing materials likely existed on Course Hero.[3] After receiving a response from Defendant that it had disabled some content, Plaintiff sent a second letter to Defendant on February 24, 2021, which: **(1)** identified the discrepancy between the number of webpages disabled by Defendant (sixty-two) and the number of webpages in Plaintiff's original notification (sixty-four), and **(2)** notified Defendant of an additional thirty-five unique

---

[1] ECF No. 237 at 26.

[2] *Id.*

[3] *Post Univ., Inc.*, 2025 WL 2702043, at *1.

instances of Plaintiff's copyrighted course materials posted on Course Hero.[4] That letter alleged that the manner in which Course Hero is operated severely hindered Plaintiff's ability to determine whether the site continues to violate its copyrights.[5]

### B. Plaintiff's Claims and Intellectual Property

#### 1. Remaining Claims

Plaintiff commenced this action on September 17, 2021.[6] After discovery had closed, the Court granted summary judgment in Defendant's favor with respect to the following claims: the Connecticut Unfair Trade Practices Act, unjust enrichment, and common law unfair competition.[7] The parties stipulated that Plaintiff will not pursue at trial its trademark infringement claims and, subsequently, Plaintiff filed a notice that it intends to dismiss with prejudice those claims.[8]

Thus, the remaining claims to be tried include the following: (1) direct copyright infringement, (2) contributory copyright infringement, (3) vicarious copyright infringement, and (4) copyright management information ("CMI") claims brought under the Digital Millennium Copyright Act ("DMCA").[9]

---

[4] *Id.*

[5] *Id.*

[6] *Id.* at *2.

[7] *Id.* at *12.

[8] ECF Nos. 304, 307.

[9] Count I, II, III, IV, ECF No. 31.

3

### 2. Copyrights and Works in Suit

At issue in this case are Plaintiff's copyrighted documents created by its faculty and staff, including: (1) the document titled "College Writing Post U Newspaper Assignment," alleged to be created as a work for hire in 2020, (2) the document titled "ENG110 College Writing Course Syllabus," alleged to be created as a work for hire in 2020, (3) the document titled "Foundation of Early Childhood Education Research Paper," alleged to be created as a work for hire in 2018, (4) the document titled "ACC111 Financial Accounting Course Syllabus," alleged to be created as a work for hire in 2018, and (5) the document titled "HRM201 Unit 7 Final Exam," alleged to be created as a work for hire in 2018.[10] But Plaintiff may argue that it believes more copyright infringement was taking place, but that it was unable to effectively police the Course Hero website.[11]

The parties represented that there are more than 2,000 Works in Suit,[12] though they stipulated that Post will not pursue at trial any claims involving works associated with its subsidiary, American Sentinel University.[13]

## II. PLAINTIFF'S MOTIONS AND OBJECTIONS

### A. Motion to Bifurcate[14]

Plaintiff seeks to bifurcate the trial of this action into two separate phases: one to determine liability, and another to determine the appropriate damages. In lieu of bifurcating

---

[10] *Post Univ., Inc.*, 2025 WL 2702043, at *2.

[11] ECF No. 304 at 8; ECF No. 317.

[12] ECF No. 281 at 2.

[13] ECF No. 304 at 2; ECF No. 318 at 2.

[14] ECF Nos. 251, 259, 262.

the trial, Plaintiff requests that the Court preclude Defendant from making any presentation conflating the issues of liability and damages.[15] For the following reasons, Plaintiff's motion to bifurcate is **DENIED**, and the Court declines to impose the requested restriction on Defendant's presentation.

Under to Rule 42(b) of the Federal Rules of Civil Procedure, district courts have broad discretion to bifurcate a trial in order to further convenience, avoid prejudice, or promote efficiency. Fed. R. Civ. P. 42(b); *Belz v. Peerless Ins. Co.*, No. 3:13-CV-01315 (JCH), 2014 WL 12758469, at *1 (D. Conn. Oct. 20, 2014). In the Second Circuit, bifurcation is "the exception, not the rule." *Svege v. Mercedes-Benz Credit Corp.*, 329 F. Supp. 2d 283, 284 (D. Conn. 2004); *Briggs & Stratton Corp. v. Chongqing RATO Power Co., Ltd.*, No. 5:13-CV-316, 2013 WL 5963151, at *2 (N.D.N.Y. Nov. 7, 2013) (collecting cases). "[T]he moving party bears the burden of proving that bifurcation is warranted." *Country Club of Fairfield, Inc. v. New Hampshire Ins. Co.*, 3:13-CV-00509 (VLB), 2014 WL 3895923, at *3 (D. Conn. Aug. 8, 2014) (internal quotation marks omitted). "[T]he circumstances justifying bifurcation should be particularly compelling and prevail only in exceptional cases." *Kos Pharm., Inc. v. Barr Labs., Inc.*, 218 F.R.D. 387, 391 (S.D.N.Y. 2003).

Plaintiff failed to satisfy its burden. Plaintiff argues that bifurcation serves the interests of judicial efficiency and expediency because it would limit the expense of irrelevant testimony. Under a bifurcated scheme, the jury would not need to reach the question of damages unless the Court first found liability.[16] In response, Defendant states that there is

---

[15] ECF No. 251-1 at 5–6.

[16] ECF No. 251-1 at 6–9.

substantive overlap between the two issues, and they implicate the same evidence. Bifurcation, Defendant claims, would essentially require a duplication of trial.[17] The Court agrees with Defendant. The issues of liability and damages are inherently intertwined in this matter. Courts in this Circuit ordinarily find bifurcation inappropriate "where the issues of liability and damages are intertwined" because it often results in "significant repetition in the presentation of witnesses and evidence during the damages trial." *Tafari v. Goord*, No. 06-CV-331, 2011 WL 4914961, at *1 (W.D.N.Y. Oct. 14, 2011). Plaintiff claims that overlapping issues will not be re-litigated. Yet, it is unclear to the Court, from a logistical perspective, how bifurcation would amount to something other than an essential duplication of the trial. Bifurcation would require the parties to recall witnesses who have already testified to sit for an entirely new round of testimony solely on the issue of damages. Indeed, Defendant indicated that "23 of the 26 witnesses identified by the parties for trial are expected to provide evidence that overlaps between the issues of liability and damages."[18] Thus, even if the overlapping issues are not re-litigated, bifurcating the trial would require expending extensive amounts of time and judicial resources to call 23 witnesses for a second round of testimony, in addition to other presentations of other duplicative evidence. This is antithetical to Rule 42(b)'s goal of judicial efficiency, and accordingly, the Court declines to bifurcate the trial based on this argument.

Plaintiff's argument about the risk of prejudice is also unconvincing. Plaintiff argues that the sheer amount of damages—potentially in the billions of dollars—will prejudice the

---

[17] ECF No. 259 at 4.

[18] *Id.* at 6.

jury against finding liability because it would result in a disproportionate financial penalty.[19] Essentially, Plaintiff argues that it is prejudiced by its own damages request. The Court disagrees. It is odd, to say the least, that Plaintiff claims prejudice from a core, statutorily mandated portion of *its own* case. Indeed, Plaintiff struggled to find cases akin to the one here in its briefs. Rather, it relies on references to case law related to bifurcation of patent cases (where damages presume liability), bifurcation of discovery, and bifurcation to avoid risk of prejudice to a *defendant* in severe personal injury matters. Accordingly, the Court declines to find prejudice solely because Plaintiff seeks a large statutory damages award.

Plaintiff also argues that a consolidated presentation of liability and damages will cause jury confusion. Plaintiff essentially claims that the task of resolving the factual disputes on the nature of each violation, then proceeding to determine the range of damages will overwhelm the jurors.[20] The Court is confident that jurors are not so easily confused. Jurors frequently consider intertwined issues of liability and statutory damages, and Plaintiff's concern about juror confusion does not justify the additional time and resources that may result from bifurcation of trial.

In lieu of bifurcating the trial, Plaintiff requests that the Court preclude Defendant from making any presentation conflating the issues of liability and damages. Here too, the Court denies Plaintiff's request. As Defendant described in its brief, there are significant liability arguments in this trial that may require reference to the issue of damages.[21]  For instance,

---

[19] ECF No. 251-1 at 9–11.

[20] ECF No. 251-1 at 11–13.

[21] ECF No. 259 at 10–11.

Plaintiff seeks to argue that Defendant knowingly violated the law to maximize profits, and Defendant seeks to rebut this argument by arguing that Plaintiff would not intentionally seeks to expose itself to billions of dollars in damages. This argument, and ones like it, are not unduly prejudicial. Further, there is no indication that a blanket rule prohibiting a broad argument is required here, as the Court is readily equipped to handle irrelevant arguments using the ordinary rules of evidence. Accordingly, the Court will not preemptively prohibit Defendant from making arguments that jointly concern the issues of liability and damages.

### B. Motion *in limine*[22]

Plaintiff moves for an order precluding Defendant from introducing or referencing at trial any evidence, testimony, or argument relating to Pinpoint after the lawsuit was filed, including any discussions between the parties concerning Pinpoint and Post's usage of the same. Plaintiff argues that this topic is irrelevant, unfairly prejudicial, and could confuse and mislead the jury. Defendant argues that the evidence is relevant to the claims and defenses to be tried as it relates to its expeditious removal of documents on Course Hero and lack of knowledge of the specific works at issue. Defendant also argues that the full timeline of Post's usage of Pinpoint would neither be unduly prejudicial to Plaintiff nor misleading to the jury because it would rebut Plaintiff's narrative of concealment and delay.

Motions *in limine* provide district courts the opportunity to rule in advance of trial on the admissibility of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). A court should only grant a motion *in limine* and exclude evidence pursuant to that motion if the evidence is clearly inadmissible on all potential grounds. *Levinson v. Westport*

---

[22] ECF Nos. 253, 256, 263.

*Nat'l Bank*, No. 3:09-cv-1955-VLB, 2013 WL 3280013, at *3 (D. Conn. June 27, 2013). If a motion may have merit but the court cannot determine that there is no permissible purpose for which the evidence could be offered at trial, a court should "reserve judgment on [that] motion[] *in limine* until trial so that the motion [can be] placed in the appropriate factual context." *Bryant v. City of Hartford*, 585 F. Supp. 3d 179, 185 (D. Conn. 2022). A ruling on a motion *in limine* is "subject to change when the case unfolds." *Luce*, 469 U.S. at 41.

Federal Rule of Civil Procedure 402 provides that "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. But relevant evidence is presumptively admissible, "unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court." *Id.* "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevance describes the relationship between 'an item of evidence and a matter properly provable in the case.'" *United States v. Garnes*, 102 F.4th 628, 636 (2d Cir. 2024) (quoting Fed. R. Evid. 401 advisory committee's note). "Evidence need not be sufficient by itself to prove a fact in issue" in order to meet the "very low standard" of relevancy. *United States v. Litvak*, 889 F.3d 56, 68 (2d Cir. 2018).

Even if evidence is relevant, Federal Rule of Civil Procedure 403 empowers a court to exclude that evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "'Evidence is said to have probative value if it tends to prove or actually proves a proposition.'" *United States v. Garnes*, 102 F.4th 628, 638 (2d Cir. 2024) (quoting *United States v. Jamil*, 707 F.2d 638,

9

642 (2d Cir. 1983)). "In assessing admissibility under Rule 403, a piece of evidence's probative value to be weighed against its risk of unfair prejudice may be calculated by comparing evidentiary alternatives," such as determining whether "substantially less prejudicial and redundant alternatives [are] available." *In re 650 Fifth Ave. & Related Props.*, 934 F.3d 147, 172 (2d Cir. 2019) (cleaned up).

The Court **GRANTS** Plaintiff's motion *in limine* and finds that all post-suit evidence concerning Learneo's Pinpoint tool, including communications, offers, conditions, negotiations, and Plaintiff's 2025 usage of the tool, must be excluded under Federal Rule of Evidence 403. As an initial matter, the Court finds the post-suit evidence to satisfy the "very low" standard for relevance, because the jury can infer from Defendant's post-suit conduct the facts underlying Defendant's pre-suit conduct, including how Defendant generally interfaces with rightsholders who notify it of allegedly infringing works on Course Hero. But the miniscule probative value of this post-suit evidence is outweighed by the danger of unfair prejudice, misleading the jury, and confusing the issues. At the pretrial conference, the parties confirmed that, as a result of Plaintiff's intent to dismiss its trademark claims and request for injunctive relief, Plaintiff is only seeking pre-suit damages for alleged pre-suit copyright infringement and DMCA violations. Therefore, the post-suit evidence (which includes emails dated years after suit commenced) is far too attenuated from the relevant damages period to combat the dangers that Rule 403 seeks to avoid. Moreover, at the at the pretrial conference, the parties agreed that these correspondences occurred after a private mediation between the parties. Plaintiff represented that its usage of Pinpoint was after months of negotiations about its terms and this case. But Defendant disputes Plaintiff's contention that this conduct related to compromise negotiations and instead, assert that there is no connection between Defendant

allowing Plaintiff to use Pinpoint to locate Plaintiff's works on Course Hero and the parties' attempts to settle the case. The Court agrees with Plaintiff that post-suit Pinpoint evidence would unfairly prejudice Plaintiff because it would improperly suggest to the jury that Plaintiff caused its own harm, or failed to prevent it by waiting years to use Pinpoint after the lawsuit was filed, as Plaintiff is seeking only pre-suit damages. It would also detour the trial with issues that have nothing to do with liability or statutory damages as it relates to the pre-suit conduct, such as the circumstances for Plaintiff initially declining and then using Pinpoint during discovery. There is no doubt that Defendant can proffer alternative evidence to explain its pre-suit conduct underlying the claims and defenses, including through testimony of its witnesses.

### C. Plaintiff's Objections[23]

Plaintiff seeks to preclude Defendant from offering exhibits related to Plaintiff's post-suit usage of Pinpoint, including documents purportedly owned by Plaintiff which were found on Course Hero and correspondences between the parties where Defendant responds to Plaintiff providing notices of infringement on Course Hero via Pinpoint.[24] Plaintiff asserts the following objections: relevance, lack of foundation, and more prejudicial than probative.

For substantially the same reasons described in the previous section granting Plaintiff's motion *in limine* re: Pinpoint, the Court **SUSTAINS** Plaintiff's objection under Federal Rule of Evidence 403, finding that this evidence must be excluded as its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury.

---

[23] ECF No. 290.

[24] DTX367, ECF No. 290-1; DTX368, ECF No. 290-2; DTX374, ECF No. 290-3; DTX375, ECF No. 290-4; DTX376, ECF No. 290-5.

### III. DEFENDANT'S MOTIONS AND OBJECTIONS

#### A. Motion to Strike Untimely Expert Report[25]

Defendant moves to strike new disclosures from Plaintiff's technical expert, Monty Myers, which were served on Defendant approximately two weeks before trial, on February 2, 2026. Noting that expert discovery in this matter closed on August 19, 2024, Defendant argues that the disclosures include new tables presenting new opinions concerning how many times Defendant allegedly committed different types of violations under Sections 1202 of the DMCA. Moreover, Mr. Myers included a new "adjustment factor" multiplier in some tables to account for data that was supposedly missing from Defendant's production and further manipulated the master spreadsheet to deduplicate some counts of fully blurred page views, which were previously double-counted. In response, Plaintiff argues that there is no legal basis to strike the disclosures or to limit Mr. Myers testimony. After the parties agreed to drop certain Works in Suit from trial, Plaintiff notes, Mr. Myers took that opportunity to modify tables to reflect the removal of data relating to those dropped works and to address that inadvertent data duplication. Plaintiff disputes that there are new methodologies or opinions in the updated disclosures.

After hearing oral argument, to accept Plaintiff's position that the new tables and information in Mr. Myer's updated disclosures did not constitute new opinions or methodologies would be to blink reality. The Court therefore considers the *Softel* factors in determining whether to exclude Mr. Myer's untimely expert disclosure: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the

---

[25] ECF Nos. 294, 308.

testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel Inc. v. Dragon Med. & Scientific Comm., Inc.*, 118 F.3d 955, 961 (2d Cir. 1997); *see also Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006). The first *Softel* factor weighs in favor of striking because there is no excuse for the untimely disclosure. Other than the removal of certain Works in Suit from Mr. Myer's calculations, to which Defendant does not object, Mr. Myer's new opinions did not rely on any information that was unavailable to Plaintiff. Indeed, considering Defendant's rebuttal expert pointed out the duplication of data two years ago, Plaintiff's delay in supplementing Mr. Myer's expert report is inexcusable. Second, considering Defendant does not object to Mr. Myers making adjustments to his previous calculations to remove certain Works in Suit or to adjust date ranges to match Plaintiff's allegations about the damages period, the Court finds that the second *Softel* factor weighs in favor of striking because Mr. Myer's new opinions are not essential to the case. The final two *Softel* factors also weigh in favor of striking because the eve of trial has deprived Defendant of reasonable time to analyze Mr. Myer's new opinions, depose Mr. Myers, and to serve its own rebuttal expert testimony to the disclosures.

    **B.**    **Defendant's Objections**[26]

        **1.**    **News Media Exhibits**

Defendant seeks to preclude Plaintiff from offering as exhibits two news media exhibits, including an article dated October 5, 2009 from Inside Higher Ed entitled "Course Hero or Course Villain?" and an article dated April 16, 2015 from Canadian Broadcasting

---

[26] ECF No. 293.

Corporation entitled "Student-help site Course Hero raises plagiarism, copyright concerns."[27] Defendant asserts that the articles include inadmissible hearsay, would be overly prejudicial, and there is no foundation. At the pretrial conference, Plaintiff indicated that it intends to use this evidence to impeach Defendant's expert witness, who relied on similar types of sources in opining on issues related to cheating. Plaintiff also argued that the articles include statements of a party opponent under Federal Rule of Evidence 801.

The Court **SUSTAINS** Defendant's hearsay objection and finds that this evidence must be excluded. As a general matter, newspaper articles constitute inadmissible hearsay under Federal Rule of Evidence 802. *Scanlon v. Town of Greenwich*, 605 F. Supp. 3d 344, 371 n.30 (D. Conn. 2022) (collecting cases). It is undisputed that Defendant's expert witness did not consider these specific articles in formulating any opinion. Plaintiff has not shown that these exhibits are subject to the learned treatise exception under Federal Rule of Evidence 803(18). However, considering Plaintiff's argument that the articles include admissions attributed to Defendant, the Court may revisit this ruling as to those portions of the news media exhibits, if Plaintiff identifies the specific statements that it intends to proffer as an opposing party's statement under Federal Rule of Evidence 801.

### 2. Charts Related to the Works in Suit

Defendant seeks to preclude Plaintiff from offering as exhibits charts describing the Works in Suit, arguing that the charts constitute hearsay, that there is no foundation for the proffered charts, and that they are improper summary evidence. The first table, entitled "Post Summary Chart," includes entries for each of the 2,342 Works in Suit with columns

---

[27] PTX057, ECF No. 293-4; PTX264, ECF No. 293-5.

summarizing the following information: Identified Post Institution, Identified Post Author, Identified Post Metadata.[28] The second table includes entries with columns summarizing the following information for the Works in Suit: Title, File Name, Upload Date, # of Unlocks, Author's Names.[29] The third table distinguishes the Works in Suit into three groups with columns for their Bates Numbers.[30] At the pretrial conference, Defendant asserts that it only takes issue with these tables going back to the jury, as they would be appropriate demonstratives. Plaintiff responds that this evidence could go back to the jury as they constitute summary evidence under Federal Rule of Evidence 1006. Plaintiff argues that the chart summarizes the information from the Works in Suit that it used to conclude that it owns each of the works at issue.

The Court **OVERRULES** Defendant's objections. Federal Rule of Evidence 1006 provides that a proponent of evidence "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. The unrebutted contention that, without these charts, Plaintiff would have to show more than two thousand Works in Suit to the jury is more than sufficient to show that there is a "voluminous" amount of evidence that "cannot be conveniently examined in court" to warrant the use of summaries under Rule 1006. The Second Circuit "has long approved the use of charts in complex trials, and has allowed the jury to have the charts in the jury room during its deliberations." *United States v. Ho*, 984 F.3d 191, 210

---

[28] PTX4144, ECF No. 293-1.

[29] PTX633, ECF No. 293-2.

[30] PTX109, ECF No. 293-3.

(2d Cir. 2020) (collecting cases). And the parties do not seriously dispute that each of the Works in Suit, which Defendant produced to Plaintiff during discovery, is admissible and, consequently, the Court finds that the information in the summaries are not hearsay. *See United States v. Goldberg*, 401 F.2d 644, 647 (2d Cir. 1968) (affirming admission of charts and summaries that were "constructed exclusively from the testimony of … witnesses and from … voluminous business records, which had been previously admitted into evidence). Plaintiff addressed Defendant's foundation objection at the pretrial conference by identifying the witness that would proffer this evidence. Thus, the Court holds that it is appropriate for the jury to have these exhibits in the jury room while they deliberate with appropriate instructions. *Ho*, \ (finding that "the jury was properly advised that the charts themselves did not constitute independent evidence and that it was the jury's duty to first determine that they accurately reflected the evidence on which they were based").

### IV. CONCLUSION

For the preceding reasons, the Court holds the following:

- Plaintiff's motion to bifurcate trial is **denied**.

- Plaintiff's motion *in limine* to exclude post-suit evidence relating to Pinpoint is **granted**.

- Plaintiff's objections to post-suit evidence relating to Pinpoint, including DTX367, DTX368, DTX374, DTX375, and DTX376, are **sustained in part**, as this evidence's probative value is substantially outweighed by a danger of unfair prejudice, misleading the jury, and confusing the issues**.**

- Defendant's motion to strike Plaintiff's technical expert's untimely disclosure is **granted**.

- Defendant's objections to evidence of news media coverage of Course Hero, including PTX057 and PTX264, are **sustained in part**, as this evidence constitutes hearsay.

- Defendant's objections to charts describing the Works in Suit, including PTX4144, PTX633, and PTX109, are **overruled**.

**SO ORDERED.**

Hartford, Connecticut
February 15, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge